IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

```
-------------------------------------------------------- x
THOMAS D. ARTHUR,                      :
                                       :
                   Plaintiff,          :
            v.                         :
                                       :
KIM THOMAS, INTERIM                    :
COMMISSIONER, ALABAMA                  :
DEPARTMENT OF CORRECTIONS,             :
in his official capacity,              :
                                       :        No. 2:11-cv-00438
ANTHONY PATTERSON, WARDEN,             :
HOLMAN CORRECTIONAL FACILITY,          :
in his official capacity, and          :
                                       :
OTHER UNKNOWN EMPLOYEES AND            :
AGENTS, ALABAMA DEPARTMENT             :
OF CORRECTIONS,                        :
in their official capacities,          :
                                       :
                   Defendants.         :
                                       :
-------------------------------------------------------- x
```

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Suhana S. Han (admitted *pro hac vice*)
Jordan T. Razza (admitted *pro hac vice*)
Henry C. Quillen (admitted *pro hac vice*)
Meredith A. Calandra (admitted *pro hac vice*)
125 Broad Street
New York, NY  10004

September 22, 2011

*Counsel for Plaintiff Thomas D. Arthur*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

I.     BACKGROUND AND SUMMARY OF ALLEGATIONS ..............................................3

    A.    Procedural Background..........................................................................3

    B.    Summary of Allegations .......................................................................4

II.    ARGUMENT .....................................................................................................8

    A.    Under the Motion to Dismiss Standard Applicable Here, Plaintiffs'
        Allegations Must Be Accepted As True. ....................................................8

    B.    The Statute of Limitations Has Not Expired for Any of Mr. Arthur's
        Claims ............................................................................................10

        1.    Mr. Arthur's Eighth Amendment Claim Is Timely Because
            Alabama's Switch from Thiopental to Pentobarbital Is a
            Substantial Change...................................................................11

        2.    Mr. Arthur's Due Process and Separation of Powers Claims Are
            Not Time-Barred......................................................................14

        3.    Mr. Arthur's Equal Protection Claim Is Timely. ..........................16

    C.    The Amended Complaint Sufficiently Pleads a Claim for Relief Under the
        Eighth Amendment ...............................................................................17

    D.    The Amended Complaint Sufficiently Pleads a Claim for Relief Under the
        Due Process Clause...............................................................................22

    E.    The Complaint Sufficiently States a Claim for Relief Under the Equal
        Protection Clause. ................................................................................24

    F.    The Separation of Powers Claim Is Cognizable by this Court. ...........................27

    G.    Mr. Arthur's Claim Is Not Precluded by Inequitable Conduct............................28

        1.    Mr. Arthur Had Notice of Defendants' Intention To Use
            Pentobarbital No Earlier Than May 19, 2011...........................28

        2.    Mr. Arthur Did Not Delay In Filing This Challenge. ...............28

    H.    Mr. Arthur's Claim Is Not Precluded by *Res Judicata* ..........................30

CONCLUSION.................................................................................................31

# TABLE OF AUTHORITIES

Page(s)

CASES

*Adamson* v. *De Poorter*,
   No. 06-15941, 2007 U.S. App. LEXIS 23577 (11th Cir. 2007) ...............................9

*American Dental Ass'n* v. *Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ................................................................................8

*Anderson* v. *Evans*,
   No. CIV-05-0825-F, 2005 U.S. Dist. LEXIS 39407 (W.D. Okla. Jan. 11, 2006) ................10

*Arthur* v. *Allen*,
   No. 07-395 (U.S. 2007)............................................................................................15

*Ashcroft* v. *Iqbal*,
   129 S. Ct. 1937 (2009)...............................................................................................8

*Baze* v. *Rees*,
   553 U.S. 35 (U.S. 2008)................................................................................... passim

*Beaty* v. *Brewer*,
   No. 11-1037, 2011 U.S. Dist. LEXIS 56154 (D. Ariz. May 25, 2011) .................................24

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ...................................................................................................8

*Brooks* v. *Blue Cross and Blue Shield of Florida, Inc.*,
   116 F.3d 1364 (11th Cir. 1997) .................................................................................8

*Bush* v. *Gore*,
   531 U.S. 98 (2000)....................................................................................................24

*Coker* v. *Georgia*,
   433 U.S. 584 (1977) .................................................................................................17

*Conner* v. *N.C. Council of State*,
   Nos. 07-GOV-0238, 07-GOV-0264 (N.C.O.A.H. Aug. 9, 2007)........................6, 19

*Cooey* v. *Kasich*,
   No. 2:04-cv-1156, U.S. Dist. LEXIS 73606 (S.D. Ohio July 8, 2011)........................24, 25, 26

*Cooey* v. *Taft*,
   430 F. Supp. 2d 702 (S.D. Ohio 2006) ....................................................................21

*DeYoung* v. *Owens*,
    646 F.3d 1319 (11th Cir. 2011) ................................................................ passim

*Dickens* v. *Napolitano*,
    No. CV-07-01770 (D. Ariz. Dec. 9, 2008) ........................................................6, 18

*Estelle* v. *Gamble*,
    429 U.S. 97 (1976) ...........................................................................17

*Ex parte Arthur*,
    No. 1951985 (Ala. June 22, 2011) ...........................................................29

*Florida* v. *Valle*,
    SC11-1387 (Fla. Cir. Ct. Aug. 3, 2011) .....................................................30

*Glass* v. *Louisiana*,
    471 U.S. 1080 (1985) ........................................................................17

*Grayson* v. *Allen*,
    491 F.3d 1318 (11th Cir. 2007) ...........................................................28, 29

*Gregg* v. *Georgia*,
    428 U.S. 153 (1976) .......................................................................17, 20

*Hallford* v. *Allen*,
    576 F.3d 1221 (11th Cir. 2009) ...........................................................28, 29

*Harper*  v. *Va. State Bd. of Elections*,
    383 U.S. 663 (1966) .........................................................................24

*Hill* v. *McDonough*,
    547 U.S. 573 (2006) .........................................................................29

*Horne* v. *Potter*,
    392 Fed. App'x 800 (11th Cir. 2010) .....................................................6, 15, 18

*Hudson* v. *McMillan*,
    503 U.S. 1 (1992) ...........................................................................17

*Jones* v. *Allen*,
    485 F.3d 635 (11th Cir. 2007) ...............................................................29

*Kalpak* v. *EMC Mortg. Corp.*,
    No. 3:11-CV-49 (CAR), 2011 U.S. Dist. LEXIS 75315  (M.D. Ga. Jul. 13, 2011)............9, 13

*Leib* v. *Hillsborough Cnty. Pub. Transp. Comm'n*,
    558 F.3d 1301 (11th Cir. 2009) ...............................................................24

*Louisiana ex rel. Francis* v. *Resweber*,
   329 U.S. 459 (1947) ...........................................................................................17

*Mathews* v. *Eldridge*,
   412 U.S. 319 (1976)............................................................................................22

*McNair* v. *Allen*,
   515 F.3d 1168 (11th Cir. 2008) .........................................................................10

*Morales* v. *Hickman*,
   415 F. Supp. 2d 1037 (N.D. Cal 2006) ..............................................................21

*Napier ex rel. Napier* v. *Florida Dep't of Corr.*,
   No. 09-CV-61158, U.S. Dist. LEXIS 67711 (S.D. Fla. Jun. 16, 2010)..................8

*Nelson* v. *Donaldson*,
   255 Ala. 76 (Ala. 1951) .....................................................................................27

*Oken* v. *Sizer*,
   321 F. Supp. 2d 658 (D. Md. 2004) ...............................................................3, 23

*Perlman* v. *Five Corners Investors I*,
   No. 09-CV-81225, 2010 U.S. Dist. LEXIS 26915  (S.D. Fla. Mar. 15, 2010).........9

*Powell* v. *Thomas*,
   643 F.3d 1300 (11th Cir. 2011) ................................................................. passim

*Powell (Williams)* v. *Thomas*,
   641 F.3d 1255 (11th Cir. 2011) ................................................................. passim

*Reid* v. *Johnson*,
   333 F. Supp. 2d 543 (E.D. Va. 2004) ................................................................19

*Robinson* v. *California*,
   370 U.S. 660 (1962)............................................................................................20

*Roper* v. *Simmons*,
   543 U.S. 551 (2005)............................................................................................17

*Smith* v. *GTE Corp.*,
   236 F.3d 1292 (11th Cir. 2001) .........................................................................13

*Trop* v. *Dulles*,
   356 U.S. 86 (1958)..............................................................................................20

*United Mine Workers of Am.* v. *Gibbs*,
   383 U.S. 715 (1966) ...........................................................................................27

*Urfirer* v. *Cornfeld*,
      408 F.3d 718 (11th Cir. 2005) .................................................................................30

*Williams* v. *Allen*,
      496 F.3d 1210 (11th Cir. 2007) .........................................................................28, 29

STATUTES, RULES & CONSTITUTIONAL PROVISIONS

United States Constitution, amend. XIV.............................................................. passim

United States Constitution, amend. VIII.............................................................. passim

28 U.S.C. § 1367....................................................................................................27, 28

FED. R. CIV. P. 8(a) ...................................................................................................8, 16

FED. R. CIV. P. 12(b)(6) .................................................................................................9

ALA. CODE § 15-18-82.1(g) ..........................................................................................6

**PRELIMINARY STATEMENT**

Stripped of its purported facts, which are not properly part of the record on a motion to dismiss, Defendants' Motion to Dismiss and, in the Alternative, Motion for Summary Judgment ("Defendants' Motion" or the "Motion") boils down to one principal argument: because the Eleventh Circuit Court of Appeals has asserted that the change from sodium thiopental to pentobarbital does not constitute a significant alteration to Alabama's lethal injection protocol, Mr. Arthur's complaint is barred by the statute of limitations. But Defendants' argument misses the mark for several reasons.

*First*, even a finding that the change was not "significant" would not bar Mr. Arthur's entire complaint. Mr. Arthur's Equal Protection claim is based on the well-pled allegation that Defendants failed to adhere to their protocol at Eddie Powell's execution, which occurred on June 16, 2011. This claim therefore is not barred by the statute of limitations. The same is true for Mr. Arthur's well-pled Due Process and Separation of Powers claims, which are based on allegations that Defendants have unfettered discretion to change Alabama's lethal injection protocol at any time without sufficient oversight. These claims arose out of the conduct that occurred only this year: namely, Defendants' failure to disclose (i) their dwindling supply of sodium thiopental; (ii) efforts to obtain the drug covertly across state lines, (iii) the DEA's seizure of the last of their stockpile; and (iv) their decision to switch drugs until it was clear that they could no longer hide this significant change from the public. Previously, Defendants advised Mr. Arthur that they had an ethical obligation to inform inmates of changes to the execution protocol. (Affidavit of Anne C. Adams (Sept. 26, 2007) ("Adams Aff.") ¶ 4.). However, Defendants changed their position and argued in their Motion to Dismiss that they can change the protocol at any time, for no reason and with no notice. (Def. Mot. at 37.) Because

Mr. Arthur became aware only recently that Defendants intended to abandon their previously stated ethical obligations, Mr. Arthur's Due Process and Separation of Powers claims are not barred by the statute of limitations.

*Second*, Mr. Arthur's Eighth Amendment claim challenging the switch to pentobarbital should likewise be decided on its merits—based upon the record in this case. The Eleventh Circuit's opinions in *Powell*, *Powell (Williams)*, and *DeYoung* do not compel this Court to hold that Mr. Arthur's claims are untimely, as Defendants urge. Each of those cases was decided on its own record and in the context of a motion to stay an execution, where plaintiffs need to demonstrate a substantial likelihood of success on the merits—not in the context of a motion to dismiss, where plaintiffs need to provide a short, plain statement of the facts. Because Defendants refused to provide the information about Alabama's lethal injection process that might have supported those plaintiffs' claims, each was unable to demonstrate a likelihood of success on the merits. In contrast, because Mr. Arthur has no execution date, no stay is required and the motion to dismiss standard applies. Furthermore, Mr. Arthur's well-pled allegations (which at this point, must be assumed to be true and taken in the light most favorable to the plaintiff) were never before considered by the Eleventh Circuit. For example, Dr. David Lubarsky has testified that pentobarbital takes anywhere between 15 to 60 minutes to act. Given that an execution in Alabama rarely takes longer than 25 minutes, it is highly probable that the pentobarbital has not yet anesthetized the inmate when the second and third drugs are injected. For this reason, and others discussed *infra*, *Powell*, *Powell (Williams)*, and *DeYoung* do not require dismissal here. Thus, Mr. Arthur's Eighth Amendment claim is timely and sufficient to withstand a motion to dismiss.

Finally, Mr. Arthur has also stated a claim under the Due Process Clause. Although Defendants refuse to provide Mr. Arthur with Alabama's lethal injection protocol, they claim that their representations about the protocol in another case constitute adequate access. But Mr. Arthur has sufficiently alleged that Defendants operate with unfettered discretion under a shroud of secrecy and therefore he should not be required to "tak[e] Defendants' word that his rights will not be violated by what they propose to do." *Oken* v. *Sizer*, 321 F. Supp. 2d 658, 665 (D. Md. 2004). Although Defendants rely on *Powell (Williams)*, that case was decided under the more stringent standard for a stay. Likewise, Mr. Arthur's well-pled allegation that Defendants failed to pinch Eddie Powell's arm as part of Alabama's consciousness assessment is sufficient to state a claim for an Equal Protection violation. Such failure exposes Mr. Arthur to the risk that he will not be completely unconscious and therefore would suffer excruciating pain during the administration of the lethal drugs. There is no legitimate State interest advanced by this deviation, especially in light of Defendants' argument that the consciousness assessment is an appropriate safeguard against cruel and unusual punishment.

## I.     BACKGROUND AND SUMMARY OF ALLEGATIONS

### A.     Procedural Background

On April 15, 2011, the Supreme Court of Alabama denied Mr. Arthur's petition for certiorari review of his Rule 32 petition for post-conviction relief. *Ex parte Arthur*, No. 1951985 (Ala. Apr. 15, 2011). On April 20, 2011, the State filed a motion to set an execution date for Mr. Arthur. On June 22, 2011, after Mr. Arthur filed an opposition to the State's motion, noting that an execution date was premature in part because of this very litigation, the Alabama Supreme Court denied the State's motion.

In addition to litigating this §1983 action, Mr. Arthur currently has a petition for certiorari pending before the United States Supreme Court. Mr. Arthur filed his petition for

-3-

certiorari on July 14, 2011.  On July 15, 2011, the State filed a motion for reconsideration of the

Supreme Court of Alabama's June 22, 2011 ruling denying its motion to set an execution date.

Mr. Arthur opposed the State's motion for reconsideration on July 29, 2011, referring again to

this litigation as one reason to refrain from setting a date.  No execution date has been set for Mr.

Arthur.

On August 12, 2011, the State sought and received a 30 day extension to file its

opposition to Mr. Arthur's pending petition for certiorari.  The opposition was filed on

September 14, 2011, and Mr. Arthur intends to submit a reply.

**B.      Summary of Allegations**

On April 26, 2011, nearly a month after the DEA seized the sodium thiopental

Alabama had covertly acquired from Tennessee, Defendants announced that they would replace

that drug, an anesthetic, with pentobarbital, a sedative, as the first drug used during the lethal

injection process.  (Am. Compl. ¶ 3.)  The purpose of the first drug is to induce unconsciousness

and lack of sensation, which is crucial to ensuring that the execution procedures comport with

the requirements of the Eighth Amendment.  (Am. Compl. ¶ 55.)  If an inmate is conscious and

able to feel pain when the second and third drugs are administered, the pain of the lethal injection

will be excruciating. (*Id*.)  Despite Defendants' claim that pentobarbital will ensure a painless

death, two experts, Dr. David Lubarsky, a practicing anesthesiologist and Professor of

Anesthesiology at the University of Miami, and Dr. Mark Heath, an Assistant Professor of

Clinical Anesthesiology at Columbia University, *conclude that the use of pentobarbital would*

*very likely cause serious harm to an inmate in his execution*.  (Am. Compl. ¶ 4, Ex. A ¶ 16; Ex.

B ¶ 2(e).)

Indeed, pentobarbital apparently failed to induce loss of consciousness and

sensation in the executions of Eddie Powell and Roy Willard Blankenship, both of whom gasped

for air and jerked their heads after the drug was administered.  (Am. Compl. ¶ 5.)  As Drs.

Lubarsky and Heath opined, these reactions directly refute the opinion of Defendants' expert,

Mark Dershwitz, that pentobarbital allows an inmate to experience a rapid and painless death.

After the reactions of Powell and Blankenship, Dr. Dershwitz conceded that pentobarbital can

cause pain even when properly injected.[1]  (Am. Compl. ¶ 5.)

   The three-drug protocol utilized by Defendants differs in a material way from the

protocol used in previous executions by lethal injection in Alabama because it substitutes

pentobarbital, a sedative unapproved for usage in lethal injections, for sodium thiopental, an

anesthetic.  (Am. Compl. ¶ 19.)  Unlike sodium thiopental, an ultra-short acting barbiturate

which takes effect within seconds, pentobarbital is less lipid soluble and crosses the blood-brain

barrier much more slowly, taking 15 to 60 minutes to take full effect.  (Am. Compl. ¶ 58; Ex. A

¶ 8.;  Ex. M, Dershwitz Rep. ¶ 7 (classifying pentobarbital as an "intermediate-acting

barbiturate")).  Because an average execution only lasts 25 minutes (*see, e.g.*, Affidavit of Matt

Schulz, ¶ 9), it is very possible that the inmate would be executed before pentobarbital has even

*begun to take effect*.

   If an inmate is not adequately anesthetized prior to administration of pancuronium

bromide and potassium chloride, it is beyond dispute that an inmate will feel excruciating pain.

Administration of the second chemical in the three-drug protocol, pancuronium bromide,

paralyzes muscles that would move to show extreme pain and precludes an accurate assessment

---

[1]  *See* Greg Bluestein, *Ga. Execution is Fodder for Challenges to New Drug*, ASSOCIATED
PRESS, June 28, 2011 (Am. Compl., Ex. R.)  ("Medical experts differ on whether the
spasms indicate the execution was improperly carried out.  Dr. Mark Dershwitz, a
University of Massachusetts anesthesiologist, said pentobarbital can sometimes cause
pain and involuntary jerking movements even when it's properly injected.").

of anesthetic depth by observers.  (Am. Compl. ¶ 52; Ex. A ¶¶ 5, 13)[2]  The third chemical in the three-drug protocol, potassium chloride, disrupts the normal electrical activity of the heart and induces cardiac arrest by stopping the heart from pumping blood.  Absent complete anesthesia, the injection of potassium chloride will cause the inmate to suffer agonizing death. (Am. Compl. ¶ 53; Ex. A ¶ 5.)[3]  There is no scientific literature establishing the anesthetic dose of pentobarbital. (Am. Compl. ¶ 57; Ex. A ¶ 7.)  Defendants nevertheless switched from an ultra-quick acting drug (sodium thiopental) used routinely in surgeries and designed to produce rapid unconsciousness, to a drug that is not a routine anesthetic, has not been designed to produce unconsciousness (but sedation), and is not rapid.  (Am. Compl. ¶ 59; Ex. A ¶ 6.)  In addition, the Alabama legislature has exempted the DOC from complying with the Alabama Administrative Procedures Act ("AAPA") with respect to Defendants' lethal injection protocol.  Ala. Code § 15-18-82.1(g).  (Am. Compl. ¶ 82.)  Because the protocol is secret, Mr. Arthur has no way to know whether existing lethal injection protocol requires the personnel who perform the tasks of anesthetizing and executing the prisoner to have any minimum qualifications or expertise, or

---

[2]     *See also* Deposition of Mark Dershwitz, M.D., Ph.D., *Dickens* v. *Napolitano*, No. CV-07-01770 (D. Ariz. Dec. 9, 2008), at 126-27; (Am. Compl., Ex. L.) ("Pancuronium, because it's a paralytic drug . . .  makes it less likely for witnesses to observe these involuntary muscle contractions."); *Horne* v. *Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010).

[3]     *Baze* v. *Rees*, 553 U.S. 35, 53 (2008) ("It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride."); *see also Conner* v. *N.C. Council of State*, Nos. 07-GOV-0238, 07-GOV-0264, at *5 (N.C.O.A.H. Aug. 9, 2007) ("If the [pentobarbital] is not properly administered, an inmate could be conscious and suffer a very painful death from the other two lethal drugs.  If not unconscious but paralyzed, an inmate would not be able to move or scream while painfully suffocating or when the deadly, burning potassium chloride is injected into the veins causing more excruciating pain while stopping the heart.").

whether Defendants in fact follow those requirements, to the extent they exist.  (Am. Compl. ¶ 54.)

Furthermore, because the protocol is secret and exempt from AAPA requirements, nothing prevents Defendants from changing it at any time up to the minute of execution.[4]  Thus, even if a court were to uphold the constitutionality of Alabama's current protocol based on a review of the merits, there is simply no way of knowing that this same protocol will be the one actually used to carry out an execution.  (Am. Compl. ¶ 7.)  Under Defendants' current practices, Mr. Arthur cannot know with certainty the drugs to be administered or the method of administration that will be used to execute him, or that such execution will comply with the requirements of the United States Constitution. (Am. Compl. ¶ 7.)

Despite extremely limited information, Mr. Arthur has nonetheless been made aware through witnesses to the recently botched execution of Eddie Powell that Defendants failed to perform a crucial aspect of Alabama's consciousness assessment—the arm pinching— to assess whether full unconsciousness has been achieved. (Am. Compl ¶ 73; Ex. P ¶ 8; Ex. O ¶ 13.)[5]  Voicing a prisoner's name and stroking the eyelashes are not painful levels of stimulation, whereas pinching the arm represents a painful stimulation.  (Heath Decl. ¶ 5(m).)  Failure to

---

[4]     Although Defendants have refused to provide Mr. Arthur a copy of the protocol, they have provided that protocol to their expert.  (July & Aug. Def. Motion, Expert Report of Mark Dershwitz, Exhibit D, ¶ 6) ("I have reviewed an undated document entitled, 'Execution Procedures,' provided to me by the Alabama Attorney General's office.")

[5]     Defendants assert that these witnesses do not state in their affidavits that this part of this consciousness assessment was not performed. (Def. Mot. at 38-39.) As reflected in the attached supplemental affidavits of Matthew Schulz and Christine Freeman (Exs. A, B.), both Schulz and Freeman can confirm that the witnesses did not see the arm pinched.  To the extent this Court grants in whole or in part Defendants' Motion on this basis, Mr. Arthur respectfully requests leave to amend the complaint to include this material.

pinch the inmate's arm prior to paralyzing the inmate with pancuronium bromide and injecting

potassium chloride puts the inmate at a constitutionally intolerable risk of serious harm.[6]

## II.      ARGUMENT

### A.      Under the Motion to Dismiss Standard Applicable Here, Plaintiffs' Allegations Must Be Accepted As True

As this Court advised the parties in its September 8, 2011 Order, the "Court will

address Defendants' Answer, Doc. #23, only as a Motion to Dismiss, rather than as a Motion for

Summary Judgment.  The Motion to Dismiss will be considered 'accepting the allegations in the

complaint as true and construing them in the light most favorable to the plaintiff.' *American*

*Dental Ass'n* v. *Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)."  (Sept. 8, 2011 Order.)

All that Rule 8 of the Federal Rules of Civil Procedure requires is "a short and

plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.

8(a)(2).  And, to survive a motion to dismiss for failure to state a claim, the complaint at issue

need only contain factual allegations that "raise a reasonable expectation that discovery will

reveal evidence" in support of the claim and that plausibly suggest relief is appropriate.  *Bell Atl.*

*Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

In reaching this determination, the court's task is not to "decide whether the plaintiff will

ultimately prevail on the merits, but instead whether such plaintiff has properly stated a claim

and should therefore be permitted to offer evidence in support thereof."  *Napier ex rel. Napier* v.

*Florida Dep't of Corr.*, No. 09-CV-61158, 2010 U.S. Dist. LEXIS 67711, at *4 (S.D. Fla. Jun.

---

[6]      The consciousness assessment was an additional safeguard added in 2007 to the lethal injection protocol in 2007 in the wake of the *Baze* decision.  Mr. Arthur had no reason to suspect, prior to the date of Mr. Powell's execution—June 17, 2011—that Defendants were deviating from the protocol.

16, 2010).[7]  This "threshold is exceedingly low."  *Perlman* v. *Five Corners Investors I*, 2010 U.S. Dist. LEXIS 26915, at *2 (S.D.Fla. Mar 15, 2010) (citation and punctuation omitted); *see also Kalpak* v. *EMC Mortg. Corp.*, No. 3:11-CV-49, 2011 U.S. Dist. LEXIS 75315, at *4 (M.D. Ga. Jul. 13, 2011) ("Because this standard imposes such a heavy burden on the defendant, Rule 12(b)(6) motions are rarely granted.").

   A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the allegations set forth in a complaint and is not the mechanism for deciding the merits of a case by the presentation of facts outside the four-corners of the complaint.  FED. R. CIV. P. 12(b).  "Where the *plaintiff* refers to certain documents in the complaint and those documents are central to the *plaintiff's* claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."  *Brooks* v. *Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis added) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.").  In contrast, the documents attached to Defendants' Motion, which was filed when the parties believed that this Court might convert the Motion to a motion for summary judgment, are thus not properly considered at this stage, where plaintiff's allegations must be accepted as true.  *See Adamson* v. *De Poorter*, No. 06-15941, 2007 U.S. App. LEXIS 23577, at *9 (11th Cir. 2007) (finding that the lower court erred in considering three affidavits from prison officials purporting to contradict plaintiff's

---

[7] Defendants have premised their argument largely on the "binding precedent" of two cases that were dismissed, prior to any formal discovery, under the far more burdensome legal standard dictating when a stay of execution should be granted:  showing a substantial likelihood of success on the merits.  (Defs. Mot. at 5); *see DeYoung* v. *Owens*, 646 F.3d 1319, 1328 (11th Cir. 2011); *Powell (Williams)* v. *Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011).  This standard does not apply:  Mr. Arthur has not sought a stay of any execution date; indeed, there is no execution date to stay.

allegations submitted by defendants with their motion to dismiss).  *See also Anderson* v. *Evans*, No. CIV-05-0825-F, 2005 U.S. Dist. LEXIS 39407, at *14, n.13 (W.D. Okla. Jan. 11, 2006) (noting that the court cannot go outside the complaint in ruling on a motion to dismiss, so defendants' reliance on medical evidence in another lethal injection case cannot support dismissal); *Speaker* v. *United States HHS CDC*, 623 F.3d 1371, 1379 (11th Cir.  2010) ("In appeals of Rule 12(b)(6) dismissals, it is generally true that the scope of the review must be limited to the four corners of the complaint.") (quotations omitted).

### B.       The Statute of Limitations Has Not Expired for Any of Mr. Arthur's Claims

Mr. Arthur challenges the constitutionality of Defendants' substitution of pentobarbital, a sedative, for thiopental, an anesthetic, in its execution protocol.  There can be no dispute that such a claim was unavailable to Mr. Arthur until earlier this year, when Defendants made this substantial change to their protocol.  *See McNair* v. *Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008) (holding that a claim regarding a method of execution accrues when the litigant becomes subject to a substantially changed execution protocol).  As discussed above, the change from thiopental to pentobarbital is substantial because it introduces an unacceptable risk that a prisoner will be conscious when the State administers pancuronium bromide and potassium chloride, two drugs that cause severe pain.  Moreover, Mr. Arthur has a timely claim for Defendants' violation of his right to due process because Defendants now maintain that they are entitled to make secret changes to their protocol in the future, contrary to their past practices and the State of Alabama's previous representations to Mr. Arthur's counsel.  Mr. Arthur's equal protection claim is also timely because it is based on a major deviation from Alabama's execution protocol, which occurred in June of this year.  As a result, the limitations period has not expired for any of Mr. Arthur's claims.

-10-

The Eleventh Circuit's opinions in *Powell*, *Powell (Williams)*, and *DeYoung* do not compel this Court to hold that Mr. Arthur's claims are untimely, as Defendants argue. Each of those cases was decided on its own factual record and evaluated under the more onerous "substantial likelihood of success on the merits" showing required in the context of a stay of execution—a standard not applicable here. While it is true that some of the evidence in those cases also overlap with the evidence here, Mr. Arthur has also presented evidence that has not yet been considered by the Eleventh Circuit or any District Court in this Circuit.

1. **Mr. Arthur's Eighth Amendment Claim Is Timely Because Alabama's Switch from Thiopental to Pentobarbital Is a Substantial Change**

Thiopental and pentobarbital are not interchangeable. Thiopental is an anesthetic that can achieve its maximum effect in 60 seconds. (Lubarsky Decl. ¶¶ 6, 8.) Pentobarbital is a sedative that is not FDA-approved as an anesthetic and takes 15 to 60 minutes to achieve its intended effect. (*Id*. ¶¶ 6-8; *see also* Heath Decl. ¶¶ 2(c), 5(f) (pentobarbital acts more slowly than thiopental).) From start to finish, executions using pentobarbital in Alabama and Georgia have taken far fewer than 60 minutes. (Am. Compl. ¶ 63 (Eddie Powell's execution lasted about 25 minutes), ¶ 65 (Roy Blankenship gasped for breath for several minutes, lunged forward a minute later, stopped moving three minutes later, and died twelve minutes later).) Assuming the truth of Mr. Arthur's well-pled allegations, the short duration of executions indicates that prisoners are insufficiently sedated when given pancuronium bromide and potassium chloride in light of the short duration of executions in Alabama.

Dr. Lubarsky also stated that "[t]he dosage of pentobarbital provided for in Alabama's lethal injection protocol is insufficient to assure that an inmate is unconscious when given pancuronium bromide and potassium chloride." (Lubarsky Decl. ¶ 10.) Dr. Lubarsky

-11-

based his opinion in part on the phenomena of acute tolerance and adrenergic overdrive, both of which lessen the effect of pentobarbital on the body.  (*Id.* ¶¶ 9, 11.)

In their Motion to Dismiss, Defendants do not attempt to undermine Dr. Lubarsky's declaration, arguing instead that this Court is bound by the Eleventh Circuit's statements in *Powell*, *Powell (Williams)*, and *DeYoung* that the switch from thiopental to pentobarbital is not substantial enough to restart the limitations period.  (Def. Mot. at 32.)  But in each of those cases, the Court was clear that it was evaluating the switch in the context of the factual record developed before the District Court.

In *Powell (Williams)*, the Court of Appeals relied on the specific facts of that case, holding that the District Court did not abuse its discretion by refusing to credit an expert report by Dr. David Waisel challenging the use of pentobarbital in Oklahoma executions.  *Powell (Williams)* v. *Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011).  The Amended Complaint, however, does not rely on this report.  Mr. Arthur has submitted reports by Dr. Lubarsky and Dr. Mark Heath, which were written specifically for this case and, unlike Dr. Waisel's report, discuss the amount of time necessary for pentobarbital to take effect.  Since Dr. Waisel submitted his report, at least two executions involving pentobarbital were conducted too quickly for the inmates to receive the full effect of pentobarbital, as evidenced by the appearance of inmate pain reported by witnesses.  This offers further support for Dr. Lubarsky's assertion that the use of pentobarbital would very likely cause serious harm to an inmate during his execution

In *Powell*, both the District Court and Court of Appeals followed *Powell (Williams)* in holding that Eddie Powell brought his claims after the statute of limitations had expired.  Both courts emphasized that the plaintiff's allegations were identical to those in *Powell (Williams)*.  Memorandum and Order, *Powell*, No. 11-cv-376, at 10 n.5 (M.D. Ala. June 9,

2011); *Powell* v. *Thomas*, 643 F.3d 1300, 1305 (11th Cir. 2011). Again, the Court of Appeals made clear that in *Powell (Williams)* it relied on the record specific to the case before it: "We . . . rejected [Williams's] claim, squarely holding that '*[t]he evidence present* does not demonstrate that the ADOC's use of pentobarbital creates substantial risk of serious harm to Williams.'" *Powell*, 643 F.3d at 1303 (emphasis added) (quoting *Powell (Williams)*, 641 F.3d at 1257). Here, Mr. Arthur presents additional evidence, including Dr. Lubarsky's affidavit and the botched execution of Mr. Powell, that was not before the *Powell* or *Powell (Williams)* court.

Finally, the Eleventh Circuit's holding in *DeYoung* that the switch to pentobarbital is not a substantial change is not binding here for several reasons. First, *DeYoung* involved a challenge to Georgia's execution protocol, which uses twice as much pentobarbital as Alabama's. *See DeYoung* v. *Owens*, 646 F.3d 1319, 1322 (11th Cir. 2011) (noting that Georgia uses 5000 milligrams of pentobarbital). Second, the District Court in *DeYoung* reached its conclusions after holding an evidentiary hearing. *Id.* at 1326. Here, Mr. Arthur's allegations are assumed to be true. *Kalpak*, 2011 U.S. Dist. LEXIS 75315, at *1. Third, *DeYoun*g relied on testimony by Dr. David Waisel, who is not an expert in this case. *DeYoung*, 646 F.3d at 1323.

In light of these new allegations and evidence, which were unavailable to the courts that decided *Powell (Williams)*, *Powell*, and *DeYoung*, this Court should undertake a de novo review of Mr. Arthur's claims.[8] The switch from a well-established, fast-acting anesthetic

---

[8]     The Eleventh Circuit's opinion *Smith* v. *GTE Corp.*, 236 F. 3d 1292 (11th Cir. 2001), which the court cited in *DeYoung*, held that a panel of the Court of Appeals cannot overrule another panel because it believes that the first panel failed to apply Supreme Court precedent. *Id.* at 1302-03 (11th Cir. 2001), not that a District Court must ignore newly presented evidence, as Defendants suggest. (Def. Mot. at 36). If Defendants were

to an untested, slower-acting sedative is a substantial change in Alabama's lethal execution protocol, and no previous decision requires this Court to hold otherwise.

### 2.    Mr. Arthur's Due Process and Separation of Powers Claims Are Not Time-Barred

Mr. Arthur has alleged, and Defendants do not contest, that Defendants can secretly change their lethal injection protocol at any time, without notice.  (Am. Compl. ¶ 7.) Indeed, Defendants approvingly cite the *Powell* court's quotation of the plaintiff's argument that "the [Alabama Department of Corrections] may change the drugs used in the protocol at any time for any reason without notice or oversight[,] . . . [and the drug used] is subject to change at any time."  (Def. Mot. at 38.)  Although Defendants have given notice that they plan to use pentobarbital in upcoming executions, including Mr. Arthur's execution, if and when a date is set, they have reserved the right to change the protocol at any time, without notice.  As explained below, this unfettered discretion and practice of absolute secrecy violate Mr. Arthur's right to Due Process, as well as the Separation of Powers doctrine of the Alabama Constitution. Defendants' threshold defense is that Mr. Arthur has known that Defendants could change the execution protocol without notice since Alabama's lethal injection statute was enacted in 2002. (Def. Mot. at 37-39.)  As a result, Defendants argue, Mr. Arthur should have brought his claims within two years of 2002, when he supposedly became aware of the State's unfettered discretion to change the drugs it uses to carry out executions.  Defendants again invoke the Eleventh Circuit's opinion in *Powell*, 643 F.3d at 1305.

---

correct, there would have been no need for the District Court in *DeYoung* to hold an evidentiary hearing or consider the plaintiff's evidence.

Defendants fail to mention a crucial distinction between this case and *Powell*: in 2007, representatives of the State of Alabama assured Mr. Arthur's counsel that they had an "ethical obligation" to notify counsel in advance of changes to its execution protocol. (*Arthur* v. *Allen*, No. 07-395 (U.S.), Respondent's Reply to Petitioner's Second Supplemental Brief, Ex. A, at 2 (attached as Exhibit C).)[9]  In earlier litigation between Mr. Arthur and the State of Alabama, the State Attorney General's office notified Mr. Arthur's counsel that the State would alter its execution protocol to include checks for consciousness. (*Id.*)  The Attorney General's office represented to Mr. Arthur's counsel and to the Supreme Court of the United States that "it was the Department of Corrections' ethical obligation to inform [counsel] of the change that is to be made in the future." (*Id.*)  But then Defendants apparently abandoned this stated ethical obligation when they sought and obtained execution dates from the Alabama Supreme Court this year without disclosing that it could no longer use thiopental. (Am. Compl. ¶¶ 41-44.)  It was not until June 30, 2011 that they publicly confirmed the abandonment of this stated ethical obligation to Mr. Arthur in writing. (Defs.' Mot. to Dismiss and, in the Alternative, Mot. For Summ. J. (June 30, 2011) at 32-33; Def. Mot. at 45-46.)

Accordingly, it is disingenuous for Defendants to argue that Mr. Arthur should have challenged the absolute secrecy behind Alabama's death penalty protocol years ago, when Defendants undoubtedly would have pointed to their own assurances to Mr. Arthur's counsel in an attempt to undermine such a suit.  And even assuming Mr. Arthur was generally aware that he

---

[9]     This Court may take judicial notice of Defendants' brief. *See, e.g.*, *Horne*, 392 Fed. App'x at 802. (District courts may take judicial notice of "public records that [a]re 'not subject to reasonable dispute' because they [a]re 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting FED. R. EVID. 201(b))

was not privy to every detail of the lethal injection process, he would have had no way of

knowing that Defendants would be willing to obtain drugs covertly and fail to disclose for nearly

a month that these drugs were seized by the DEA.  Defendants' recent conduct demonstrates

clearly for the first time exactly how secretive and discretionary Alabama's  lethal injection

process is.  As a result, Mr. Arthur's Due Process and Separation of Powers claims did not

accrue until this year, and this suit is timely.

### 3.      Mr. Arthur's Equal Protection Claim Is Timely

Mr. Arthur has sufficiently alleged that Defendants failed to perform step—a

crucial one according to Defendants—in the execution of Eddie Powell:  pinching Powell's arm

to assess his consciousness.  As described in Part II(E) below, this allegation supports a claim

that deviations from Alabama's lethal injection protocol violate Mr. Arthur's right to Equal

Protection.  The bulk of Defendants' Motion challenges the reliability of Mr. Arthur's witnesses,

but this argument cannot prevail on a motion to dismiss.  The rest of Defendants' response, in its

entirety, is as follows:  "In *DeYoung*, the Eleventh Circuit held that an equal protection claim is

barred by the statute of limitations.  (citation omitted.)  Arthur does not mention that precedent or

attempt to distinguish it."  Setting aside the fact that a plaintiff is not required to identify and

distinguish potentially adverse precedent in a complaint, *see* FED. R. CIV. P. 8(a), *DeYoung* is

fundamentally different from this case.

In *DeYoung*, the Court held that the plaintiff had not shown a substantial

likelihood of success on his claim that *ad hoc* deviations from Georgia's execution protocol

constituted a violation of his right to equal protection.  But, as the Court pointed out, the

deviations that the plaintiff alleged, such as having more nurses present and doing more

consciousness checks than the protocol requires, "provide[] *more* protection for an inmate and

the execution process than the written protocol provides."  *DeYoung*, 646 F.3d at 1328.  Here,

-16-

Mr. Arthur alleges that in Eddie Powell's execution, Defendants failed to perform a step purportedly designed to prevent a prisoner from suffering excruciating pain.  There is no comparison between the two.  Therefore, the *DeYoung* opinion, which is the State's only ground for challenging the timeliness of Mr. Arthur's Equal Protection claim, is irrelevant here. Because Powell's botched execution did not occur until June 2011 (Am. Compl. ¶ 77), Mr. Arthur's Equal Protection claim is well within the two-year statute of limitations.

### C.  The Amended Complaint Sufficiently Pleads a Claim for Relief Under the Eighth Amendment

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Gregg* v. *Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion).  In the capital punishment context, the Eighth Amendment's prohibition on the "gratuitous infliction of suffering," *id.* at 183, requires states to avoid inflicting more pain than is necessary to cause death. *See also Hudson* v. *McMillan*, 503 U.S. 1, 10 (1992) ("[P]unishments . . . involv[ing] the unnecessary and wanton infliction of pain are repugnant to the Eighth Amendment.") (alteration in original) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 102-03 (1976)) (internal quotation marks omitted).  Moreover, "subjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment." *Baze* v. *Rees*, 553 U.S. 35, 49 (2008) (plurality opinion).  "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Roper* v. *Simmons*, 543 U.S. 551, 560 (2005); *see also Coker* v. *Georgia*, 433 U.S. 584, 592 (1977) (plurality opinion) (a punishment is excessive if it is "nothing more than the purposeless and needless imposition of pain and suffering"); *Louisiana ex rel. Francis* v. *Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion) ("The traditional humanity of modern Anglo-American law forbids the infliction of unnecessary pain in the execution of the death sentence."); *Glass* v.

-17-

*Louisiana*, 471 U.S. 1080, 1084 (1985) (denial of certiorari) (Brennan, J., dissenting) ("The Court has never accepted the proposition that notions of deterrence or retribution might legitimately be served through the infliction of pain beyond that which is minimally necessary to terminate an individual's life.").

The Eighth Amendment's prohibition on the infliction of gratuitous pain would be meaningless if it did not extend to methods of execution that cause the condemned to experience excruciating pain but inhibit him from displaying any indication of his suffering.

Defendants submit that Mr. Arthur must *allege* with well-pleaded facts that ADOC's lethal injection protocol poses a risk that is "sure or very likely" to cause needless suffering that gives rise to "sufficient imminent dangers." (Def. Mot. at 42 (citing *Baze*, 553 U.S. at 50).) Mr. Arthur has done just that. (*See supra* pp. 11 to 14.)

As mentioned previously, under Alabama's purported protocol,[10] administration of the second chemical in its three-drug protocol, pancuronium bromide, paralyzes muscles that might, if anesthesia is not effective, move to show extreme pain and precludes an accurate assessment of anesthetic depth by observers. (Am. Compl. ¶ 52; Lubarsky Decl. ¶¶ 5, 13.)[11] The third chemical in the three-drug protocol, potassium chloride, disrupts the normal electrical activity of the heart and induces cardiac arrest by stopping the heart from pumping blood—a

---

[10]    Defendants maintain that they are entitled to make secret changes to the protocol in the future, which might contradict past practices and previous representations to Mr. Arthur's counsel. (*See supra* pp. 1-2.)

[11]    *See also* Deposition of Mark Dershwitz, M.D., Ph.D., *Dickens* v. *Napolitano*, No. CV-07-01770 (D. Ariz. Dec. 9, 2008), at 126-27. (Am. Compl., Ex. L.) ("Pancuronium, because it's a paralytic drug . . . makes it less likely for witnesses to observe these involuntary muscle contractions . . . ."); *Horne*, 392 Fed. App'x at 802.

process that causes horrendous suffering on a person who is not properly anesthetized.  (Am. Compl. ¶ 53; Lubarsky Decl. ¶ 5.)  As the Supreme Court noted previously "failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride."  *Baze*, 553 U.S. at 53.  However, since April 26, 2011—the date the ADOC acknowledged that it could no longer obtain sodium thiopental—the constitutionality of the ADOC's three-drug execution protocol now depends on the successful administration of pentobarbital, a slow-acting sedative, as an effective anesthetic, and thus the only means to prevent Mr. Arthur from experiencing undetectable gratuitous suffering prior to his death.  (Am. Compl. ¶ 53; Lubarsky Decl. ¶ 5); *see Conner* v. *N.C. Council of State*, Nos. 07-GOV-0238, 07-GOV-0264, at *5 (N.C.O.A.H. Aug., 9, 2007) ("[I]f the [pentobarbital] is not properly administered, an inmate could be conscious and suffer a very painful death from the other two lethal drugs.  If not unconscious but paralyzed, an inmate would not be able to move or scream while painfully suffocating or when the deadly, burning potassium chloride is injected into the veins causing more excruciating pain while stopping the heart.").  Yet, in contrast to sodium thiopental, there is no scientific literature establishing the anesthetic dose of pentobarbital.  (Am. Compl. ¶¶ 3, 57; Lubarsky Decl. ¶ 7.)  *See also Reid* v. *Johnson*, 333 F. Supp. 2d 543, 548 (E.D. Va. 2004) ("[B]ecause of its infrequent use, pentobarbital lacks the state of the art analysis regarding its effects and dependability that is available for sodium thiopental.")

       When a state chooses a method of execution that involves the administration of a chemical that is known to cause agonizing pain prior to death, it incurs an Eighth Amendment obligation to provide adequate, practicable safeguards against that agonizing pain.  *See Baze*, 553

-19-

U.S. at 52-53.  This is the inescapable implication of the Amendment's command that punishments adopted by American governments "must not involve the unecessary and wanton inflicting of pain."  *Gregg*, 428 U.S. at 173 (plurality opinion).

By selecting a procedure that merely masks rather than inhibits this gratuitous pain, Defendants disregard the "principle of civilized treatment guaranteed by the Eighth Amendment," *Trop* v. *Dulles*, 356 U.S. 86, 99 (1958) (plurality opinion).  Moreover, even though Defendants assert that "[a] consciousness assessment is a significant safeguard" in preventing Eighth Amendment violations (Def. Mot. at 72), Defendants have, in at least one known instance, failed to comply with the safeguard protocol, further increasing the risk of cruel and unusual punishment.

Against the backdrop that claims of cruel and unusual punishment must be assessed "in the light of contemporary human knowledge," *Robinson* v. *California*, 370 U.S. 660, 666 (1962), Mr. Arthur submits the following new facts which, as discussed above, have not previously been presented to the Eleventh Circuit.  First, pentobarbital is a sedative that is not FDA-approved as an anesthetic and takes 15 to 60 minutes to achieve its intended effect. (Lubarsky Decl. ¶¶ 6-8; *see also* Heath Decl. ¶¶ 2(c), 5(f) (pentobarbital acts more slowly than thiopental).)  Second, from start to finish, executions using pentobarbital in Alabama (and Georgia) have taken far fewer than 60 minutes.  (Am. Compl. ¶ 63 (Eddie Powell's execution lasted about 25 minutes), ¶ 65 (Roy Blankenship gasped for breath for several minutes, lunged forward a minute later, stopped moving three minutes later, and died twelve minutes later).) Accordingly, because of the short duration of executions in Alabama, prisoners are likely to be sedated but insufficiently anesthetized when injected with pancuronium bromide and potassium chloride.

-20-

Dr. Lubarsky is not alone in his concern over the effectiveness of the first drug in three-drug protocols. Other courts have noted "the mounting evidence" calling three-drug protocols increasingly into question. *Cooey* v. *Taft,* 430 F. Supp. 2d 702, 706 (S.D. Ohio 2006). In *Morales* v. *Hickman*, 415 F. Supp. 2d 1037 (N.D. Cal 2006), for example, the district court took note of "evidence of a kind that was not presented in [ ] earlier cases," *id.* at 1043. The court purported to demonstrate that inmates recently executed in California under its lethal injection protocol may have continued breathing more than a minute after the administration of sodium thiopental—in contravention of Dr. Mark Dershwitz's opinion that the amount of sodium thiopental prescribed under California's lethal injection protocol, *i.e.,* 5 g, would cause an inmate to lose consciousness and stop breathing within one minute. *Id.* at 1043-44. Although defendants subsequently submitted a supplemental affidavit by Dr. Dershwitz opining that the "respirations" observed by witnesses may have been "chest wall movements" and not respirations at all, *id.* at 1045, the district court, while duly considering Dr. Dershwitz's opinion in that regard, concluded that "evidence from eyewitnesses tending to show that many inmates continue to breathe long after they should have ceased to do so cannot simply be disregarded on its face." *Morales*, 415 F. Supp. 2d at 1045. Ultimately, the Ninth Circuit affirmed the *Morales* court's finding that there was undue risk that Mr. Morales would still be conscious following the administration of the anesthetic, and that California could proceed with his execution only if it employed anesthesiologists to ensure that Mr. Morales was unconscious and remained unconscious or used only sodium thiopental during the execution process. *Morales* v. *Hickman*, 438 F.3d 926, 930-31 (9th Cir. 2006).

Mr. Arthur is unaware of any such requirement for anesthesiologists in Alabama's lethal injection protocol. Accordingly, because Mr. Arthur has sufficiently alleged that the

-21-

ADOC's procedures create a needless and substantial risk of excruciating pain, he has stated a claim under the Eighth Amendment.

> **D.** **The Amended Complaint Sufficiently Pleads a Claim for Relief Under the Due Process Clause**

Due Process under the Fourteenth Amendment requires notice of how one's fundamental rights will be affected and an opportunity to be heard.  Defendants' refusal to provide Mr. Arthur with the lethal injection protocol violates Mr. Arthur's right to procedural due process, which "imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests."  *Mathews* v. *Eldridge*, 412 U.S. 319, 332 (1976).  A three factor balancing test is applied to determine if state actions violated procedural due process:  (1) the private interest affected by the state action, (2) the risk of erroneous deprivation of that interest by the state action, and the probable value of additional procedural safeguards, and (3) the state's interest in performing its normal functions and minimizing fiscal and administrative burdens.  *Id.* at 335.  Mr. Arthur clearly has a strong liberty interest in ensuring that he is not subjected to cruel and unusual punishment, and review of the lethal injection protocol is an essential first step in ensuring Defendants do not violate his constitutional rights.  Providing the protocol will be virtually effortless for Defendants: Defendants have provided no reason for refusing to disclose the protocol, and the only conceivable reason is a potential concern about the identities of the execution team members.  This concern can be addressed by way of an appropriate protective order.  Providing the protocol will not create any fiscal or administrative burdens.  The *Mathews* factors thus weigh in favor of disclosure.

Furthermore, the "extraordinarily fractured *Baze* Court," *Powell (Williams)*, 641 F.3d at 1257, n.3, required seven opinions (including concurrences and dissents) to discuss and determine "adequate procedures" in the application of the death penalty.  *Baze*, 553 U.S. at 84

(Stevens, J., concurring).  It is essential for Mr. Arthur to receive the lethal injection protocol to determine whether Defendants are using "adequate procedures" and to ensure that Defendants are not violating his Fourteenth Amendment due process rights.

Defendants claim that Mr. Arthur has been provided access to the execution protocol because the State made representations about the protocol during another court case, the *Williams* litigation.  But in fact, Defendants make only the representations they choose to make, about the facts they choose to disclose.  These facts notably do not include the amount of time between the injection of each drug or failures to adhere to their written protocol.  Because Defendants operate with unfettered discretion under a shroud of secrecy, there is no reason to presume that whatever selective pieces of information made public during the *Williams* litigation remain accurate tells the whole story.  Mr. Arthur should not be required to accept Defendants' "representations" "on faith."  *Oken* v. *Sizer*, 321 F. Supp. 2d 658, 664 (D. Md. 2004).  *Oken*, for example, discusses and rejects as inadequate half-measures such as determining whether a protocol change was substantive or procedural "based solely on the affidavit of a prison official" about the contents of the prior protocol (which is more than the State of Alabama has provided to Mr. Arthur).  *Id.*  Nor is it solely one court that has required production of a lethal injection protocol in order to assess various defendants' compliance with Due Process.  *See id.* (collecting "innumerable" cases in which execution protocols were examined by courts, noting that "[o]bviously, the fact of court review of the protocols presupposes their production").  Mr. Arthur is entitled to review the full protocol itself:  Mr. Arthur "is not limited to taking Defendants' word that his rights will not be violated by what they propose to do."  *Id.* at 665.

In addition, the sole U.S. manufacturer of pentobarbital, Lundbeck, Inc., has notified the Alabama Department of Corrections that it adamantly opposes the use of

pentobarbital for executions and "is doing everything in its power to put an end to this misuse." (Am. Compl. ¶ 47 (quoting statement by Lundbeck).)  Defendants do not contest that they may need to change the lethal injection protocol yet again in the near future if Lundbeck succeeds in stopping the use of pentobarbital in executions.  Defendants' citations to *Powell (Williams)*, 641 F.3d at 1255 (11th Cir. 2011), and *Beaty* v. *Brewer*, No. 11-1037, 2011 U.S. Dist. LEXIS 56154 (D. Ariz. May 25, 2011), are inapposite because both were decided under the much more stringent standards for a stay, preliminary injunction or temporary restraining orders.  In neither of these cases did the plaintiffs have an opportunity to litigate in the ordinary course, as Mr. Arthur is able to do because there is no execution date set.  Mr. Arthur has therefore stated a Due Process claim.

###### E.    The Complaint Sufficiently States a Claim for Relief Under the Equal Protection Clause.

"To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Cooey* v. *Kasich*, Nos. 2:04-cv-1156, 2:09-cv-242, 2:09-cv-823, 2:10-cv-27, 2011 U.S. Dist. LEXIS 73606, at *93 (S.D. Ohio July 8, 2011); *see also Harper* v. *Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966) ("[W]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined."); *Leib* v. *Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (holding that, where a plaintiff does not allege that disparate treatment burdens his fundamental rights or is based on his membership in a suspect class, plaintiff must show that disparate treatment is not rationally related to a

-24-

legitimate government interest).  Defendants' failure to adhere to the lethal injection protocol—
as their expert has described it—cannot pass either strict scrutiny *or* rational basis review.

   When state action implicates a fundamental right, the government must proceed
according to uniform standards to prevent the "arbitrary and disparate treatment" of similarly
situated citizens.  *See Bush* v. *Gore*, 531 U.S. 98, 104 (2000) (finding a violation of equal
protection where fundamental right to vote was implicated, without regard to intent).  Inmates,
like Mr. Arthur, have a fundamental right under the Fourteenth Amendment to the United States
Constitution to be free from cruel and unusual punishment.  This right may be burdened when a
state's execution team "negat[es] . . . precise procedural safeguards" or departs from core
components of the execution process set forth in a written protocol.  *Cooey*, 2011 U.S. Dist.
LEXIS 73606, at *94.  As the court explained in *Cooey*, under the strict scrutiny analysis, there
is no compelling government interest for "selectively introducing risk into some executions but
not others."  *Id.*  Defendants' failure to pinch Eddie Powell's arm during his execution prior to
administering the second and third chemicals in the three-drug protocol further exposed Powell
to the risk that he would not be completely unconscious and insensate when the second and third
drugs were administered.

   Defendants' failure to adhere to Defendants' own alleged protocol cannot even
pass rational basis review, as there is no possible legitimate state interest advanced by this
deviation, especially in light of Defendants' position that the consciousness check is an
appropriate safeguard against cruel and unusual punishment.  *Id.* at *96 ("Mere pursuit of
administrative convenience that risks flawed executions is not a legitimate state interest.").  Mr.
Arthur is at risk that Defendants will disregard their lethal injection protocol at his execution in
some manner that will increase the likelihood that Mr. Arthur will suffer unnecessary pain.

-25-

Defendants attempt to distinguish *Cooey* by stating that Mr. Arthur "does not allege a pattern and practice of deviations from Alabama's lethal injection protocol," but "merely alleges a single instance in a previous execution where he claims witnesses did not observe officials performing one component of the consciousness assessment." (Def. Mot. at 51-52.) This argument fails for several reasons.

*First*, Defendants' attempt to make light of such a crucial deviation is constitutionally intolerable. The Supreme Court has firmly stated that the constitutionality of the three-drug protocol is contingent upon adequate anesthetization of the inmate. *See Baze*, 553 U.S. at 53 ("[F]ailing a proper dose of [anesthetic] that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride.").

*Second*, the *Cooey* court noted that, after a hearing and substantial discovery, "*[t]he latest evidence* presents at least these *four deviations* from the core components of the written protocol." *Cooey*, 2011 U.S. Dist. LEXIS 73606, at *68 (emphasis added). Unlike in *Cooey*, Mr. Arthur has had no access to discovery to produce *any evidence*, and yet Mr. Arthur has shown a major deviation from a core component of the written protocol as it is described by Defendants' own expert. Defendants cannot refuse to disclose the evidence Mr. Arthur needs to support his claim and then fault Mr. Arthur for failing to develop this claim adequately. At this stage in the proceedings, Mr. Arthur has provided sufficient evidence to allege an Equal Protection violation.

Defendants also contend that Mr. Arthur's claim fails because he "does not contend that the alleged deviation was deliberate." (Def. Mot. at 52.) However, whether or not the deviation was deliberate is irrelevant. *See Cooey*, 2011 U.S. Dist. LEXIS 73606, at *98

-26-

("The Court does not question [the Department of Corrections employees'] best intentions . . . . Whatever intentions the governmental actors hold, core deviations that bypass protections cannot and do not logically further the goal of humane executions. . . . Under rational basis scrutiny, Defendants' core deviations are revealed to be irrational.  They are arbitrary and capricious. They are unconstitutional.").  Whatever the reasons, the fact remains that Mr. Arthur has sufficiently pled that Defendants failed to adhere to their own protocol for assessing consciousness of the inmate.  Such a glaring and unwarranted deviation from a crucial component of the protocol selectively introduces risk into certain executions in violation of the Equal Protection Clause of the Fourteenth Amendment.

**F.      The Separation of Powers Claim Is Cognizable by this Court.**

Mr. Arthur alleges that Defendants' unfettered discretion to modify Alabama's lethal injection protocol violates the Alabama Constitution's separation of powers doctrine by failing to provide adequate standards governing the administration of the protocol.  (Am. Compl. ¶ 88.)  It is settled law that Alabama's Legislature may not "abdicate its legislative function by delegating power to another body to make the law."  *Nelson* v. *Donaldson*, 255 Ala. 76, 81 (Ala. 1951).  Yet Mr. Arthur's well-pled allegations establish that the ADOC has been given unfettered discretion to legislate.

As Defendants acknowledge, this Court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  This claim certainly arises out of the same case or controversy as Mr. Arthur's federal claims, sharing a "common nucleus of operative fact" such that this Court has the right to exercise supplemental jurisdiction. *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 725 (1966).  The separation of powers claim is inextricably bound with Mr. Arthur's federal claims because whether the delegation of

-27-

authority is unconstitutional will involve the same set of facts that underlie Mr. Arthur's federal claims.  Finally, for all the reasons asserted herein, the district court should not dismiss the federal claims over which it has original jurisdiction, nor are there other "compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).

> **G.     Mr. Arthur's Claim Is Not Precluded by Inequitable Conduct**

Defendants argue that "because Arthur inexcusably delayed in filing the instant §1983 complaint, this Court should deny Arthur's request for equitable and injunctive relief." (Def. Mot. at 43.)  Contrary to Defendants' argument, Mr. Arthur filed this action promptly upon having reason to believe that Defendants planned to execute him using pentobarbital rather than sodium thiopental.

> **1.     Mr. Arthur Had Notice of Defendants' Intention To Use Pentobarbital No Earlier Than May 19, 2011.**

Mr. Arthur did not have notice that Defendants would actually execute him using pentobarbital rather than sodium thiopental any earlier than May 19, 2011.  Defendants' contention that Mr. Arthur should have deduced from certain publicly available information that such an execution would go forward is disingenuous.  Alabama's decisions, policies and procedures regarding executions completely lack transparency and are made without public notice or input.

> **2.     Mr. Arthur Did Not Delay In Filing This Challenge.**

Assuming *arguendo* that Defendants are correct that Mr. Arthur could have brought this action on May 2, 2011, the delay of which Defendants complain—thirty-seven days—does not constitute an inexcusable delay mandating dismissal.  *See, e.g.*, *Hallford* v. *Allen*, 576 F.3d 1221, 1222 (11th Cir. 2009) (seven months is inexcusable); *Williams* v. *Allen*, 496 F.3d 1210, 1213-14 (11th Cir. 2007) (ten months is inexcusable); *Grayson* v. *Allen*, 491 F.3d 1318,

1323 (11th Cir. 2007) (five months is inexcusable); *Jones* v. *Allen*, 485 F.3d 635, 639-40 (11th Cir. 2007) (four years is inexcusable).  Further, contrary to the facts in all of these cases—*Hallford*, *Williams*, *Grayson* and *Jones*—not only is no execution date currently pending for Mr. Arthur, but the Alabama Supreme Court has already weighed in on the State's motion requesting an execution date and denied it as "prematurely filed."  Order, *Ex parte Thomas Douglas Arthur*, No. 1951985 (Ala. June 22, 2011) (Mr. Arthur's opposition to the State's request for an execution date argued that it would be premature to set a date in light of this very litigation.)  There is thus no reason to believe the Alabama Supreme Court will imminently set an execution date for Mr. Arthur, and any purported delay in filing is irrelevant.

Moreover, the Supreme Court decision underlying all of these cases, *Hill* v. *McDonough*, mandates dismissal of cases where plaintiffs inexcusably delayed *and* "where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."  *Hill* v. *McDonough*, 547 U.S. 573, 584 (2006); *accord Hallford*, 576 F.3d at 1222 ("Because the action could have been filed substantially earlier, the district court . . . found [a stay] would be required only because of Plaintiff's unnecessary and deliberate delay in filing the section 1983 action."); *Williams*, 496 F.3d at 1215 ("There was no justification for Williams's failure to bring his lethal injection challenge earlier to allow sufficient time for full adjudication on the merits of his claim."); *Grayson*, 491 F.3d at 1326 ("If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule."); *Jones*, 485 F.3d at 641 ("[T]he proper query in this case is whether Jones could have brought his claim 'at such a time as to allow consideration of the merits without requiring entry of a stay.'").  Thus, where, as here, a case can be adjudicated on

-29-

the merits without the need for a stay, the unreasonable delay doctrine does not apply.  *See*, *e.g.*, *Florida* v. *Valle*, SC11-1387, Order Denying Motion to Vacate Death Penalty Following Remand (Fla. Cir. Ct. Aug. 3, 2011) (holding evidentiary hearing on constitutionality of lethal injection in two days).

> **H.      Mr. Arthur's Claim Is Not Precluded by *Res Judicata***

Defendants argue that the doctrine of *res judicata* bars this Court from hearing Mr. Arthur's claims.  This is based on the erroneous assumption that the instant action is the same cause of action as prior litigation filed by Mr. Arthur and presents the same issues.  *Res judicata* operates to bar a plaintiff from litigating a particular lawsuit twice where "(1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same."  *Urfirer* v. *Cornfeld*, 408 F.3d 718 n.1 (11th Cir. 2005) (noting that *res judicata* did not apply because the causes of action in the prior and present suits were not identical, even though both suits alleged fraudulent conduct).  Because the cause of action in this suit (a challenge to the use of pentobarbital in execution) is different from the cause of action in prior suits (challenging the use of sodium thiopental), *res judicata* does not apply.  As discussed *supra*, this change to Alabama's lethal injection protocol is significant.  Accordingly, because Mr. Arthur's current action could not have been brought before and presents very different operative facts, Defendants' *res judicata* argument should be rejected.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Dated:  September 22, 2011                    /s/ Suhana S. Han
_____
                                              Suhana S. Han (admitted *pro hac vice*)
                                               NY Bar Registration #3016482
                                              Jordan T. Razza (admitted *pro hac vice*)
                                              Henry C. Quillen (admitted *pro hac vice*)
                                              Meredith A. Calandra (admitted *pro hac vice*)
                                              125 Broad Street
                                              New York, NY  10004
                                              *Counsel for Plaintiff Thomas D. Arthur*

-31-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

```
-----------------------------------------------------------------x
THOMAS D. ARTHUR,                                 :
                                                  :
                    Plaintiff,                    :
              v.                                  :
                                                  :
KIM THOMAS, INTERIM COMMISSIONER,                 :
ALABAMA DEPARTMENT OF                             :
CORRECTIONS,                                      :
in his official capacity,                         :
                                                  :
ANTHONY PATTERSON, WARDEN,                        :        No. 2:11-cv-00438
HOLMAN CORRECTIONAL FACILITY,                     :
in his official capacity, and                     :
                                                  :
OTHER UNKNOWN EMPLOYEES AND                       :
AGENTS, ALABAMA DEPARTMENT                        :
OF CORRECTIONS,                                   :
in their official capacities,                     :
                                                  :
                    Defendants.                   :
                                                  :
-----------------------------------------------------------------x
```

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2011, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to J. Clayton Crenshaw, Esq. and Stephanie Elizabeth Reiland, Esq.

Respectfully submitted,
/s/ Suhana S. Han
Suhana S. Han (admitted *pro hac vice*)
 NY Bar Registration #3016482
125 Broad Street
New York, NY  10004
Telephone:  (212) 448-4000
Fax:  (212) 558-3588
E-mail:HanS@sullcrom.com

-32-