# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

THOMAS D. ARTHUR,                          )
                                           )
      Plaintiff,                       )
                                           )
v.                                         )      Case No: 2:11-cv-438-MEF-TFM
                                           )
KIM THOMAS, Interim Commissioner,          )
Ala. Dept. of Corrections, *et. al.,*      )
                                           )
                                           )
      Defendants.                      )

---

## DEFENDANTS' REPLY TO ARTHUR'S OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

---

Luther Strange
*Attorney General*

J. Clayton Crenshaw
Stephanie E. Reiland
Thomas Govan
*Assistant Attorneys General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7423*
(334) 353-3637 Fax
ccrenshaw@ago.state.al.us

September 29, 2011

# TABLE OF CONTENTS

RELEVANT BACKGROUND INFORMATION ...................................................1

ARGUMENT ...............................................................................................3

I.  ARTHUR'S LETHAL INJECTION ACTION IS BARRED
    BY THE STATUTE OF LIMITATIONS .......................................................3

II. ARTHUR'S PETITION FAILS TO STATE A CLAIM FOR
    WHICH RELIEF MAY BE GRANTED. ....................................................12

    A.  Arthur failed to rebut the Defendants' showing that
        his Eighth Amendment claim fails to state a claim for
        which relief may be granted. .............................................................12

    B.  Arthur failed to rebut the Defendants' showing that
        his due process claim fails to state a claim for which
        relief may be granted. ........................................................................15

    C.  Arthur failed to rebut the Defendants' showing that
        his equal protection claim fails to state a claim for
        which relief may be granted. ..............................................................20

    D.  Arthur failed to rebut the defendants' showing that his
        separation of powers claim should be dismissed for
        lack of subject matter jurisdiction and because it fails
        to state a claim for which relief may be granted. ...............................22

III. ARTHUR'S EIGHTH AMENDMENT CLAIM SHOULD
     BE DISMISSED BECAUSE IT IS BARRED BY THE
     DOCTRINE OF *RES JUDICATA*. .................................................24

IV.  ARTHUR'S METHOD-OF-EXECUTION CHALLENGE
     SHOULD BE DISMISSED BECAUSE IT WAS FILED
     WITH UNJUSTIFIABLE DELAY. ................................................26

CONCLUSION .......................................................................................27

CERTIFICATE OF SERVICE ...................................................................28

Pursuant to this Court's September 1, 2011 order, <u>see</u> Doc. 26, the defendants hereby file the instant reply to Thomas Arthur's brief in opposition to the defendant's motion to dismiss his complaint.  Because this Court advised the parties that it would "address the Defendants' Answer, Doc. #23, only as a Motion to Dismiss, rather than as a Motion for Summary Judgment[,]" <u>see</u> Doc. 30, the instant reply discusses only the issues raised in the motion to dismiss.

## RELEVANT BACKGROUND INFORMATION

In addition to the procedural history and facts set forth in the defendants' motion to dismiss, <u>see</u> Doc. 23 at 4 - 30, the defendants offer the following additional background information to emphasize that Arthur's execution date will likely be set in the near future.

Arthur filed a petition for writ of certiorari in the United States Supreme Court on July 14, 2011; that petition is currently pending before the Court.  <u>Arthur v. Alabama</u>, No. 11-69.  The State filed a brief in opposition to Arthur's petition on September 14, 2011.  A docket search of the United States Supreme Court's website indicates that this case has been distributed for the conference held on October 14, 2011.  <u>See</u> www.supremecourt.gov.  Thus, the Supreme Court's disposition of Arthur's petition will likely be announced in the order list released on Monday, October 17, 2011.  Arthur's pending appeal in the United States Supreme Court concerns his securing an affidavit from inmate Bobby Ray Gilbert,

who is serving a sentence of life without parole, confessing to the crime for which Arthur was convicted.  The case was remanded by the Alabama Supreme Court in 2008 to the Jefferson County Circuit Court and assigned to the Honorable Teresa T. Pulliam to conduct an evidentiary hearing.

The circuit court and the Alabama Court of Criminal Appeals held that "the State presented overwhelming evidence that Gilbert's affidavit [handwritten by Arthur's counsel] is false and that Gilbert and Arthur conspired to fabricate the affidavit."  Arthur v. State, No. CR-08-1944, 2010 WL 1740415, at *10 (Ala. Crim. App. Apr. 30, 2010) (quoting circuit court's order).  Arthur has never disputed this holding and, indeed, he presented no counter evidence during the evidentiary hearing.

On April 20, 2011, the State moved the Alabama Supreme Court to set an execution date for Arthur.  Thereafter, on June 22, 2011, the Alabama Supreme Court issued on order denying the motion "as prematurely filed."  Ex parte Arthur, No. 1951985 (Ala. June 22, 2011) (order).  The order did not explain why the court found that the State's motion was premature.  In Arthur's opposition to the State's motion, however, Arthur contended that the motion was "premature because appellate review of the Circuit Court's denial of Rule 32 relief is not complete and will not be complete until the United States Supreme Court adjudicates Arthur's

petition for a writ of certiorari after it is filed and fully briefed." Arthur's Memorandum at p. 1.

If the United States Supreme Court denies certiorari on October 17, 2011, the State will immediately file a motion requesting the Alabama Supreme Court to set an execution date. Pursuant to the Alabama Rules of Appellate Procedure, the Alabama Supreme Court may set an execution date to be carried out "not less than 30 days from the date of the order." Ala. R. App. P. 8(d)(1). Thus, Arthur's execution date could be set at any point after November 17, 2011.

## ARGUMENT

## I.   ARTHUR'S LETHAL INJECTION ACTION IS BARRED BY THE STATUTE OF LIMITATIONS

Alabama's recent replacement of sodium thiopental with pentobarbital in the three-drug lethal injection sequence underlies the bulk of Arthur's claims in this action. The Eleventh Circuit, in addressing virtually identical complaints, has repeatedly ruled that such complaints are barred by the statute of limitations. See Powell v. Thomas, 643 F.3d 1300 (11th Cir. 2011); DeYoung v. Owens, 646 F.3d 1319 (11th Cir. 2011); Valle v. Singer, __ F.3d __, 2011 WL 3903434 (11th Cir. Sept. 7, 2011). In futile fashion, Arthur attempts to distinguish this precedent. See Doc. 33 at 10-17. The defendants address below the grounds raised in Arthur's opposition. As stated in the defendants' motion to dismiss, this Court should

3

follow Eleventh Circuit precedent and hold that Arthur's lethal injection action is barred by the statute of limitations.  See Doc. 23 at 32-39.

Arthur's cause of action accrued on July 31, 2002, after Alabama changed its method of execution to lethal injection and the inmate knew that he was subject to that form of execution rather than electrocution.  See McNair v. Allen, 515 F.3d 1168, 1177 (11th Cir. 2008) (holding that "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed protocol").  Under Alabama's relevant two-year statute of limitations period, see Doc. 23 at 33, a timely filed lethal injection action should have been filed no later than July 31, 2004.  Arthur filed this action on June 8, 2011, see Doc. 1, well past the expiration of the statute of limitations in 2004.

The recent substitution of pentobarbital as the first of the three-drug lethal injection protocol used by Alabama, Florida, and Georgia has resulted in recent litigation within the Eleventh Circuit.[1]  On May 16, 2011, this Court denied Jason Williams's motion to stay his execution, which relied on the substitution of pentobarbital for sodium thiopental, holding that Williams did not establish a substantial likelihood of success to prove an Eighth Amendment and a Fourteenth

---

[1] As set forth in Doc. 23, Exs. B, C, Hospira, the sole manufacturer of sodium thiopental, quit making that drug under pressure from anti-death penalty activists.

Amendment Due Process violation.  Powell v. Thomas, No. 11-0376, 2011 WL 1843616, *6 - *10 (M.D.Ala. May 16, 2011) (hereinafter, "Powell (Williams)").[2] The Eleventh Circuit affirmed, holding that "[t]he replacement of sodium thiopental with pentobarbital does not constitute a significant alteration in the ADOC's lethal injection protocol, and we conclude that such an amendment does not violate the Eighth Amendment under the cases cited by Williams."  Powell (Williams) v. Thomas, 641 F.3d 1255, 1258 (11th Cir. 2011).

Relying on Powell (Williams), this Court dismissed Eddie Powell's § 1983 action holding that it was barred by the statute of limitations.  Powell v. Thomas, No. , 2011 WL 2292108 (M.D.Ala. 2011).  Specifically, this Court held that that the substitution of pentobarbital for sodium thiopental was not a significant or substantial change in the execution protocol so as to restart the statute of limitations clock.  Powell, 2011 WL 2292108, at *3 - *4.  Additionally, this Court rejected Powell's Fourteenth Amendment Due Process claim based on ADOC's alleged "secrecy" of its processes holding that Powell could have filed such a challenge at any point after 2002.  Id., at *4.  The Eleventh Circuit affirmed. Powell v. Thomas, 643 F.3d 1300 (11th Cir. 2011).  Powell held that the Eighth

---

[2] The plaintiff/appellant in Powell v. Thomas, No. 11-0376, 2011 WL 1843616 (M.D.Ala. June 9, 2011), was Alabama death row inmate Jason Oric Williams.  The case was styled Powell v. Thomas because Williams intervened in Eddie Powell's § 1983 action.  To avoid confusion, the case involving Jason Williams is referred to as Powell (Williams) and the case involving Eddie Powell is referred to as Powell.

Amendment challenge was barred by the statute of limitations, and further that the Eighth and Fourteenth Amendment challenges to the change in the execution protocol based upon the "secrecy" in which it was accomplished were similarly barred by the statute of limitations. Powell, 643 F.3d at 1304-05.

As stated, the Eleventh Circuit decision in Powell affirmed the dismissal of a § 1983 action and not an appeal of a denial of a motion for stay as Arthur erroneously asserts at page two of his opposition. Moreover, Powell held that it did not matter that it applied precedent from Powell (Williams) which rejected a stay of execution:

> Indeed, we recognize that Williams's claim in Powell (Williams) was decided on an appeal from the district court's denial of a motion for a temporary stay of execution. However, as the district court noted, no reason has been offered, and none can be envisioned, why Powell (Williams)'s holding would mean something different when analyzing whether a change in execution protocol is significant or substantial in either circumstance. In both cases, the allegations are identical, and the Powell (Williams) Court clearly went to the merits of the issue when ruling on the motion for stay.

Powell, 643 F.3d at 1305. Consequently, Arthur's argument at page eleven of his opposition that Eleventh Circuit precedent regarding the statute of limitations should be ignored because some of those cases were deciding a stay of execution (and the standard of substantial likelihood of success on the merits) should be rejected.

6

In an effort to distinguish <u>Powell (Williams)</u> and <u>Powell</u>, Arthur references the recent executions of Roy Blankenship in Georgia and Eddie Powell in Alabama.  Doc. 33 at 11-13.  In addition, Arthur references Dr. Lubarsky's declaration which states that "[p]entobarbital is a sedative that is not FDA-approved as an anesthetic and takes 15 to 60 minutes to achieve its intended effect."  Doc. 33 at 11.  Thus, according to Arthur, "the short duration of executions indicates that prisoners are insufficiently sedated when given pancuronium bromide and potassium chloride [the second and third drugs administered during a lethal injection sequence] in light of the short duration of executions in Alabama."  Doc. 33 at 11.  Arthur's purported distinctions are neither new nor, based on Eleventh Circuit precedent, are they sufficient alone or in combination with one another to disregard the statute of limitations.

The Eleventh Circuit rejected the argument that the evidence presented in <u>DeYoung</u> regarding the executions of Powell and Blankenship (which is identical to the factual evidence presented here) restarts the statute of limitations clock. <u>DeYoung</u>, 646 F.3d at 1325-27.  DeYoung contended that the use of pentobarbital subjected him to a substantial risk of serious harm because pentobarbital was insufficiently tested for use as an anesthetic and that in prior executions using pentobarbital, specifically the executions of Blankenship and Powell, the drug failed to "painlessly anesthetize the prisoners." <u>Id.</u>, at 1323.  The Eleventh Circuit

in DeYoung unequivocally reiterated its finding that the substitution of pentobarbital for sodium thiopental does not result in a substantially changed execution protocol. Id. at 1325. Moreover, in addressing whether the evidence of the executions of Blankenship and Powell should restart the statute of limitations clock, the court noted, "the mere act of proffering additional reasons not expressly considered previously will not open the door to reconsideration of the question by a second panel." Id. (quoting Smith v. GTE Corp., 236 F.3d 1292, 1302 (11th Cir. 2001)). Finally, DeYoung held that the evidence concerning the execution in Powell and Blankenship did not undermine the statute of limitations holding in Powell because this evidence lacked merit. DeYoung, 646 F.3d at 1325-27. Arthur presents the same witness statements here, thus DeYoung is binding precedent that his lethal injection action is barred by the statute of limitations. See also Valle v. Singer, No. 11-13891, 2011 WL 3903434 (11th Cir. Sept. 7, 2011) (after evaluating evidence regarding the Blankenship and Powell executions the court held that the lethal injection was time-barred and meritless); Jackson v. Danberg, No. 11-9002, 2011 WL 3906705, at *5 (3rd Cir. Sept. 7, 2011) (holding that the use of pentobarbital did not create a demonstrated risk of severe pain despite the inmate's presentation of evidence concerning the Blankenship and Powell executions).

In the face of this precedent, Arthur comes up with a novel yet frivolous argument.  Specifically, Arthur argues that the statute of limitations should be ignored because he offered two expert witness affidavits from Dr. Mark Heath and Dr. David Lubarsky, neither of whom offered affidavits in the recent Eleventh Circuit litigation concerning pentobarbital.  Doc. 33 at 11-13.  There are several reasons why these affidavits are irrelevant to determining the applicability of the statute of limitations.  First, Arthur offers no authority to support the notion that a statute of limitations may be ignored merely because an expert witness' affidavit is offered.  Second, as stated in the defendants' motion to dismiss, see Doc. 23 at 23-26, Dr. Heath's past testimony extolled the benefits of barbiturates (such as pentobarbital) because that drug's effect lasted longer than the ultrashort-acting sodium thiopental.  Indeed, the inmate in Baze v. Rees also used Dr. Heath as an expert witness and, based on his testimony, argued that the sole use of sodium thiopental or pentobarbital would be a "preferred method of execution."  Baze v. Rees, 553 U.S. 35, 56-57, 128 S.Ct. 1520, 1534-35 (2008) (citing inmate's reply brief at p. 18, n. 6).  Third, neither expert witness affidavit opines that the amount of pentobarbital used by the ADOC will not cause unconsciousness.  Fourth, Dr. Lubarsky's affidavit, most likely carefully crafted by Arthur's counsel, alleges only that pentobarbital will not reach its "maximum effect" for "fifteen to sixty minutes."  Doc. 12, Ex. A at p. 2.  But Dr. Lubarsky's affidavit does not define

9

"maximum effect," thus this statement has little meaning in evaluating the ADOC's execution protocol. Dr. Lubarsky's statement is ridiculous on its face in implicitly asserting that the second and third drugs in an execution protocol should only be administered sixty minutes after pentobarbital is injected. Arthur's expert witness affidavits are irrelevant in determining the applicability of the statute of limitations and they do not establish that unconsciousness is not achieved after the complete administration of a 2500-mg dose of pentobarbital.

Arthur next argues that his Due Process and Separation of Powers claims are not barred by the statute of limitations because "these claims arose out of the [defendants'] conduct that occurred only this year: namely, defendants failure to disclose (i) their dwindling supply of sodium thiopental; (ii) efforts to obtain the drug covertly across state lines[;] (iii) the DEA's seizure of the last of their stockpile; and (iv) their decision to switch drugs until it was clear that they could no longer hide this significant change from the public." Doc. 33 at 7. This argument does nothing to advance Arthur's position, and it wholly fails to rebut the State's showing that Arthur's claims are time-barred. As the Eleventh Circuit recently explained when confronted with a similar argument, "[a]ny allegations regarding the illegal obtention of sodium thiopental are irrelevant givent he substitution of pentobarbital for sodium thiopental in the three-drug protocol." Valle, 2011 WL 3903434, at *12 n.12. Moreover, "the issue of the secrecy

10

surrounding a lethal injection protocol is not revived by switching one of the drugs." Id. at *12 n. 13 (citing Powell, 643 F.3d at 1305). Here, as in Valle, Arthur's allegations concerning the defendants' actions with regard to sodium thiopental are irrelevant to any matter at issue, see id. at *12 n.12, and these allegations have no effect on the statute of limitations.

Arthur argues that the statute of limitations restarted because of an affidavit filed by Anne Adams, counsel for ADOC, in one of Arthur's previously filed lethal injection actions. Doc. 33 at 15. Arthur reads Adams's affidavit to state that ADOC had an "ethical obligation to notify counsel in advance of changes to its execution protocol." Id. However, Arthur's argument cites no authority and it fails to rebut the State's showing that Arthur's claims are time-barred. Moreover, Arthur misreads the purpose of Ms. Adams' affidavit. Ms. Adams is informing Arthur's counsel that the ADOC is incorporating a "consciousness assessment" for future executions but that because Arthur's execution was set for the next day, it was impossible to implement the modification that suddenly. Doc. 33, Ex. C ¶ 6. Finally, as demonstrated in the defendants' motion to dismiss, see Doc. 23, Ex. A, the ADOC did publicly announce the amendment to the ADOC protocol allowing for the use of pentobarbital when sodium thiopental was not available. Thus, the record establishes that the ADOC has announced the changes to its execution protocol.

Arthur next argues that his Equal Protection claim is timely because Eddie Powell's counsel, who witnessed Powell's execution, claim that they did not see Powell's arm being pinched, which is the third part of the graded stimuli consciousness assessment.  Doc. 33, Ex. A, B.  As an initial matter, it must be noted that even Arthur does not dispute that Powell was unconscious after the pentobarbital was administered and the consciousness assessment was performed.  The Eleventh Circuit in DeYoung evaluated the "novel proposition" that a slight deviation in an execution gives rise to an Equal Protection claim and held that any such deviation does not undermine the fact that the claim was barred by the statute of limitations.  DeYoung, 646 F.3d at 1324-25, 1327-28.  This Court should follow DeYoung.

## II.   ARTHUR'S PETITION FAILS TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.

### A.   Arthur failed to rebut the Defendants' showing that his Eighth Amendment claim fails to state a claim for which relief may be granted.

Arthur's opposition, like his complaint, does not establish a plausible claim for relief to establish that the ADOC's execution protocol violates the Eighth Amendment.  "[A] typical Eighth Amendment challenge – alleging that the State will inflict cruel or unusual punishment – requires the inmate to demonstrate that (1) the State is being deliberately indifferent (2) to a condition that poses a substantial risk of serious harm to him."  Powell, 641 F.3d at 1257.  "[T]o prevail

on such a claim there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." Baze, 553 U.S. at 50. Therefore, to state a cognizable or plausible claim for relief, Arthur must demonstrate that there is a substantial likelihood he can satisfy those requirements.

In Baze, the Supreme Court noted that the "proper administration of the first drug, sodium thiopental, eliminates any meaningful risk that a prisoner would experience pain from the subsequent injections of pancuronium and potassium chloride." Baze, 553 U.S. at 49, 128 S.Ct. at 1530. In the instant case, Arthur does not allege with any scientific authority that the administration of pentobarbital will not cause unconsciousness before the second and third drugs are administered. Indeed, 29 executions were carried out this year using pentobarbital and there have been no allegations that any of those inmates were not unconscious after pentobarbital was administered. See www.deathpenaltyinfo.org/execution-list-2011. As previously stated, Arthur's own expert, Dr. Heath, has conceded in past testimony that barbiturates (such as pentobarbital) are preferable because their effect lasts longer than the ultrashort-acting sodium thiopental. See Doc. 23 at 23-26. Moreover, the inmate in Baze also used Dr. Heath as an expert witness and, based on his testimony, argued that the sole use of sodium thiopental or pentobarbital would be a "preferred method of execution." Baze, 553 U.S. at 56-

57, 128 S.Ct. at 1534-35 (citing inmate's reply brief at p. 18, n. 6).  Dr. Dershwitz noted in his affidavit that "[p]entobarbital is the most common agent used for physician-assisted suicide in those jurisdictions where the practice is legal."  Doc. 23, Ex. D, ¶ 13.  <u>See also</u> <u>Valle v. State</u>, No. SC11-1387, 2011 WL 3667696, at *5 (Fla. Aug. 23, 2011) (noting that the inmate's expert witness admitted that pentobarbital is used as part of physican-assisted suicide).

The Eleventh Circuit has consistently held that the use of pentobarbital does not establish an Eighth Amendment violation.  In <u>Powell (Williams)</u>, the Eleventh Circuit upheld the denial of a stay of execution holding "[t]he replacement of sodium thiopental with pentobarbital does not constitute a significant alteration in the ADOC's lethal injection protocol, and … such an amendment does not violate the Eighth Amendment under the cases cited by Williams."  <u>Powell (Williams)</u>, 641 F.3d at 1258.  The Eleventh Circuit in <u>DeYoung</u> held that even if the inmate's claims had been timely filed, "they fail as a matter of law."  <u>DeYoung</u>, 646 F.3d at 1324.  The Court further noted that "DeYoung has wholly failed to show that pentobarbital, once fully administered and allowed to act, is ineffective as an anesthetic."  <u>DeYoung</u>, 646 F.3d at 1327.  Finally, the court held – and the same factual evidence is presented here - that DeYoung failed to "establish a substantial risk of serious harm from the pentobarbital, or even that Blankenship necessarily suffered any harm, much less serious harm."  <u>DeYoung</u>, 646 F.3d at 1326.    The

14

court in <u>Valle</u> held that even if the inmate's claims were timely, "they fail as a matter of law because Valle has not met his burden of affirmatively showing that a substantial risk of serious harm exists or that the risk is substantial when compared to the known and available alternatives." <u>Valle</u>, 2011 3903434, *11 (citing <u>Baze</u>, 553 U.S. at 61, 128 S.Ct. 1520). This Court should follow this precedent and hold that Arthur has not established a plausible claim for relief.

**B.    Arthur failed to rebut the Defendants' showing that his due process claim fails to state a claim for which relief may be granted.**

In their motion to dismiss, the defendants demonstrated that Arthur's procedural due process claim fails to state a plausible claim for relief. <u>See</u> Doc. 23 at 48 - 51. As discussed in the motion to dismiss, both this Court and the Eleventh Circuit have previously rejected identical due process claims, holding that a condemned inmate does not have a due process right to disclosure of the State's lethal injection protocol. <u>See id.</u> (citing <u>Powell (Williams)</u>, 2011 WL 1843616, at *9 - *10; <u>Powell (Williams)</u>, 641 F.3d at 1257-58); <u>see also</u> <u>Valle v. Singer</u>, No. 11-13891, 2011 WL 3903434, at *12 n.13 (11th Cir. Sept. 7, 2011) (reiterating the holding in <u>Powell (Williams)</u> and finding that Florida's "failure to disclose [its protocol] is not unconstitutional."). Arthur's claim is therefore meritless as a matter of law.

Although Arthur attempts to distinguish two of the cases cited in the motion

15

to dismiss, his efforts are unavailing. According to Arthur, "Defendants' citations to Powell (Williams) . . . and Beaty v. Brewer . . . are inapposite because both were decided under the more stringent standards for a stay, preliminary injunction or temporary restraining orders." Doc. 33 at 30. Contrary to Arthur's apparent argument, the procedural postures of those cases had no effect on the courts' holdings that death row inmates have no due process right to disclosure of a state's lethal injection protocol. See Powell, 643 F.3d at 1305 (rejecting the petitioner's attempt to distinguish Powell (Williams) on the ground that Powell (Williams) was decided on an appeal from the district court's denial of a motion for a temporary stay of execution). In both Powell (Williams) and Beaty, the courts decided the merits of the issue, and there is absolutely no reason that these holdings would mean something different when analyzing Arthur's claims. See id.

Arthur has failed to identify any authority which would establish that he has a due process right to disclosure of Alabama's lethal injection protocol. To be sure, he cites two cases in an attempt to support this argument: Mathews v. Eldridge, 412 U.S. 319 (1976) and Oken v. Sizer, 321 F.Supp. 2d 658 (D.Md. 2004). Arthur cited both of these cases in his Amended Complaint. And, as discussed in the defendants' motion to dismiss, neither case provides controlling, or even persuasive, authority to support Arthur's due process claim. See Doc. 23 at 49. The Eleventh Circuit has previously explained that Eldrige does not stand

16

for the proposition that defendants are entitled "to a lethal injection protocol that is legislatively enacted and subjected to extensive litigation." <u>Powell (Williams)</u>, 641 F.3d at 1258.  Arthur's reliance on <u>Oken</u> is similarly misplaced.  As the Arizona district court explained in <u>Beaty</u>, 2011 WL 2164022, at *7, "this Court cannot rely on one district court's unsupported assertion that capital plaintiffs have such a due process right, especially in view of the fact that the United States Supreme Court vacated the stay of execution granted by the district court in <u>Oken</u>."  Consequently neither <u>Matthews</u> nor <u>Oken</u>  support the viability of Arthur's due process claim.

Arthur's next argument – that Alabama's failure to disclose its lethal injection protocol prohibits him from ascertaining the method of his execution and raising and litigating an Eighth Amendment claim – is equally meritless and again ignores binding precedent.  This Court and the Eleventh Circuit have repeatedly rejected identical arguments.  See <u>Valle</u>, 2011 WL 3903434, at *12 n.13; <u>Powell (Williams)</u>, 641 F.3d at 1257-58; <u>Powell (Williams)</u>, 2011 WL 1843616, at *9 - *11; <u>Grayson v. Allen</u>, 491 F.3d 1318, 1323 (11th Cir. 2007).

Indeed, the U.S. District Court for the Southern District of Alabama and the Eleventh Circuit have rejected this argument in the context of Arthur's *own* previous § 1983 actions challenging Alabama's lethal injection statute.  In dismissing one of Arthur's previous § 1983 complaints challenging Alabama's method of execution, the Southern District of Alabama found that sufficient

17

information about Alabama's three-drug lethal injection protocol was available to Arthur well before he filed his complaint on May 14, 2007.[3]  <u>Arthur v. Allen</u>, No. 07-0342, 2007 WL 2320069, at *2 - *3 (S.D.Ala. Aug. 10, 2007) (Steele, J.) (unpublished opinion) (dismissing Arthur's complaint on laches grounds because he unreasonably delayed in filing the action, rejecting the proposition that the confidentiality of Alabama's lethal injection protocol could excuse the delay, and holding that sufficient information about the protocol was available to Arthur by 2006 at the latest).  In affirming the dismissal of this action, the Eleventh Circuit likewise found that Arthur had sufficient information available to file a method-of-execution challenge long before he filed his § 1983 action in 2007.  <u>Arthur v. Allen</u>, 248 Fed. Appx. 128 (11th Cir. 2007) (unpublished opinion), cert. denied 553 U.S. 1004 (2008).  Further, both the district court and the Eleventh Circuit noted that "any assertion of reasonable ignorance" of the lethal injection protocol "is belied by" Arthur's complaint, which described the three-drug protocol, specifically identified the drugs employed, and acknowledged that a number of cases challenging Alabama's three-drug protocol on substantially similar grounds

---

[3]  In the § 1983 action Arthur filed on May 14, 2007, he "challeng[ed] the constitutionality of Alabama's lethal injection protocol, in particular its use of a three-drug sequence including a short-acting anesthetic (sodium pentothal), a drug inducing muscle paralysis (pancuronium bromide), and a final, lethal drug (potassium chloride); its procedures (or lack thereof) for their administration; and its standards (or lack thereof) for persons involved in the execution process." <u>Arthur</u>, 2007 WL 2320069, at *1.

were filed in the summer and fall of 2006.  <u>Arthur</u>, 2007 WL 2320069, at *2 - *3; <u>Arthur</u>, 248 Fed. Appx. 128, at *3.

Arthur argues that the ADOC may attempt to change its lethal injection protocol so close to the date of his execution that he will not have the opportunity to know or challenge the method of his execution.  <u>See</u> Doc. 33 at 13.  He does not allege that such a scenario has ever occurred, and he has alleged no facts indicating that such a scenario is even likely.  Rather, Arthur's allegations on this point are no more than speculation that the defendants may someday attempt to amend the protocol in a manner that will impose on inmates a substantial risk of serious harm, and that the defendants may attempt to do so in complete secrecy, without any notice or opportunity for review.  This baseless speculation is insufficient to state a colorable claim for relief and it cannot serve to overcome the binding precedent holding that death row inmates do not have a due process right to disclosure of the state's lethal injection protocol.  <u>See</u> <u>Valle</u>, 2011 WL 3903434, at *12 n.13; <u>Powell (Williams)</u>, 641 F.3d at 1257-58; <u>Powell (Williams)</u>, 2011 WL 1843616, at *9 - *11; <u>Grayson</u>, 491 F.3d at 1323.

Because Arthur has not, and cannot, overcome the defendants' showing that his due process claim fails to state a claim for which relief may be granted, this Court should dismiss this claim.

19

**C.    Arthur failed to rebut the Defendants' showing that his equal protection claim fails to state a claim for which relief may be granted.**

As discussed in the defendants' motion to dismiss, Arthur's equal protection claim fails to state a cognizable claim for relief.  This claim stems solely from Arthur's allegation that during the June 16, 2010 execution of Eddie Powell, the execution team did not pinch Powell's arm, one of the three elements of the consciousness assessment called for in Alabama's lethal injection protocol.  Doc. 12 at 24 - 25, 39.  Essentially, Arthur argues that because execution team members allegedly failed to pinch Powell's arm during Powell's execution, there is a risk that the defendants will not follow their protocol during Arthur's execution, and thus, Arthur will potentially suffer pain during his execution.

Arthur fails to cite, and the defendants are unaware of, any legal authority that would support his argument that allegations of a single deviation from a state's execution protocol, in a single previous execution, could constitute a violation of another inmate's rights under the equal protection clause.  In fact, it appears that Arthur has attempted place an equal protection label on this claim in an attempt to avoid the legal analysis applicable to similar Eighth Amendment claims.  Further, as discussed in the defendant's motion to dismiss, <u>Cooey v. Kasich</u>, No. 04-1156, 2011 WL 2681193 (S.D.Ohio Jul. 8, 2011), the case upon which Arthur relies in asserting his equal protection claim, is inapplicable in the case at hand.  <u>See</u> Doc.

23 at 53 - 55.  Even if the Ohio district court's decision in <u>Cooey</u> constituted binding authority on this Court (which of course, it does not), <u>Cooey</u>'s holding cannot be stretched to support the equal protection argument Arthur attempts to advance.  <u>See</u> Doc. 23 at 53 - 55.

In their motion to dismiss, the defendants explained that "[n]ot only is there no legal support for Arthur's equal protection claim, but also, the claim is meritless on its face."  <u>See</u> Doc. 23 at 55 - 56.   All of the evidence in this case, including that submitted by Arthur, indicates that Powell's consciousness was assessed, and that he did not respond to the stimuli.  Arthur's assertion that "[f]ailure to pinch the inmate's arm" prior to administering the final two drugs in the protocol "puts the inmate at a constitutionally intolerable risk of serious harm[,]"  Doc. 33 at 13 - 14, is wholly without merit.  Contrary to Arthur's representations, neither the "pinch test" nor any other particular consciousness assessment test is constitutionally required. <u>Baze v. Rees</u>, 553 U.S. 35, 60 (2008).  Because Powell was unconscious prior to the administration of the second and third drugs, the alleged failure to pinch Powell during his execution could not result in a violation of the Eighth Amendment in Powell's case and does not "impermissibly burden[] Mr. Arthur's right to be free from cruel and unusual punishment," Doc. 12 at 39.

Because Arthur's equal protection claim fails to state a cognizable claim for relief, Arthur is not entitled to any relief, and this Court should dismiss his claim.

> **D.** **Arthur failed to rebut the defendants' showing that his separation of powers claim should be dismissed for lack of subject matter jurisdiction and because it fails to state a claim for which relief may be granted**.

In their motion to dismiss, the defendants moved this Court to dismiss Arthur's separation of powers claim -- which contends that Alabama's lethal injection statute violates the separation of powers clause of the Alabama constitution, see Doc. 12 at 29, 40 - 41 -- for at least three independent reasons: (1) this Court lacks jurisdiction to direct State officials to comply with State law; (2) Arthur fails to state a cognizable claim for relief because § 1983 does not extend to a claim that a state statute violates a *state* constitution; and (3) this Court should decline exercise supplemental jurisdiction over Arthur's separation of powers claim because all the factors to be considered under the pendant jurisdiction doctrine point toward declining to exercise jurisdiction over this state-law claim. See Doc. 23 at 56 - 63. Arthur's response completely ignores the defendants' first two arguments, and his response to the third is unpersuasive at best. See Doc. 33 at 33 - 34.

Arthur fails to acknowledge, much less rebut, the defendants' argument that his separation of powers claim should be dismissed because this Court lacks jurisdiction to direct State officials to comply with State law, see Doc. 23 at 59 - 60 (citing U.S. Const. Amend. XI; Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106 (1984)). Nor does he make any attempt to rebut the defendants'

argument that he has failed to state a cognizable claim for relief because § 1983 provides a remedy solely for violations of federal rights, *see* Doc. 23 at 60 - 61. Arthur's silence on these issues speaks volumes.  His failure to address the defendants' arguments indicates that his claim should be dismissed for lack of subject matter jurisdiction and for failing to state a cognizable claim.

In his response to the defendants' motion to dismiss his separation of powers claim, Arthur attempts to address only the defendants' third argument -- that this Court should decline to exercise supplemental jurisdiction.  See Doc. 33 at 33 - 34. He fails, however, to rebut the defendants' argument.  Notably, Arthur does not cite, and the defendants are unaware of, any case in which a federal court has exercised its supplemental jurisdiction to review a claim that a state's lethal injection statute violates a state constitution.  In any event, Arthur's argument is meritless on its face.

Although Arthur impliedly concedes (as he must), that his separation of powers claim involves only a matter of state law, he contends that the claim "is inextricably bound with [his] federal claims because whether the delegation of authority is unconstitutional will involve the same set of facts that underlie [his] federal claims."  Id.  Arthur fails to identify any "facts" which would be relevant to an analysis of his state separation of powers claim.  His failure to do so is unsurprising because a resolution of this claim does not require the analysis of any

factual issue(s).   Rather, Arthur's claim that Alabama's lethal injection statute violates the Alabama constitution raises a pure question of law.   And, as indicated in the defendant's motion to dismiss, that issue should be decided by the Alabama courts, not by the federal courts.   <u>See</u> Doc. 23 at 61 - 63.   Arthur's argument as to why this Court should exercise supplemental jurisdiction over his state law claim is, therefore, meritless.

## III.   ARTHUR'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE DOCTRINE OF *RES JUDICATA*.

Arthur's Eighth Amendment claim is precluded by the doctrine of <u>res judicata</u> and, therefore, should be dismissed.   <u>See</u> <u>Urfirer v. Cornfield</u>, 408 F.3d 710, n.1 (11th Cir. 2005) ("[I]f the later litigation arises from the same cause of action, then the judgment bars litigation not only of every matter which was actually offered and received to sustain the demand, but also of every claim which might have been presented.") .

Contrary to Arthur's contention, his present cause of action and the cause of action in each of his previous two § 1983 lethal injection actions are the same. Each action challenged ADOC's lethal injection protocol and sought to enjoin the defendants from executing him based on this protocol, claiming that it violated the Eighth Amendment.

Arthur's first lethal injection action challenged "the constitutionality of Alabama's lethal injection protocol, in particular its use of a three-drug sequence…" Arthur v. Allen, 07-342-WS, 2007 WL 2320069 at *1 (S. D. Ala. Aug. 10, 2007). Arthur's second lethal injection action again sought injunctive relief, claiming that Alabama's lethal injection protocol, specifically its three-drug sequence, violated the Eighth Amendment. Arthur v. Allen, 07-722, 2007 WL 4105113 (S.D. Ala. Nov. 15, 2007). In fact, the district court in that case noted that Arthur's second action was merely the "second iteration of the plaintiff's challenge to Alabama's lethal injection protocol." Arthur, 2007 WL 4105113 at *1. In each case, the District Court in the Southern District of Alabama dismissed Arthur's lawsuit based on the equitable principle that he unnecessarily delayed in filing his action and the Eleventh Circuit affirmed in each case. See Arthur v. Allen, 07-13929, 248 Fed. Appx. 128 (11th Cir. Sept. 17, 2007); Arthur v. Allen, 07-15877, 285 Fed. Appx. 705 (11th Cir. July 29, 2008).

Here, once again, Arthur seeks a declaratory judgment adjudicating the method of execution Alabama will use to execute him unconstitutional and injunctive relief enjoining the state Defendants from executing him using lethal injection based on the claim that Alabama's lethal injection protocol and procedures violate the Eighth Amendment. See Doc. 12 at 35-37. Arthur's challenge to ADOC's modification of its execution protocol to allow for the use of

pentobarbital, instead of sodium thiopental, as the first drug in the three-drug protocol, does not change the fact that he has presented, yet again, an Eighth Amendment claim challenging Alabama's lethal injection protocol.  The present cause of action is not different than the first two because, as the Eleventh Circuit has held, "[t]he replacement of sodium thiopental with pentobarbital *does not constitute a significant alteration* in the ADOC's lethal injection protocol."  Powell v. Thomas, 643 F.3d 1300, 1304 (11th Cir. 2011) (emphasis in original).  Thus, Arthur is wrong: his Eighth Amendment claim raises nothing new and that claim is barred by res judicata.  Therefore, because Arthur previously has filed two lethal injection actions concerning ADOC's execution protocol, and twice has been denied injunctive relief, his current Eighth Amendment claim is barred by res judicata.

## IV. ARTHUR'S METHOD-OF-EXECUTION CHALLENGE SHOULD BE DISMISSED BECAUSE IT WAS FILED WITH UNJUSTIFIABLE DELAY.

As discussed above, in the "relevant background information" portion of this reply, Arthur's execution date could be set as soon as November 17, 2011.  As stated in the state defendants' motion to dismiss, see Doc. 23 at 60-64, this case (including appeals) cannot be resolved by mid-November.  The precedent cited in the motion to dismiss requires this Court to deny equitable and injunctive relief if Arthur's late-filed complaint does not allow for sufficient time to address the

26

merits of the action.  Accordingly, because Arthur inexcusably delayed in filing he instant § 1983 complaint, this Court should deny Arthur's request for equitable and injunctive relief.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the defendants' August 15, 2011 motion to dismiss, <u>see</u> Doc. 23, this Court should dismiss Arthur's § 1983 action.

Respectfully submitted,

Luther Strange,
*Attorney General*

**s/ J. Clayton Crenshaw**
J. Clayton Crenshaw
*Assistant Attorney General*

**s/ Stephanie E. Reiland**
Stephanie E. Reiland
*Assistant Attorney General*

**s/ Thomas R. Govan**
Thomas R. Govan
*Assistant Attorney General*

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2011, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:   **Suhana S. Han, Jordan T. Razza, and Meredith A. Calandra.**

*s/ J. Clayton Crenshaw*
J. Clayton Crenshaw
*Assistant Attorney General*

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
ccrenshaw@ago.state.al.us
sreiland@ago.state.al.us
tgovan@ago.state.al.us

28