IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. ARTHUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:11-cv-438-MEF |
| | ) | (WO) |
| KIM THOMAS, Interim | ) | |
| Commissioner, Alabama Department | ) | |
| of Corrections, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Thomas D. Arthur is an Alabama death row inmate who is likely to face imminent execution under the Alabama Department of Corrections's ("ADOC") revised lethal injection protocol that replaces the first drug of its three drug cocktail – sodium thiopental – with pentobarbital.[1]  Arthur commenced this 42 U.S.C. § 1983 action on June 8, 2011, amid a challenge by Eddie Powell (another Alabama death row inmate) to ADOC's replacement of sodium thiopental with pentobarbital.  After Powell's death by execution under Alabama's revised protocol, Arthur filed an Amended Complaint (Doc. # 12) that is before the Court on Defendants' fully-briefed motion to dismiss, or in the alternative, for summary judgment (Docs. # 23, 33, 34).  Upon careful consideration of the arguments of counsel and the relevant law, the Court concludes that Defendants' motion to dismiss is due to be **GRANTED**.

---

[1] On October 25, 2011, the State of Alabama filed a motion to set an execution date with the Alabama Supreme Court.  The State attached the motion to a Notice (Doc. # 35) filed with this Court.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may raise a statute of limitations defense when the complaint shows on its face that the limitations period has run. *Avco v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *see also Bhd. of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) ("A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.").

In assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true and construe them in a light most favorable to the plaintiff. *See Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1344-45 (11th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In addition to considering the properly pleaded allegations in a complaint, the court may also consider on a motion to dismiss any exhibits attached to the complaint, *see Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005), as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III.  BACKGROUND

**A.      Arthur's Crimes and Conviction**[2]

In 1982, Arthur was serving a life sentence after being convicted of the murder of a relative of his common-law wife in 1977. He had shot the victim in the right eye, causing nearly instant death. By early 1982, Arthur was on work-release and was involved in a sexual relationship with a married woman named Judy Wicker. At Mrs. Wicker's urging, the affair turned deadly when Arthur murdered her husband, Troy Wicker, on February 1, 1982. As Troy Wicker lay in his bed, Arthur, disguised as an African-American man, shot him once in his right eye, causing nearly instant death.

After two reversals of convictions, an Alabama jury convicted Arthur of Troy

---

[2] *See generally Ex parte Arthur*, 711 So. 2d 1097 (Ala. 1997); *Arthur v. State*, 711 So. 2d 1031 (Ala. Crim. App. 1996).

Wicker's murder at his third trial. At the penalty phase, Arthur took an unusual position by arguing for a capital sentence. Arthur stated on the record his belief that he could obtain a reversal if sentenced to death, that the sentence would never be carried out, and that he would receive better prison accommodations on death row. Despite cautioning Arthur against this extraordinary legal tactic, the trial court allowed him to proceed, but refused to exclude mitigating evidence. By a vote of eleven to one, the jury obliged Arthur's request and recommended capital punishment. The trial court agreed and imposed the death sentence. Arthur's convictions became final after the Alabama Supreme Court's 1997 decision in *Ex parte Arthur*, 711 So. 2d 1097. Arthur did not file a petition for *certiorari* with the United States Supreme Court.

**B.**     **Arthur's Collateral Attacks**

The Alabama Supreme Court set its first execution date on April 27, 2001, after which Arthur began to collaterally challenge his conviction and sentence for the first time. The next ten or so years were highlighted by numerous post-conviction petitions filed in state court and federal habeas petitions, several § 1983 actions, and three missed execution dates. *See Arthur v. King*, 500 F.3d 1335, 1337-38 (11th Cir. 2007) (listing Arthur's proceedings as of the date of the opinion, which would have been titled "*Arthur XXII*" by the court's count); *see also Arthur v. State*, No. 08cr1944, 2010 WL 1740415 (Ala Crim. App. April 30, 2010) (denying a subsequent Rule 32 petition).

C.  **ADOC's Lethal Injection Protocol and Recent Revision**

On July 1, 2002, Alabama adopted lethal injection as its preferred method of execution and gave inmates already on death row 30 days to affirmatively select electrocution. Arthur did not opt out of the lethal injection protocol and became subject to execution by lethal injection on July 31, 2002. Ala. Code § 15-18-82.1(a) and (b); *see also McNair v. Allen*, 515 F.3d 1168, 1171 (11th Cir. 2008). Pursuant to subsection (g) of the same statute, "[t]he policies and procedures of [ADOC] for execution of persons sentenced to death shall be exempt from the Alabama Administrative Procedure Act . . . ." Ala. Code § 15-18-82.1. In other words, neither the protocol itself nor the process by which ADOC amends the protocol is publicly available. In his Amended Complaint, Arthur describes ADOC's lethal injection protocol as "shrouded in secrecy." (Am. Compl. ¶ 6.)

Despite the alleged secrecy, it was well known that, until April 26, 2011, ADOC conducted lethal injections by administering three drugs sequentially to achieve a loss of consciousness, paralysis, and finally death by cardiac arrest. The drugs administered were sodium thiopental, pancuronium bromide, and potassium chloride. However, due to well-chronicled circumstances that made sodium thiopental all but unavailable, ADOC announced publicly on April 26, 2011 that it was changing the first drug in its lethal injection protocol from sodium thiopental to 2,500 mg of pentobarbital. (Am. Compl. ¶¶ 32-46, 60; *see also* Am. Compl., Ex. A ("Media Advisory").)

On July 23, 2011, Arthur filed his Amended Complaint under § 1983.  His primary claim is that Alabama's intention to execute him using pentobarbital creates an "objectively intolerable risk of harm," *Baze v. Rees*, 553 U.S. 35, 50 (2008), and violates his Eighth Amendment right to be free from cruel and unusual punishment.  In support of this claim, Arthur avers that pentobarbital is "intermediate-acting" and takes effect more slowly than the "ultrashort-acting" sodium thiopental, (Am. Compl. ¶¶ 3, 58); refers to the declarations of two experts who conclude "that the use of pentobarbital would very likely cause serious harm[,]" (Am. Compl. ¶ 4); points to the executions of Eddie Powell in Alabama and of Roy Blankenship in Georgia, and their alleged responses to pentobarbital as evidence of pentobarbital's ineffectiveness, (Am. Compl. ¶¶ 62-66); and cites a position paper by Lundbeck, Inc., the sole U.S. manufacturer of pentobarbital, wherein the company states that it opposes the use of pentobarbital for executions because such use "falls outside its approved indications" and because Lundbeck could not "assure the . . . efficacy" of the drug in such a setting, (Am. Compl. ¶ 48).

In Count II, Arthur alleges that ADOC's "veil of secrecy" regarding its lethal injection protocol violates his right to due process of law under the Fourteenth Amendment.  (Am. Compl. ¶¶ 106-110.)  Count III alleges that ADOC's alleged failure to follow its protocol in the execution of Eddie Powell violates the equal protection clause of the Fourteenth Amendment.  (Am. Compl. ¶¶ 111-117.)  Finally, in Count IV, a state law claim, Arthur alleges that Alabama's lethal injection statute impermissibly delegates to ADOC absolute

authority regarding its lethal injection protocol in violation of § 43 of the Alabama Constitution.

## IV.  DISCUSSION

A.  **Counts I and II Are Barred by the Statute of Limitations**

"'All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.'" *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quoting *McNair*, 515 F.3d at 1173). Because Alabama's statute of limitations governing general tort actions is two years, *see* Ala. Code § 6-2-38(l), Arthur must have brought these claims within two years of their accrual date. *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989).

A "method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair*, 515 F.3d at 1174. Defendants argue that Arthur last became subject to a new substantially changed execution protocol on July 31, 2002, when Alabama adopted lethal injection. *Powell v. Thomas*, 643 F.3d 1300, 1304 (11th Cir. 2011) (stating that "Powell's challenge to execution by lethal injection accrued on July 31, 2002, absent a later 'significant change' in the state execution protocol"). Arthur proposes that the recent switch to pentobarbital constitutes a just such a change, and has given rise to a new method of execution claim not barred by the statute of limitations.

The flaw with Arthur's argument is that recent decisions from the Eleventh Circuit foreclose his method of execution claim in Count I. In *Powell(Williams) v. Thomas*, 641 F.3d 1255, 1258 (11th Cir. 2011), the Eleventh Circuit, addressing the plaintiff's claim that he had an Eighth Amendment right to know the details of his execution, stated that "[t]he replacement of sodium thiopental with pentobarbital does not constitute a significant alteration in the ADOC's lethal injection protocol . . . ." *Id.* In *Powell*, the Eleventh Circuit characterized the statement from *Powell(Williams)* as "binding precedent" and reasoned that "if the change in protocol is not a 'significant alteration' for purposes of an Eighth Amendment notice claim, we cannot see how it would constitute a significant change for purposes of a statute of limitations' triggering date" on an Eighth Amendment method of execution claim. 643 F.3d at 1305. The *Powell* court then stated that it was "obliged to reject Powell's attempt to relitigate the issue of whether the ADOC's action in changing the first drug in the lethal injection protocol from sodium thiopental to pentobarbital is a 'significant' change for purposes of *McNair*." *Id.*

Arthur attempts to distinguish his case from *Powell* and *Powell(Williams)* by arguing that he has "presented evidence that has not yet been considered by the Eleventh Circuit or any District Court in this Circuit." (Pl.'s Resp. 10 (Doc. # 33).) The Eleventh Circuit considered and rejected just such an argument in *DeYoung v. Owens*, 646 F.3d 1319, 1325 (11th Cir. 2011). In that case, DeYoung attempted to distinguish his case from *Powell and Powell(Williams)* by "argu[ing] that the evidence he proffered in this record undermines the

premise of *Powell*." *Id.* Relying on principles of law regarding previous panel holdings, the Eleventh Circuit stated that "'the mere act of proffering additional reasons not expressly considered previously will not open the door to reconsideration of the question by a second panel.'" *Id.* (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1302 (11th Cir. 2001)).[3] Accordingly, Arthur's attempt to distinguish his case based upon "additional reasons" does not change the Court's statute of limitations analysis, and Count I is due to be dismissed.

As to Arthur's claim in Count II – a Fourteenth Amendment due process claim challenging ADOC's "veil of secrecy" regarding its lethal injection protocol – the Eleventh Circuit in *Powell* held that Powell's identical claim was barred by the statute of limitations. *Powell*, 643 F.3d at 1305 ("As the district court held, Powell could have challenged the ADOC's 'secrecy' surrounding the method of execution beginning July 31, 2002, as the facts

---

[3] The court then indulged DeYoung by evaluating his additional evidence, and concluded that the evidence did not undermine the *Powell* and *Powell(Williams)* holdings. DeYoung's additional evidence included accounts of the Roy Blankenship and Eddie Powell executions, also cited by Arthur as evidence that the pentobarbital substitution creates an "objectively intolerable risk of harm," *Baze*, 553 U.S. at 50. This evidence was rejected in *DeYoung* in the context of evaluating a motion for a stay. *Id.* at 1325-27 & n.5. Even accepting as true Arthur's evidence regarding the Powell and Blankenship executions at the motion to dismiss stage, Powell's and Blankenship's alleged reactions to pentobarbital are not sufficient to undermine legally the *Powell* and *Powell(Williams)*'s statute of limitations analyses under *McNair*. *See also Iqbal*, 129 S. Ct. at 1949 (stating that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The Lundbeck position paper cited by Arthur was rejected in the motion to stay context in *Valle v. Singer*, 655 F.3d 1223 (11th Cir. 2011), and is equally insufficient. Finally, Arthur presents the declarations of Dr. David Lubarsky and Dr. Mark Heath (Am. Compl., Exs. A & B), both of whom suggest that pentobarbital may take far longer to achieve unconsciousness than sodium thiopental. (Lubarsky Decl. ¶ 8 (15 to 60 minutes for pentobarbital versus 60 seconds for sodium thiopental); Heath Decl. ¶ c.) The Eleventh Circuit has considered and rejected similar arguments regarding the length of time for pentobarbital to take effect. *DeYoung*, 646 F.3d at 1327. Put succinctly, the Court is bound by the body of law from the Eleventh Circuit holding that the pentobarbital substitution "does not constitute a significant alteration of the ADOC's lethal injection protocol[.]" *Powell(Williams)*, 641 F.3d at 1258; *Powell*, 643 F.3d at 1305; *DeYoung*, 646 F.3d at 1325, 1327; *Valle*, 655 F.3d 1223, App'x at 25.

supporting this cause of action 'should have been apparent to any person with a reasonably prudent regard for his rights.'" (quoting *McNair*, 515 F.3d at 1177)). Like Powell, Arthur was on death row as of July 31, 2002, and could have challenged ADOC's "secrecy" beginning on the effective date of the statute. *Id.* The same result is mandated in this case, and Count II is due to be dismissed as barred by the statute of limitations.

B.    Count III:  The Fourteenth Amendment Equal Protection Claim

To state an equal protection claim, Arthur must show that the State will treat him disparately from other similarly situated persons. *See DeYoung*, 646 F.3d at 1327 (citing *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009)). Arthur alleges that ADOC's failure to follow its protocol in the execution of Eddie Powell – allegedly by not observing its consciousness assessment fully, which includes pinching the condemned inmate's arm – "burden[s] Mr. Arthur's fundamental right to be free from cruel and unusual punishment . . . ." (Am. Compl. ¶ 117.) Assuming that observation of the "pinch test" is constitutionally significant, Arthur's allegation, that ADOC's protocol was not followed in one prior execution, does not raise his right to relief above a speculative level. *See Twombly*, 550 U.S. at 555. Count III is due to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

C.    Count IV:  Violation of Alabama's Constitution

28 U.S.C. § 1367(c) states that "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has

10

dismissed all claims over which it has original jurisdiction . . . ." § 1367(c)(3). Having dismissed Plaintiff's § 1983 claims, the court exercises its discretion to decline supplemental jurisdiction over Plaintiff's claim that Alabama's lethal injection statute, Ala. Code § 15-18-82, violates the Alabama Constitution. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) (a district court's decision to decline supplemental jurisdiction is reviewed for abuse of discretion).

## V.  CONCLUSION

Arthur's Eighth Amendment method of execution and Fourteenth Amendment due process claims are barred by the applicable statute of limitations. Arthur was required to file his claims on or before July 31, 2004. Arthur's Fourteenth Amendment equal protection claim is too speculative to survive Defendants' motion to dismiss. Finally, the Court declines to exercise supplemental jurisdiction over Arthur's state law claim. Accordingly, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 23) is GRANTED; and supplemental jurisdiction over Count IV is DECLINED.

An appropriate final judgment will be entered.

DONE this 3rd day of November, 2011.

                                            /s/ Mark E. Fuller
                                        UNITED STATES DISTRICT JUDGE