IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

```
-----------------------------------------------------x
                                                     :
THOMAS D. ARTHUR,                                    :
                                                     :
                            Plaintiff,               :
                                                     :
                v.                                   :
                                                     :
KIM THOMAS, COMMISSIONER,                            :
ALABAMA DEPARTMENT OF                                :
CORRECTIONS,                                         :
in his official capacity,                            :   No. 2:11-cv-00438
                                                     :
WALTER MYERS, WARDEN,                                :
HOLMAN CORRECTIONAL FACILITY,                        :
in his official capacity, and                        :
                                                     :
OTHER UNKNOWN EMPLOYEES AND                          :
AGENTS, ALABAMA DEPARTMENT                           :
OF CORRECTIONS,                                      :
in their official capacities,                        :
                                                     :
                            Defendants.              :
                                                     :
-----------------------------------------------------x
```

## **MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Mr. Arthur challenges Defendants' three-drug lethal injection protocol under the Eighth and Fourteenth Amendments to the U.S. Constitution. More than three years into this litigation, with no advance warning, the State has replaced two out of three of the lethal injection drugs it intends to use to execute Mr. Arthur. As many other courts have done when confronted with a change to the state's execution protocol in the midst of active litigation, this Court should grant Mr. Arthur leave to filed a second amended complaint (attached as Exhibit A).

## PROCEDURAL HISTORY

On June 8, 2011, Mr. Arthur filed his original complaint in this action, alleging that Defendants' plan to execute him using a three-drug lethal injection protocol consisting of pentobarbital, pancuronium bromide and potassium chloride violated his right to be free of cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment. (Compl., Dkt. # 1 (June 8, 2011).) Shortly thereafter, on July 22, 2011, Mr. Arthur filed an amended complaint alleging further that Defendants' failure to apply necessary safeguards, including a consciousness test, in a consistent manner burdened his right to equal protection under the Fourteenth Amendment. (Amended Compl., Dkt. # 11 (July 22, 2011).)

On August 15, 2011, Defendants moved to dismiss the amended complaint and alternatively, for summary judgment. (Defs.' Mot. To Dismiss, Dkt. # 23 (Aug. 15, 2011).) This Court (Fuller, J.) granted Defendants' motion, but the U.S. Court of Appeals for the Eleventh Circuit subsequently reversed this Court's order and remanded the case for further factual development. (Mem. Op. & Order Granting Mot. to Dismiss, Dkt. # 37 (Nov. 3, 2011); Per Curium Op., Dkt. # 49 (Mar. 21, 2012).)

On August 3, 2012, Defendants filed another motion to either dismiss the amended complaint or to grant summary judgment. (Defs.' Second Mot. to Dismiss, Dkt. # 53 (Aug. 3, 2012).) Less than a month later, this Court denied Defendants' "renewed" motion on both grounds and instead ordered an evidentiary hearing, which was held on October 18 and 19, 2012. (Order Denying Defs.' Second Mot. to Dismiss, Dkt. # 58 (Aug. 21, 2012).) Subsequently, the State filed, and this Court denied, a motion for summary judgment. (Defs.' Mot. For Summ. J., Dkt. # 147 (Apr. 5, 2013); Mem. Op. & Order, Dkt. # 159 (Sept. 30, 2013).)

On March 27, 2014, a status conference was held before this Court, during which time counsel for Defendants advised that the Alabama Department of Corrections' ("ADOC") supply of manufactured pentobarbital had expired and that it had not yet decided how to proceed. On May 19, 2014, another status conference was held, at which time counsel for Defendants advised this Court that the ADOC had not yet adopted a new protocol.

On July 7, 2014, Defendants moved to postpone a status conference scheduled for July 9, representing that "defendants [did] not have any recent developments to report." (Defs.' Mot. to Postpone, Dkt. # 175 (July 7, 2014).) The Court granted Defendants' request and rescheduled the status conference for September 12, 2014 cautioning that "another continuance [would] not be looked upon favorably by this Court." (Order Granting Defs.' Mot. to Postpone, Dkt. # 178 (July 9, 2014).) The day before the rescheduled status conference was to take place, on September 11, 2014, Defendants filed a motion in the Alabama Supreme Court seeking an execution date for Mr. Arthur. (Mot. to Set an Execution Date, Attached as Exhibit B, at 1-2.) This motion disclosed, for the first time, that the State's lethal injection protocol had been materially modified to provide for the use of midazolam hydrochloride as the first drug and rocuronium bromide as the second drug in the State's three-drug protocol. (*Id.* at 2.)

On the same day, Defendants also filed on September 11 a motion to dismiss Mr. Arthur's Eighth Amendment claim as moot in light of the revised protocol, which apparently concedes that the changes to the protocol are significant.

The status conference proceeded as scheduled the next day. During that conference, after hearing from both sides on the issue, this Court ordered Mr. Arthur to file a proposed amended complaint and an accompanying motion to amend. (Tr. of Sept. 12, 2014 Status Conference ("Sept. 12 Tr.") at 11:7-10, Dkt # 187 (Sept. 12, 2014).)

On September 23, counsel for Mr. Arthur requested that Defendants provide a copy of the State's revised lethal injection protocol.  (Email from Suhana Han to Thomas Govan and Clay Crenshaw (Sept. 23, 2014), attached as Exhibit C ("Ex. C").)  Claiming that Defendants "have already provided [counsel] all of the relevant information from the DOC execution protocol pertaining to the lethal injection in the Motion to Set an Execution Date filed in the Alabama Supreme Court," counsel for Defendants refused.  (*Id.*)

## LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that courts "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).  Courts in this Circuit interpret this Rule liberally, explaining that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'"  *Sims* v. *Montgomery Cnty. Comm'n*, 873 F. Supp. 585, 610 (M.D. Ala. 1994) (quoting *Chitimacha Tribe of Louisiana* v. *Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982)).  This liberal approach is consistent with the purpose of the Rule, which is to assist the disposition of the case on its merits.  *Id.*

Additionally, Rule 15(a) severely restricts the district court's freedom to deny leave to amend—indeed, courts should grant leave "unless a substantial reason exists to deny leave to amend."  *Shipner* v. *E. Airlines Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) (citations omitted); *see also Stringer* v. *Jackson*, 392 F. App'x 759, 760-61 (11th Cir. 2010) (holding that it was an abuse of discretion to deny leave to amend where plaintiff's section 1983 case had not yet been dismissed); *McKinley* v. *Kaplan*, 177 F.3d 1253, 1255-58 (11th Cir. 1999) (holding that it was an abuse of discretion to deny leave to amend out of concern that plaintiff sought amendment to avoid dismissal of section 1983 case on mootness); *Gremegna* v. *Johnson*, 846 F.2d 675, 677-78 (11th Cir. 1988) (holding that it was plain error for court below to deny leave to amend on grounds that plaintiff could simply file another section 1983 action); *Sandoval* v.

*Hagan*, 7 F. Supp. 2d 1234, 1246-48 (M.D. Ala. 1998), *rev'd on other grounds*, 121 U.S. 1511, 1523 (2001) (granting leave to amend where no substantial basis for denial existed).

In this Circuit, "[t]he lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *Bryant* v. *Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) (reversing denial of leave to amend "because the litigation had been ongoing for over three years"); *see also Floyd* v. *E. Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir. 1989), *rev'd on other grounds*, 499 U.S. 530, 532 (1991) ("The mere passage of time, without anything more, is an insufficient reason to deny leave to amend."). Rather, a court should only deny leave to amend if it finds that circumstances particular to the case, such as undue delay, bad faith, repeated failure to cure deficiencies, or undue prejudice, exist. *See Foman*, 371 U.S. at 182.

## ARGUMENT

### I. Granting Mr. Arthur Leave To Amend His Complaint Will Serve the Interests of Justice.

In light of the Defendants' significant changes to Alabama's lethal injection protocol, Mr. Arthur should be permitted to amend his complaint to reflect these changes that were recently disclosed for the first time.

*First*, district courts routinely grant death row inmates leave to amend in cases where, as here, states change or disclose aspects of their lethal injection protocols, and such information previously was unknown to plaintiffs. *See*, *e.g.*, *In re Lombardi*, 741 F.3d 903, 904 (8th Cir. 2014) (leave to amend granted after Department of Corrections changed lethal injection protocol to include use of compounded pentobarbital); *Hoffman* v. *Jindal*, No. 12-796-JJB, 2014 WL 130981, at *1 (M.D. La. Jan. 10, 2014) (noting that plaintiffs filed amended complaint after magistrate ordered disclosure of state's lethal injection protocol); *Morales* v. *Cate*, 757 F. Supp.

2d 961, 962 (N.D. Cal. 2010) (explaining that plaintiff amended complaint pursuant to court order after California changed its lethal injection regulations); *Cooey* v. *Strickland*, No. 2:04-cv-1156, 2009 WL 4842393, at *2 (S.D. Ohio Dec. 7, 2009) (stating that plaintiff successfully amended his complaint to target the state's new lethal injection protocol).

*Second*, the need for Mr. Arthur to amend his complaint is "not attributable to any negligence or fault on the part of" Mr. Arthur. *McKinley*, 177 F.3d at 1258. Rather, Mr. Arthur seeks to amend his complaint to account for the changed circumstances caused by the State's recent decision to change the drugs in its lethal injection protocol. Mr. Arthur could not have included such information in his first amended complaint in 2011, because the State did not finalize its decision to modify its lethal injection protocol until September 10, 2014, almost three years later. (Sept. 12 Tr. at 6:25-7:6.) Nor could Mr. Arthur have anticipated that the State planned to make such a change, considering that the State shrouds its execution policy in secrecy, and Defendants repeatedly have denied Mr. Arthur information regarding their lethal injection protocol. In fact, Defendants unjustifiably have refused to provide a copy of the most recent protocol. (*See* Ex. C.)

*Third*, permitting Mr. Arthur leave to amend would serve the interests of judicial economy. Mr. Arthur's Eighth and Fourteenth Amendment claims are directly linked because the State claims that the key safeguard against an excruciatingly painful death is the consciousness assessment, but the State has failed to conduct such an assessment in a consistent manner or has failed to conduct it properly. (*See* Mem. Op. & Order, Dkt. # 159 (Sept. 30, 2013) (noting that "there is overlap" between the Eighth and Fourteenth Amendment claims in this case).) In fact, this Court has itself recognized the intertwined nature of these claims with regard to the State's use of midazolam. (Sept. 12 Tr. at 5:4-5) (recognizing that challenging the

consciousness assessment necessarily places "a new protocol in issue").)  At the September 12 status conference, the State admitted that, regardless of whether the Court granted the State's motion to dismiss Mr. Arthur's Eighth Amendment claim as moot, the Fourteenth Amendment Claim—focusing on the consciousness assessment—would remain in this case.  (Sept. 12 Tr. at 3:22-5:4.)  Thus, it would be more efficient to grant Mr. Arthur leave to amend, which would permit him to keep his Eighth and Fourteenth Amendment claims together, than it would to deny leave to amend, which would require the claims to proceed on separate tracks.  (*See* Sept. 12 Tr. at 11:1-5 (suggesting that "either the whole case goes or the whole case stays with an amended complaint").)

## II. Granting Leave To Amend Will Not Result in Undue Delay or Unfair Prejudice.

Granting Mr. Arthur leave to amend his complaint will not result in undue delay.  The mere fact that filing an amended complaint will necessarily lengthen the time it takes to litigate Mr. Arthur's case cannot serve as grounds to deny leave to amend.  *Bryant*, 252 F.3d at 1164; *Floyd*, 872 F.2d at 1490.  Far from engaging in dilatory tactics, Mr. Arthur is moving to amend his complaint within weeks after Defendants first revealed to Mr. Arthur and the Court that the State had substantially changed its lethal injection protocol.  Indeed, any delay related to this litigation should be attributed to Defendants, who waited ten months after their supply of pentobarbital expired to announce their new protocol.

Nor will granting leave to amend unduly prejudice Defendants.  To the extent that the State's decision to change its lethal injection protocol raises issues requiring further fact or expert discovery, this Court has stated that it will consider permitting both sides such discovery.  (Sept. 12 Tr. at 15:8-16.)  This opportunity for additional discovery will ensure that Defendants will not be unfairly prejudiced by granting Mr. Arthur leave to amend.  Rather, it would be Mr. Arthur who would be unduly prejudiced if he were required to initiate a completely new action,

since his pro bono counsel has already expended significant time and resources litigating this case involving inextricably intertwined Eighth and Fourteenth Amendment claims.

## CONCLUSION

For the foregoing reasons, Plaintiff Thomas Arthur respectfully requests leave to file a second amended complaint (attached as Exhibit A) pursuant to Federal Rule of Civil Procedure 15(a)(2).

Dated: October 3, 2014

Respectfully submitted,

Suhana S. Han (admitted *pro hac vice*)
NY Bar Registration # 3016482
Peter A. Steciuk (admitted *pro hac vice*)
Meredith A. Sherman (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Counsel for Plaintiff Thomas D. Arthur*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2014 I electronically filed the foregoing, along with a redacted version of Exhibit A, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: J. Clayton Crenshaw, Esq.

I further hereby certify that on October 3, 2014 I caused an unredacted version of Exhibit A to be filed with the Clerk of the Court via hard copy. I also ensured that an unredacted version of Exhibit A was sent to the following: J. Clayton Crenshaw, Esq.

_____
Suhana S. Han (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 448-4000
Fax: (212) 558-3588
E-mail: HanS@sullcrom.com