IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. ARTHUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-438-WKW |
| | ) | (WO -- Do Not Publish) |
| KIM TOBIAS THOMAS, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the State's Emergency Motion to Alter or Amend Memorandum Opinion and Order filed January 5, 2015, in which this court found that the Eleventh Circuit's March 23, 2012 order staying Plaintiff Thomas Arthur's execution on March 29, 2012 "is and will remain in place until the Eleventh Circuit Court of Appeals issues an order dissolving or otherwise lifting the stay."[1] (Doc. # 198.) The State's motion requests that the court remove "all language referencing the existence of an injunction or stay of execution" from its January 5, 2015 Memorandum Opinion and Order (hereinafter "January 5 Order") because the court "exceeded its lawful authority" when it made such a finding. (Doc. # 198, p. 1, 14.) Arthur filed a response to the State's motion on January 12, 2015. (Doc. # 200.)

---

[1] The January 5, 2015 Memorandum Opinion and Order also granted Arthur leave to amend his remaining Eighth Amendment and Fourteenth Amendment equal protection claims to reflect the State's September 2014 changes to its lethal injection protocol, namely, the switch in the drugs used from pentobarbital to midazolam hydrochloride as the first drug, and pancuronium bromide to rocuronium bromide as the second drug. (Doc. # 195.) Arthur filed his Second Amended Complaint on January 7, 2015. (Doc. # 197.)

For the reasons explained below, the State's motion is due to be DENIED.

## I.  STANDARD OF REVIEW

Because the State's motion is seeking review of an interlocutory decision, the court "is 'not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) or 60(b).'"  *Braswell Wood Co., Inc. v. Waste Away Group, Inc.*, No. 2:09-cv-891-WKW, 2011 WL 255627, at *1 (M.D. Ala. Jan. 26, 2011) (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008)); *see also* Fed. R. Civ. P. 59(e) (a motion to alter or amend requires a judgment); *Denson v. United States*, 574 F.3d 1318, 1335 n. 52 (11th Cir. 2009) (noting that Rule 60(b) does not apply to non-final orders).  "Reconsideration of an interlocutory order is appropriate in three general circumstances: '(1) when a party presents the court with evidence of an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice.'"  *Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-cv-4126-SLB, 2014 WL 4452679, at * 3 (N.D. Ala. Sept. 8, 2014) (quoting *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)).

## II.  DISCUSSION

The Alabama Supreme Court having set a February 19, 2015 execution date for Arthur, and with an active death warrant in hand, the State now contends that this court abused its discretion when it found in its January 5 Order that the Eleventh Circuit's stay of Arthur's March 29, 2012 execution, which was entered six days before the execution, remained in place.  The State argues that the Circuit's stay was limited solely to Arthur's

March 29, 2012 execution date, and when that date passed and the execution warrant expired, so did the Circuit's stay. As a result, the State argues, the Alabama Supreme Court was within its purview to set Arthur's execution any time after March 29, 2012, irrespective of the litigation before this court, which has been pending for a number of years and has been ready for trial since September 2013.[2] The arguments by the State cannot be reconciled with the plain language of the stay, the intended purpose of the stay, and the State's prior positions and actions in this lawsuit.

The language of the stay related to Arthur's execution reads as follows: "Appellant's Motion for a Stay of the Execution set for March 29, 2012 is GRANTED until further order of this court [*i.e.*, the Eleventh Circuit]." (Doc. # 50.) To the court's knowledge, the Circuit has not issued a "further order" regarding or even mentioning this stay, and a subsequent order of this nature is precisely the type of order that this court believes the Circuit was contemplating when it ordered Arthur's March 29, 2012 execution stayed "until further order of this court." As a matter of logic, if Arthur's March 29, 2012 execution was stayed "until further order" of the Circuit, and no such order has been issued, then the stay remains in place until it is lifted or otherwise dissolved by the Circuit. As the State points out, words do indeed have meaning. This court's January 5 Order gave the plain language in the

---

[2] The State also takes an inconsistent position by arguing that orders by the Circuit entered after March 29, 2012, constitute the "further order" needed to dissolve or lift the stay. It now argues that either the Circuit's July 25, 2012 denial of its petition for rehearing *en banc* of the Circuit's decision in *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012), or the Circuit's August 3, 2012 mandate, qualifies as the "further order." Either the passage of time beyond March 29, 2012, extinguished the stay automatically, or it did not.

Circuit's stay "until further order of this Court" its most literal meaning.[3]

The State's arguments also are belied by the very purpose of the stay.  There is no dispute that one of the reasons the Circuit stayed Arthur's March 29, 2012 execution was to provide the Circuit with sufficient time to consider the State's *en banc* petition.  Yet the Circuit did not deny that petition until July 25, 2012, several months after it had been filed.[4] It makes little sense for the Circuit to stay Arthur's execution to provide the court  with sufficient time to consider the State's *en banc* petition if the stay did not continue beyond the March 29, 2012 execution date.  Further, as Arthur points out, the stay was necessary for the district court to have adequate time to effectuate the Circuit's mandate, namely, to permit "factual development, including discovery between the parties" on Arthur's Eighth Amendment and Fourteenth Amendment equal protection claims.  *Id.* at 1262–63.  Even the State recognized in a previously (and very recently) filed motion to dismiss that "[t]he Eleventh Circuit stayed Arthur's execution on March 23, 2012, for this Court to make findings of fact concerning pentobarbital and Arthur's equal protection allegations."  (Doc.

-----

[3]  The court also finds no support in *Nelson v. Campbell*, 541 U.S. 637 (2004), *Hill v. McDonough*, 464 F.3d 1256 (11th Cir. 2006), or *Diaz v. McDonough*, 472 F.3d 849 (11th Cir. 2006), for the State's contention that the stay of the March 29, 2012 execution expired on March 30, 2012, with the expiration of the execution warrant.  *Nelson* involved a stay of execution that was granted pending the disposition of a petition for writ of certiorari to the United States Supreme Court and would expire either when the petition was denied or when the judgment of the Court was sent down. *Nelson*, 540 U.S. 942 (citation to order granting stay).  Neither *Hill* nor *McDonough* concerned a previous court-issued stay, and both of those cases involved § 1983 actions filed mere days before a scheduled execution date.  *Hill*, 464 F.3d at 1257; *McDonough*, 472 F.3d at 850. Moreover, Arthur has pointed to several cases where, contrary to the State's arguments, stays of execution have continued despite the execution date having passed.  (*See* Doc. # 200, n. 4.)

[4]  The State filed its *en banc* petition on March 26, 2012.

# 186, ¶ 23.)

As both parties have recognized, the intended purpose of the stay was to allow the district court the opportunity to conduct additional proceedings, including an evidentiary hearing, to resolve the issue of whether the change in drugs (at that time from sodium thiopental to pentobarbital) constituted a "significant" change to Alabama's lethal injection protocol. It was the State that adopted the September 2014 changes to its lethal injection protocol during the course of this litigation, after an initial evidentiary hearing on the prior protocol, and after a substantial and quiet delay. The Circuit was clear, *in this very case*, that Arthur's Eighth Amendment and Fourteenth Amendment equal protection claims cannot be resolved without the opportunity for factual development. *Id.* at 1261–63. Although the Circuit was considering the switch from sodium thiopental to pentobarbital when it decided *Arthur*, it strains reason to conclude that the Circuit would have intended *no* consideration of a new, unlitigated protocol when it had ordered evidentiary consideration of an *old* protocol that *had* been litigated. This is particularly so when the State delayed in adopting the changes, no discovery has been conducted in this case with respect to the use of midazolam, and no inmate has been executed in Alabama using midazolam. While the State may continue to ignore the Circuit's decision in *Arthur*, it nonetheless remains the law of this case until further order of the Circuit.

Also undercutting the merit of the State's arguments is the fact that the State's

position in its current motion is contrary to its prior positions and actions in this litigation.[5] The State now contends that the Circuit's stay dissolved on March 30, 2012 (or maybe on July 25, 2012, or even August 3, 2012), and that the pendency of this litigation has, in essence, no bearing on whether the Alabama Supreme Court can set Arthur's execution date. However, rather than file another motion to set Arthur's execution with the Alabama Supreme Court, which the State's motion implies it could have done, the State continued to litigate the pentobarbital and pinch test issues for almost ***two more years***, never moving to set another execution date for Arthur until the same day it announced its new protocol.[6] In

---

[5] In its January 5 Order, the court acknowledged its frustration with "Arthur's propensity to manipulate the litigation process," and that sentiment continues today. (Doc. # 195, n. 2.) Yet the court would be remiss if it did not acknowledge a similar frustration with the State's litigation tactics in this case. The State continues to make arguments that have been squarely addressed and rejected by both this court and the Circuit, wasting the parties' and the court's resources. In fact, when looking at the State's filings in this case following the Circuit's decision in *Arthur*, it is as if the State believes that decision never existed. In addition, it appears that the State changes its positions in this case whenever it is convenient. For example, the State recognized in its September 11, 2014 Motion to Dismiss Arthur's Eighth Amendment Claim for Mootness that the stay (at issue here) was issued by the Circuit for the district court to make findings of fact concerning Arthur's remaining claims, but then argued in its January 8, 2015 emergency motion that the only reason the stay was issued, and the only reason the stay was requested, was to give the Circuit sufficient time to consider the State's *en banc* petition. As Arthur explains in response to the State's emergency motion, this is untrue. Another example is when the State conceded at the September 11, 2014 status conference that Arthur's Fourteenth Amendment equal protection claim was not mooted by the change to midazolam and was ready for trial, only to contradict this in subsequent arguments in its almost 80-page October 17, 2014 opposition to Arthur's motion for leave to file a second amended complaint that Arthur's equal protection claim was barred by the statute of limitations, that Arthur lacked standing to bring this claim, that the Defendants had immunity to this claim, and that Arthur's equal protection claim failed under Rule 12(b)(6). The court certainly understands the significant public interest in resolving cases in a timely manner, particularly when the case involves the enforcement of criminal judgments, but neither Arthur nor the State is without fault in extending this process beyond what was likely necessary to resolve the salient issues.

[6] Following the State's logic in its current motion that the March 29, 2012 stay dissolved on March 30, 2012, this course of action could have proved more fruitful for the State because a

fact, in its September 11, 2014 motion to dismiss Arthur's Eighth Amendment claim for mootness, the State represented that it "seeks a resolution to this action and ***an end to the stay***[.]" (Doc. # 186, p. 12) (emphasis added).

As the court has recognized, Arthur is no stranger to litigation, but the State is no stranger to gamesmanship either. Indeed, the State informed the court and Arthur of the newest changes to Alabama's lethal injection protocol through a motion to set Arthur's execution filed with the Alabama Supreme Court the very same day — September 11, 2014 — nearly ***six months*** after the State informed the court and Arthur that its supply of pentobarbital was no longer available, a ***year*** after Arthur's claims were ready for trial following the denial of summary judgment, and ***one day*** before the status conference with this court, which had been postponed repeatedly at the State's request. Now the State advocates principles of federalism and comity — principles of which this court is quite cognizant[7] — after it has sought and obtained from the Alabama Supreme Court a date of execution for Arthur with a new protocol that, in the State's own words, "mooted the concerns" raised by Arthur's § 1983 complaint. (Doc. # 198, p. 7.) Yet decisions whether Arthur's claims in this case are mooted, and, if they are not, how those claims should move forward, are decisions that live in this court, not in a party's briefing in another court. This

---

scheduled execution date would have forced Arthur to file another motion to stay execution, where Arthur's burden would have been much more difficult to meet than the burden he faced in response to the State's motion to dismiss/motion for summary judgment.

[7] Indeed, this court declined to exercise jurisdiction over Arthur's state law claim, which was based on an alleged improper delegation of decision-making authority from the Alabama legislature to the Alabama Department of Corrections, on comity grounds. (*See* Doc. # 159.)

court has the utmost respect for the Alabama Supreme Court and is sensitive to the issues created by the State's management of its protocol and filings here. The question is, after all the twists and turns, may one reasonably conclude that the Circuit intended that Arthur be executed under an unlitigated protocol. In view of the mandate of the Circuit, the answer is no.

Either way, with the recent setting of a February 19, 2015 execution date, the court has been boxed into addressing the Circuit's stay, a necessity that has trampled like an elephant into this litigation room. The alternative of ignoring the stay is tantamount to ignoring the Circuit and the law of this case. Moreover, it would result in a waste of the court's time and resources. If the court has misinterpreted the stay, it will respectfully comply with instructions from the Circuit, but to wholly ignore the plain language of the stay is not an option given the Circuit's mandate and the gravity of the issues at stake.[8]

## III. CONCLUSION

The State has not demonstrated a clear error of law or fact in the court's January 5 Order that warrants a change. Accordingly, for the reasons explained above, it is ORDERED that the State's motion (Doc. # 198) is DENIED. A scheduling order is immediately forthcoming, setting a final hearing date for May 5-6, 2015, with appropriate pleading,

---

[8] This litigation is not happening in a vacuum. Arthur is set to be the first prisoner in Alabama to be executed using the September 2014 protocol. The undersigned has five other § 1983 lawsuits pending before him that bring constitutional challenges to Alabama's new protocol, all at various stages in the litigation process. Strong consideration is being given to the procedural interplay of the scheduled evidentiary hearing in *Arthur*, given that identical or similar issues are present in these other cases.

8

discovery, and motion deadlines.

DONE this 15th day of January, 2015.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE