IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS D. ARTHUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 2:11-cv-438-WKW |
| v. ) | (WO -- Do Not Publish) |
| ) | |
| WALTER MYERS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This is a § 1983 lethal injection challenge. Before the court is Plaintiff Thomas D. Arthur's Emergency Motion to Stay Execution. (Doc. # 216.) Having carefully considered the motion, the parties' respective arguments, and the applicable law, the court finds that Arthur's motion is due to be GRANTED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The factual background and procedural history of this case have been thoroughly recounted in the prior opinions of this court and the Eleventh Circuit Court of Appeals. Following is a brief summary relevant to this opinion.

Arthur is an Alabama inmate sentenced to death. On June 8, 2011, Arthur filed an action under 42 U.S.C. § 1983 challenging the constitutionality of Alabama's method-of-execution under the Eighth and Fourteenth Amendments to the United States Constitution. Arthur's initial complaint challenged the three-drug cocktail used by Alabama at the time, namely, pentobarbital (which had been recently switched from sodium thiopental), pancuronium bromide, and potassium chloride.

Since the filing of Arthur's initial complaint in 2011, this case has proceeded on a long and increasingly convoluted litigation path. On September 30, 2013, following an evidentiary hearing held in accordance with the Eleventh Circuit's mandate in *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012), summary judgment was denied on Arthur's Eighth Amendment cruel and unusual punishment claim (based on the substitution of pentobarbital for sodium thiopental) and Fourteenth Amendment equal protection claim (based on the pinch test), readying those claims for a trial on the merits. (Doc. # 159.) However, just a few months later, in March 2014, the State informed the court during a status conference that its supply of pentobarbital had expired (a circumstance that was predictable) and that, as a result, the State would be adopting a new lethal injection protocol "at some point in the future" that would not use pentobarbital. (Doc. # 174.)

Several status conferences were subsequently set but postponed at the parties' requests.[1] In August 2014, the case was reassigned to the undersigned judge. A status conference was finally held on September 12, 2014, but the day before, the court and Arthur learned for the first time — through a motion to schedule Arthur's execution filed by the State with the Alabama Supreme Court — that Alabama had adopted a new lethal injection protocol, this time switching the first drug to midazolam and the second to rocuronium bromide. (Doc. # 185.) In light of these changes, the State moved to dismiss as moot Arthur's Eighth Amendment claim, but notably not his Fourteenth Amendment equal

---

[1] Three of these continuances were requested by the State (*see* Docs. # 168, 172, 175), and one was requested by Arthur (*see* Doc. # 179).

protection claim.[2]  (Doc. # 186.)  Briefing was scheduled for an anticipated amended complaint, but was somewhat extended because of the last minute change in protocol announced by the State.

On December 23, 2014, the Alabama Supreme Court granted the State's motion to schedule Arthur's execution and set Arthur's execution date for Thursday, February 19, 2015.  (Doc. # 193-1.)  The Alabama Supreme Court set this execution date for Arthur notwithstanding the pendency of his § 1983 action in this court.

Two weeks later, on January 5, 2015, this court granted Arthur leave to amend his remaining Eighth and Fourteenth Amendment claims to take into account the September 2014 changes to Alabama's lethal injection protocol, and denied the State's motion to dismiss Arthur's Eighth Amendment claim as moot.  (Doc. # 195.)  In that order, the court further held that the Eleventh Circuit's March 23, 2012 stay of Arthur's execution remained in place, noting that the Circuit had not yet entered a further order dissolving or otherwise lifting the stay.  (Doc. # 195.)  Arthur filed his second amended complaint on January 7, 2015, restating his Eighth and Fourteenth Amendment claims under Alabama's new protocol. (Doc. # 197.)

---

[2] With respect to Arthur's equal protection claim, the State acknowledged in its motion to dismiss Arthur's Eighth Amendment claim as moot that

> the midazolam substitution does not affect the resolution of count 3, Arthur's equal protection claim, which has *not been made moot*.  However, the State posits that this Court may decide count 3 without further litigation, given the facts and testimony currently before the Court.

(Doc. # 186, n.6) (emphasis added).

On January 8, 2014, the State filed a motion to alter or amend the January 5, 2015 order holding that the Circuit's March 23, 2012 stay of Arthur's execution remained in place. (Doc. # 198.) That motion was denied on January 15, 2015, and the court entered a scheduling order, setting discovery deadlines and a final hearing on Arthur's claims for May 5-6, 2015. (Docs. # 201, 202.) The State moved to dismiss Arthur's second amended complaint on January 21, 2015, and that motion was denied on January 29. (Docs. # 203, 210.)

Meanwhile, on January 21, 2015, the State petitioned the Eleventh Circuit for a writ of mandamus ordering this court to remove the language from its January 5, 2015 order holding that the Circuit's 2012 stay of Arthur's execution remained in effect. Two days later, on January 23, 2015, the United States Supreme Court agreed to review a § 1983 lawsuit brought by a group of death row inmates challenging Oklahoma's lethal injection protocol under the Eighth Amendment. *See Warner v. Gross*, No. 14-6244, 2015 WL 137627, at *1 (10th Cir. Jan. 12, 2015), *cert. granted sub nom. Glossip v. Gross*, 2015 WL 302647, at *1 (U.S. Jan. 23, 2015) (Nos. 14-7955, 14-A761). The lethal injection cocktail at issue in *Gross* consists of 500 milligrams of midazolam, 100 milligrams of vecuronium bromide, and 240 milliequivalents of potassium chloride, which is identical to Alabama's except for Alabama's substitution of 600 milligrams of rocuronium bromide[3] as the second drug. *Gross*, 2015 WL

---

[3] There does not appear to be any material difference between rocuronium bromide and vecuronium bromide; both are paralytics. *See Warner v. Gross*, 135 S. Ct. 824, n.* (2015) (5-4 decision) (Sotomayor, J., dissenting) (order denying plaintiff Warner's request for a stay of execution).

137627 at *3. The Supreme Court is expected to address the constitutionality of the use of midazolam in Oklahoma's three-drug protocol, as well as other issues arising after its seminal 2008 lethal injection decision in *Baze v. Rees*, 553 U.S. 35 (2008) (plurality opinion of Roberts, C.J.). In light of its decision to take up these issues, the Supreme Court entered an order on January 28, 2015, staying the scheduled executions using midazolam of three of the *Gross* inmates. *Glossip v. Gross*, 2015 WL 341655, at *1 (U.S. Jan. 28, 2015) (No. 14-7955 (14-A796)) (order granting stays of execution using midazolam).

On February 12, 2015, the Circuit granted in part and denied in part the State's mandamus petition, stating that the stay order entered on March 23, 2012, was vacated and that Arthur could seek an injunction or restraining order from this court to stay his February 19, 2015 execution. (Doc. # 214.) Seizing upon the Circuit's comment, Arthur filed an emergency motion to stay execution on February 13, 2015, which the State has opposed. (Doc. # 216.) The court ordered and the parties submitted expedited briefing, but given that Arthur's motion to stay was filed less than a week before his scheduled execution, there is simply insufficient time for the court to conduct an evidentiary hearing on the matter. Instead, the court will decide Arthur's motion based on the briefs and evidence submitted by the parties.

## II. STANDARD OF REVIEW

The grant or denial of a stay of execution is within the district court's discretion. *Muhammad v. Sec'y, Fla. Dep't of Corrs.*, 739 F.3d 683, 688 (11th Cir. 2014). A stay "is not available as a matter of right," even where execution is imminent. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Rather, "a stay of execution is an equitable remedy[,]" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*; *see also Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983). Both the State and the victims of crime "have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584.

"A motion for a stay filed by a death row inmate who challenges the method of his execution is treated the same as any other motion for a stay." *Powell v. Thomas*, 784 F. Supp. 2d 1270, 1273 (M.D. Ala. 2011). A "death row inmate is afforded no preferential treatment by his filing of a motion to stay, and all requirements for a stay must be satisfied." *Id.* The requirements mirror those applicable to obtaining injunctive relief, meaning that before a court can issue a stay, it must determine whether the movant has shown (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would not be adverse to the public interest. *Id.* at 1274; *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). "[T]he movant must clearly carry the burden of persuasion in order for the court to grant a stay." *Powell*, 784 F. Supp. 2d at 1274 (alteration to original).

Finally, when a motion for a stay of execution is filed shortly before the scheduled execution, "the extent to which the inmate has delayed unnecessarily in bringing the claim" must be considered. *Id.* (internal quotations omitted). That is because "[a] 'strong equitable presumption' applies 'against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Hill*, 547 U.S. at 584; *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)) (alteration to original).

### III. DISCUSSION

**A.     Unnecessary Delay**

As an initial matter, the court notes that the State has not argued that Arthur should be denied a stay of execution because he unreasonably delayed in bringing this action, nor could it. Arthur filed this lawsuit in 2011, over four years ago, and he promptly sought, and was granted, leave to amend his complaint following Alabama's announcement of a new protocol in September 2014. If anything, any delay in Arthur's most recent challenge to Alabama's protocol is chargeable to the State, because the State waited nearly six months after informing the court and Arthur that its supply of pentobarbital was no longer available, and a year after Arthur's claims were ready for trial, before announcing its new protocol.[4]

---

[4] As previously stated, Arthur's motion to stay his execution was filed on February 13, 2015, less than a week before his scheduled February 19, 2015 execution. Holding an evidentiary hearing on this motion in less than a week, particularly when the week includes a federal holiday and Arthur's counsel and experts are located out-of-state (New York, Louisiana, Florida, and Colorado), was simply not feasible.

At first blush, it would appear that Arthur should bear any resulting harm, as he waited until

Thus, this analysis will proceed *without* the strong equitable presumption against entry of a stay because of inexcusable delay.

**B.      Balancing the Equities**

While a stay of execution is an "extraordinary and drastic remedy," its "primary justification . . . is to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).[5] It is in that spirit that Arthur points the court to the recent grant of certiorari and stays of execution by the Supreme Court in the *Gross* case as justification for a stay here. The court acknowledges the fact that the Supreme Court will consider in *Gross* the constitutionality of

---

the eve of execution to seek a stay. Yet, in the context of the last two years of litigation, this harm is more chargeable to the State. As previously explained in the court's January 15, 2015 Memorandum Opinion and Order, Arthur's claims have been ready for trial since September 2013. After informing the court in March 2014 that its supply of pentobarbital was no longer available (a fact the State likely knew much earlier), the State waited nearly six months before announcing its new protocol, and only did so through a motion to set Arthur's execution filed with the Alabama Supreme Court. The State then moved to dismiss Arthur's Eighth Amendment claim as moot (but not his Fourteenth Amendment claim) and represented in that motion that it was seeking an end to the Circuit's March 2012 stay of Arthur's execution. When the Alabama Supreme Court entered an order on December 23, 2014, setting Arthur's execution for February 19, 2015, despite the pendency of this action, Arthur presumably relied on the State's representation in September 2014 that it was seeking an end to the stay, indicating that the State believed the Circuit's stay was still in place. Thus, it was reasonable for Arthur not to immediately seek a new stay. However, it became clear when the State objected to the language in this court's January 5, 2015 order holding that the Circuit's March 2012 stay remained in place, that the State had changed its position on this issue. The State then filed a petition for a writ of mandamus with respect to this court's January 5, 2015 order on January 21, 2015, and that motion was resolved by the Circuit on February 12, 2015. Thus, Arthur moved to stay his execution as soon as he reasonably could given the unique circumstances of this case.

[5] The Eleventh Circuit has adopted all prior decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the use of midazolam in a lethal injection drug cocktail virtually identical to Alabama's, as well as the continued relevance and implications of its 2008 decision in *Baze*, and that the resolution of those issues will directly affect Arthur's claims. But the court cannot overlook the law in the Eleventh Circuit's decision in *Schwab v. Secretary, Department of Corrections*, 507 F.3d 1297 (11th Cir. 2007), requiring it to ignore the implications and aftermath of the Supreme Court's grant of certiorari in *Gross* as a basis for granting a stay.[6]

Still, *Schwab* does not require the outright denial of a stay of execution in situations such as this. What *Schwab* precludes is the district court's use of a grant of certiorari by a higher court "as a basis for granting a stay of execution that *would otherwise be denied*." *Id.* at 1298 (emphasis added).[7] As explained in more detail below, Arthur would be granted a stay of execution irrespective of the Supreme Court's grant of certiorari in *Gross*. Thus, while *Gross* and its implications are certainly not lost on this court, neither are they a basis for its decision here.[8]

---

[6] There are five other cases pending in this district as § 1983 challenges to the use of midazolam, among other issues, in the new Alabama lethal injection protocol. The Circuit has made it clear in this case that issues of this sort in Alabama require an evidentiary hearing.

[7] Indeed, the district court in *Schwab* made clear that the Supreme Court's grant of certiorari in *Baze* was the only reason it was granting a stay of execution. *Schwab*, 507 F.3d at 1298. That is not the case here.

[8] The court is also cognizant of the fact that a stay of execution cannot be granted solely to permit a "fair hearing." *See Ferguson v. Sec'y, Fla. Dep't Corrs.*, 494 F. App'x 25, 27 (11th Cir. 2012) (holding that a district court abused its discretion when it summarily concluded that a stay of execution was necessary to permit a fair hearing). As *Gross* and its implications are not a factor, and certainly not the sole factor, in this court's decision today to stay Arthur's execution, neither is the need to permit Arthur a fair hearing. Still, as this court explained in its January 15, 2015 opinion, an evidentiary hearing is needed, and, in fact, mandated, in this very case. (Doc. # 201 at 5 ("Although the Circuit was considering the switch from sodium thiopental to pentobarbital when

That being said, the court will now move forward with balancing the equities and determining whether Arthur has satisfied his burden of establishing that he is entitled to a stay of his execution. For the reasons that follow, these factors weigh in favor of a stay.

### 1. Substantial Likelihood of Success on the Merits

When assessing substantial likelihood of success on the merits, Arthur need only meet this burden as to one of his claims. *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("To secure preliminary injunctive relief, a petitioner must demonstrate a substantial likelihood of prevailing on at least one of the causes of action he has asserted."); *Muhammad v. Crews*, No. 3:13-cv-1587-J-32JBT, 2013 WL 6844489, at *6 (M.D. Fla. Dec. 27, 2013), *aff'd sub nom. Muhammad v. Sec'y, Fla. Dep't of Corrs.*, 739 F.3d 683 (11th Cir. 2014), *cert. denied sub nom. Muhammad v. Crews*, 134 S. Ct. 894 (2014) ("If Muhammad cannot satisfy his burden of demonstrating a substantial likelihood of success as to at least one of his claims, his motion must be denied."); *Pardo v. Palmer*, No. 3:12-cv-1238-J-32JBT, 2012 WL 6106331, at *2 (M.D. Fla. Dec. 10, 2012), *aff'd*, 500 F. App'x 901 (11th Cir. 2012) ("If Pardo cannot satisfy his burden of demonstrating a substantial likelihood of success as to at least one of his claims, his motion must be denied."); *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000) ("It is sufficient if the law or facts support a substantial likelihood of success on at least one claim

---

it decided *Arthur*, it strains reason to conclude that the Circuit would have intended *no* consideration of a new, unlitigated protocol when it had ordered an evidentiary consideration of an *old* protocol that *had* been litigated. This is particularly so when the State delayed in adopting the changes, no discovery has been conducted in this case with respect to the use of midazolam, and no inmate has been executed in Alabama using midazolam.").)

that would sustain the issuance of a temporary restraining order."). The court finds that Arthur has met his burden of establishing a substantial likelihood of success on the merits of his Fourteenth Amendment equal protection claim.

Meeting the likelihood of success criterion necessarily involves stating a legitimate claim. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005). But "the district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Arthur alleges that the State's failure to consistently perform an adequate consciousness assessment and, in many cases, to perform a consciousness assessment at all, even though such an assessment is part of the State's lethal injection protocol, violates his Fourteenth Amendment equal protection rights by creating a substantial risk of needless suffering and introducing selective risk into his execution. (Doc. # 197.) Following a 2012 evidentiary hearing, this court denied summary judgment on this claim, finding that execution team members had "the sort of wide-ranging understanding of the required amount of force [for the pinch test] that one might expect to occur when lay persons are asked to perform a task more often performed by trained medical professionals and yet also are not afforded specific, uniform instructions on how to perform the task." (Doc. # 159, n.8.) This was in addition to the testimony of numerous witnesses, including two attorneys who practice criminal law extensively in this district, that they did not observe a pinch test at executions they attended, though they were in a position to do so. (Doc. # 159.)

Although the State tries to limit Arthur's equal protection claim to whether the

11

consciousness assessment will be performed,[9] the claim is more than that. It also goes to whether the consciousness assessment will be performed consistently and adequately on Arthur such that he will not be subjected to an unconstitutionally painful death. Notwithstanding the recent switch in drugs, the evidence presented on this issue has not changed since the court's evidentiary hearing on pentobarbital in 2012. In fact, the parties have stipulated that the prior deposition testimony of certain ADOC employees on this issue remains "binding" and that these testimonies are not any less probative due to the passage of time or changes in ADOC personnel. (Doc. # 205.) Because this evidence shows wide-ranging differences among witnesses as to whether the State has even performed the required consciousness assessment in past executions, and will therefore perform it on Arthur, and as to whether, if such an assessment is performed, the State will perform it adequately, Arthur has established a substantial likelihood of success on the merits of his Fourteenth Amendment equal protection claim.

With Arthur having met his burden as to his Fourteenth Amendment equal protection claim, the court need not discuss whether he has shown a substantial likelihood of success on the merits of his Eighth Amendment claim.

### 2. Balancing the Harms

The remaining elements of the stay analysis require the court to weigh the competing harms. If a stay is not entered, Arthur will be executed in two days. The very nature of this

---

[9] In the context of Arthur's motion to stay, the State appears to attack Arthur's equal protection claim factually, rather than on the threshold viability of this claim.

case means that Arthur's likelihood of success on the merits of his equal protection claim points to an irreparable injury without a stay, *i.e.*, an unconstitutional execution. The State undoubtedly has an interest in the timely enforcement and finality of a criminal judgment, as do victims and the public. However, both have an even stronger interest in carrying out criminal judgments, particularly executions, in a constitutionally acceptable manner. Moreover, the court cannot ignore that the State itself jeopardized the timely enforcement of Arthur's sentence by delaying for more than two years after the Circuit's March 2012 stay of Arthur's execution expired — a stay that the State, based on recent filings with this court and the Circuit, clearly did not believe extended beyond Arthur's previously set March 29, 2012 execution date — to request that Arthur's execution be scheduled. The State also waited until September 11, 2014, to inform Arthur and the court of the adoption of its newest protocol, nearly six months after it informed the court that its supply of pentobarbital had expired and a year after Arthur's Eighth and Fourteenth Amendment claims were ready for trial following the denial of summary judgment. (*See* Doc. # 201.)

As a result, the court finds that, in balancing the harms, the threatened irreparable injury to Arthur outweighs the harm that a stay of his execution would work on the State and the public. The entry of a stay of execution would not be adverse to the public interest. To the contrary, the public interest would be better served by resolving Arthur's constitutional challenge, rather than executing him via a potentially unconstitutional lethal injection

13

protocol.[10]

## IV. CONCLUSION

Because Arthur has met his burden, he is entitled to a stay of his execution. Accordingly, and for the reasons stated herein, it is ORDERED that Arthur's Emergency Motion to Stay Execution (Doc. # 216) is GRANTED. Arthur's February 19, 2015 execution date is STAYED pending a trial and final decision on the merits of his claims. The trial will be held on May 5-6, 2015, as set forth more fully in the court's January 15, 2015 scheduling order. (Doc. # 202.)

DONE this 17th day of February, 2015.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] Moreover, the setting of Arthur's execution at such a late date in this litigation, even after the State conceded that his pending equal protection claim was not mooted by the September 2014 change in drugs and that this claim could proceed to trial, could be construed as interference with this court's jurisdiction. Under the circumstances of this case, the All Writs Act, 28 U.S.C. § 1651(a), is additional authority to stay Arthur's execution pending a trial and final decision on the merits.