IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. ARTHUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-438-WKW |
| | ) | (WO – Do Not Publish) |
| WALTER MYERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **DISCOVERY ORDER**

## **I.  INTRODUCTION**

This § 1983 lawsuit has been pending for over four years.  By the time this case was reassigned to the undersigned in August 2014, the Eleventh Circuit had resolved Arthur's appeal of the dismissal of his complaint, the former judge to whom this case was assigned had conducted a two-day evidentiary hearing on Arthur's Eighth Amendment method-of-execution and Fourteenth Amendment equal protection claims, years of discovery had been conducted on the use of pentobarbital as the first drug in Alabama's three-drug lethal injection protocol and the performance of the consciousness assessment, and summary judgment had been resolved with respect to Arthur's Eighth and Fourteenth Amendment claims.  All that was left to finally resolve Arthur's claims, at least before the district court, was for the undersigned to hold a final hearing and to enter a memorandum opinion and

final judgment on Arthur's claims.

However, before a final hearing could be held, the State announced in September 2014 that it had changed its lethal injection protocol to substitute midazolam hydrochloride for pentobarbital as the first drug, and rocuronium bromide for pancuronium bromide as the second drug in its three-drug cocktail. (Doc. # 185.) The court gave Arthur leave to amend his complaint to reflect the protocol changes, and on January 7, 2015, Arthur filed his second amended complaint. (Docs. # 195, 197.) The court then placed this case on a shortened schedule in an effort to complete any remaining discovery and a final hearing by May 2015. (Doc. # 202.) Nonetheless, before a final hearing could be held, the court elected to stay this case (and the six other § 1983 lethal injection challenges pending before it) until after the United States Supreme Court decided *Glossip v. Gross*.[1] (Doc. # 241.)

*Glossip* was decided on June 29, 2015, and the stay of this case was subsequently lifted. (Doc. # 246.) With substantial discovery already having been conducted on the use of midazolam in the context of Alabama's three-drug lethal injection protocol,[2] and with discovery appearing to be complete with respect to

---

[1] *Glossip* involved a § 1983 challenge to Oklahoma's three-drug lethal injection protocol, which is similar to Alabama's, and specifically addressed the pleading and proof standards for Eighth Amendment method-of-execution challenges similar to the one presented here.

[2] When litigating Arthur's February 2015 Emergency Motion for a Stay of Execution, both Arthur and the State submitted affidavits from various experts opining to the efficacy of midazolam when

Arthur's Fourteenth Amendment equal protection claim (*see* Doc. # 205), the court ordered Arthur to show cause as to what remaining discovery, if any, needed to be completed before a final hearing could be held.  (Doc. # 247.)  Arthur responded with a "Request for Discovery," which the court construes as a motion to compel.[3] (Doc. # 248.)  The State filed a response in opposition on August 5, 2015 (Doc. # 250), and Arthur filed a reply on August 12, 2015 (Doc. # 255).  Having reviewed these filings, it is clear that, despite the court's prior entry of a general discovery order (*see* Doc. # 207), which remains applicable to discovery in this case unless modified herein, the parties have reached an impasse on multiple discovery issues.  Thus, this order resolves the discovery disputes to facilitate both a condensed and efficient discovery process.

## II.  DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure permits discovery "of any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013).  However, this is not a typical case where discovery, which has been

---

used in the context of Alabama's three-drug lethal injection protocol.  (*See* Docs. # 216, 218, 221, 223.)  Indeed, in Arthur's recently filed request for discovery, even he recognized that, despite "Defendants' refusal to provide relevant documents and information, Mr. Arthur has presented substantial expert testimony in support of his Eighth Amendment claim."  (Doc. # 248, n.1.)

[3]  Arthur filed a motion to compel shortly before the case was stayed, but in light of the entry of a stay, the motion was denied with leave to refile.  (Docs. # 239, 241.)

ongoing for years, will be permitted to plod along a leisurely, and thus protracted, course. Almost a year has passed since Alabama changed the first drug in its three-drug lethal injection protocol from pentobarbital to midazolam. And while *Glossip* made clear that for an inmate to state a viable Eighth Amendment method-of-execution claim, he must plead a known and available alternative method of execution that entails a lesser risk of pain, Arthur has always had the burden of proving this element at the end of the day, even prior to *Glossip*. *Compare Glossip v. Gross*, 135 S. Ct. 2726, 2739 (2015), *with Baze v. Rees*, 553 U.S. 35, 52 (2008).

All this to say that, based on prior pleadings and filings and the procedural posture of this case, the court is unsure what additional discovery remains to be completed, apart from expert depositions and, perhaps, supplementation of expert reports. Indeed, counsel for the State, as officers of the court subject to Rule 11 of the Federal Rules of Civil Procedure, filed a document representing therein that "[t]he State has no additional written discovery pertaining to Arthur's motion. Arthur has been provided with a redacted copy of the State's lethal injection protocol and with other discovery throughout this litigation, and the State has nothing else of relevance to disclose." (Doc. # 250.) The court cannot compel the State to produce information in response to Arthur's discovery requests when, according to the State, there is nothing responsive left to produce.

Moreover, much of the discovery that Arthur seeks is not discoverable, as it is overly broad and/or irrelevant to his claims. Discovery will not be permitted on the following topics:

1.  The State's decision to change or to substitute the first drug used in Alabama's lethal injection protocol from pentobarbital to midazolam and the second drug from pancuronium bromide to rocuronium bromide, including the production of an unreacted copy of the current protocol, as well as documents, communications, and/or other information relating to these changes. Alabama has selected the drugs and dosages to use in its lethal injection protocol, and the reasoning behind those decisions is irrelevant to either of Arthur's claims. Moreover, the State has given a sufficient explanation of its reasoning for selecting midazolam in its response to Arthur's discovery request. (*See* Doc. # 250, p. 1.)

2.  The State's basis for selecting a 500 mg dose of midazolam, including any scientific or medical evidence relied upon in selecting the drug and its dosage. Again, Alabama has selected the drugs and dosages to use in its lethal injection protocol, and the reasoning behind those decisions is irrelevant to Arthur's claims. In any event, the State has given a sufficient explanation of its reasoning for its selection of this drug at this dosage in its response to Arthur's discovery request. (*See* Doc. # 250, p. 1.)

3.  The amount and the specific expiration dates of the midazolam and

rocuronium bromide in the State's possession. The State has informed Arthur that its supply of those two drugs is currently unexpired. If that response changes before Arthur's next scheduled execution date, the State will be obligated to supplement this response in accordance with its general duty to supplement under Rule 26 of the Federal Rules of Civil Procedure.

4. Similarities and differences between Alabama's and Oklahoma's lethal injection protocols. To the extent this request seeks relevant discovery, a redacted copy of Alabama's current protocol has already been produced to Arthur, and Oklahoma's current protocol is publicly available for comparison.

5. The identity of any drug source or supplier used or contacted by the Alabama Department of Corrections. This includes any attempts or efforts by the State to obtain any drug, including pentobarbital, from (i) a compounding pharmacy, (ii) a manufacturer, retailer, wholesaler, distributor, or other source or supplier, or (iii) any agency, institution, or party, including departments of corrections of other states. This request is overly broad and seeks production of highly sensitive information. Arthur can obtain this information through his own investigative efforts or his experts, and the fact that other states have opted to use pentobarbital but have not disclosed their drug sources does not entitle Arthur to discover information about Alabama's drug sources.

6. Any alternative method of execution identified, considered, or

contemplated for use or potential use in Alabama, including a one-drug lethal injection protocol, a firing squad, or the electric chair. Not only is this request overly broad, but Arthur is not entitled "to discover what alternatives Alabama has considered and why they were rejected or not implemented in favor of the current protocol." (Doc. # 248, p. 7.)

      7.    Documents and communications concerning executions in other states using midazolam, including those in Florida, Oklahoma, Ohio and Arizona. Not only is this information not relevant to Arthur's claims, much of the information about these executions in other states is publicly available.

      8.    The medical equipment used to administer midazolam, including the gauge of needles and the diameter and length of delivery tubes, as well as flow and injection rates of any substances to be administered during Arthur's execution. To the extent this information is available to the State, the State has already produced to Arthur the information sought by this discovery request.

Notwithstanding the above, Arthur is entitled to conduct discovery with respect to some of the topics he identifies in his motion. Discovery will be permitted on the following:

      1.    A description of the midazolam and the rocuronium bromide the Alabama Department of Corrections will use in Arthur's execution, including the

components in the solution, the precise volumes/amounts of each component, and the precise ratios of each component.

2. The appropriate midazolam package insert on which Arthur's expert(s) should rely (whether that would be the Becton Dickinson package insert or the Akorn package insert).

3. The substitution of midazolam with pentobarbital, and the medical and scientific similarities and differences between midazolam and pentobarbital and the impact of switching between these two drugs.

4. The efficacy of midazolam, including whether midazolam will anesthetize an inmate or render him unconscious prior to the administration of the second and third drugs in Alabama's lethal injection protocol.

5. The availability or unavailability of pentobarbital or compounded pentobarbital to the Alabama Department of Corrections. However, the scope of this discovery shall not extend to "any other available alternative drug for use or potential use" in Alabama's protocol, as Arthur has identified pentobarbital as his alternative method of execution. While the State may generally describe its efforts to obtain pentobarbital, including whether the pentobarbital was obtained and, if not, the reasons why it could not be obtained, the scope of this discovery shall not extend to the identity of any suppliers, pharmacies, manufacturers, retailers, wholesalers, distributors, or other sources or suppliers, or any agency, institution, or party,

including departments of corrections of other states, from which it has or has attempted to obtain pentobarbital.

Again, the court notes that the State has indicated that it has already produced any responsive materials in has in its possession, custody, or control with respect to Arthur's discovery requests. However, even though the State has indicated that is has no additional written discovery to produce with respect to Arthur's discovery requests, Arthur can conduct discovery on the above topics via expert and/or Rule 30(b)(6) depositions. Finally, the parties are reminded of their duty to supplement under Rule 26 of the Federal Rules of Civil Procedure.

### III. CONCLUSION

Based on the foregoing, Arthur's motion (Doc. # 248) is GRANTED IN PART and DENIED IN PART, as set forth above. **Discovery in this matter, including expert discovery (which is inclusive of expert depositions), shall be completed on or before November 15, 2015.** The court will not entertain any discovery-related motions filed after that date, unless exceptional good cause is shown.

The parties are directed to plan accordingly, including the avoidance of last-minute discovery disputes. A detailed scheduling order is forthcoming and will again place this case on a truncated schedule so that Arthur's claims can be resolved as efficiently as possible. The court further notes that it has already taken notice of

the parties' Joint Stipulation (Doc. # 205) and ordered that the previous testimonies identified therein that were provided in this case (either during depositions and/or the evidentiary hearing October 18−19, 2012) with respect to Alabama's consciousness assessment are binding, applicable, and admissible for purposes of litigating the claims in Arthur's second amended complaint. Any discovery that is repetitive or cumulative of this testimony shall not be conducted. Finally, the discovery contemplated by this order is subject to the Agreed Confidentiality Order (Doc. # 74) on record with the court. The Federal Rules of Civil Procedure shall govern unless modified by this or any other order of the court.

       DONE this 28th day of August, 2015.

                                      /s/ W. Keith Watkins
                          CHIEF UNITED STATES DISTRICT JUDGE