IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

```
------------------------------------------------------------x
THOMAS D. ARTHUR,                               :
                                                :
                    Plaintiff,                  :
            v.                                  :
                                                :
JEFFERSON S. DUNN,                              :
COMMISSIONER, ALABAMA                           :
DEPARTMENT OF CORRECTIONS,                      :
in his official capacity,                       :
                                                :
WALTER MYERS, WARDEN,                           :
HOLMAN CORRECTIONAL FACILITY,                   :    No. 2:11-cv-00438
in his official capacity, and                   :
                                                :
OTHER UNKNOWN EMPLOYEES AND                     :
AGENTS, ALABAMA DEPARTMENT                      :
OF CORRECTIONS,                                 :
in their official capacities,                   :
                                                :
                    Defendants.                 :
                                                :
                                                :
------------------------------------------------------------x
```

**MOTION TO EXCLUDE OR LIMIT TESTIMONY OF DANIEL E. BUFFINGTON**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ................................................................................................................................3

I.   THE COURT SHOULD EXCLUDE THE TESTIMONY OF DR.
     BUFFINGTON, A PHARMACIST, REGARDING THE EXPECTED
     CARDIOVASCULAR EFFECTS OF MIDAZOLAM ON MR. ARTHUR
     BECAUSE DR. BUFFINGTON DOES NOT HAVE RELEVANT
     EXPERTISE. ........................................................................................................................5

     A.   Dr. Buffington is Not a Cardiologist or an Anesthesiologist. ..................................5

     B.   Dr. Buffington's Opinions on the Effects of Midazolam in the Abstract are
          Unreliable. ................................................................................................................7

II.  IN THE ALTERNATIVE, THE COURT SHOULD LIMIT DR.
     BUFFINGTON'S TESTIMONY TO OPINIONS DISCLOSED IN HIS
     REPORT. ...............................................................................................................................9

CONCLUSION ........................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta* v. *Electrolux N. Am.*,
   No. 08-60213-CIV, 2008 WL 5246160 (S.D. Fla. Dec. 16, 2008)........................................10

*Ciomber* v. *Coop. Plus, Inc.*,
   527 F.3d 635 (7th Cir. 2008) ..............................................................................................10

*City of Tuscaloosa* v. *Harcros Chems., Inc.*,
   158 F.3d 548 (11th Cir. 1998) ...........................................................................................4, 6

*E.C. ex rel. Crocker* v. *Child Dev. Sch., Inc.*,
   No. 10-cv-759, 2011 WL 4501560 (M.D. Ala. Sept. 29, 2011) ..............................................4

*Daubert* v. *Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)............................................................................................................3, 4

*Everidge* v. *United Techs. Corp.*,
   No. 00-cv-0230, 2003 WL 26097789 (N.D. Ga. 2003) ............................................................9

*Hendrix ex rel. G.P.* v. *Evenflo Co.*,
   609 F.3d 1183 (11th Cir. 2010) ............................................................................................4

*Glossip* v. *Gross*,
   135 S.Ct. 2726 (2015)...........................................................................................................7

*Kumho Tire Co.* v. *Carmichael*,
   526 U.S. 137 (1999)..............................................................................................................4

*Phillips* v. *Am. Honda Motor Co.*,
   238 Fed. App'x 537 (11th Cir. 2007) ...................................................................................8

*Reese* v. *Herbert*,
   527 F.3d 1253 (11th Cir. 2008) .................................................................................9, 10, 12

*Rembrandt Vision Techs., L.P.* v. *Johnson & Johnson Vision Care, Inc.*,
   725 F.3d 1377 (Fed. Cir. 2013)............................................................................................10

*Salgado* v. *Gen. Motors Corp.*,
   150 F.3d 735 (7th Cir. 1998) ...............................................................................................10

*United States* v. *Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ...............................................................................4, 9

*United States* v. *Wooden*,
    693 F.3d 440 (4th Cir. 2012) ...........................................................................................8

**Other Authorities**

Y.F. Choi, et al., *Midazolam is more likely to cause hypotension than etomidate in
    emergency department rapid sequence intubation*,
    21 EMERG. MED. J. 700 (2004) .....................................................................................8

Paul N. Samuelson, et al., *Hemodynamic Responses to Anesthetic Induction with
    Midazolam or Diazepam in Patients with Ischemic Heart Disease*,
    66 ANESTHESIA & ANALGESIA 802 (1981) .....................................................................8

Product Label:  Midazolam Hydrochloride, Akorn, Inc.,
    http://www.akorn.com/documents/catalog/package_inserts/17478-524-05.pdf ......................8

**Rules and Statutes**

Federal Rule of Civil Procedure 26 ...........................................................................9, 10

Federal Rule of Civil Procedure 37 ...........................................................................9, 10

Federal Rule of Evidence 702...........................................................................................3

## PRELIMINARY STATEMENT

In his report, Dr. Daniel Buffington, a pharmacist, purports to respond to the opinions provided by Dr. Russell Strader, a cardiologist, concerning the expected cardiovascular effects of midazolam on Mr. Arthur.  Dr. Buffington is not qualified to offer these opinions.

Dr. Strader's opinions concern the mechanism through which the administration of midazolam will cause a drop in blood pressure and subsequently result in myocardial ischemia and/or infarction (commonly known as a heart attack) in a person with Mr. Arthur's history of coronary artery disease and the timing of the onset of myocardial ischemia and/or infarction.  Dr. Buffington purports to rebut Dr. Strader's testimony despite having (i) no training as an anesthesiologist and no relevant clinical experience with the use of midazolam as a general anesthetic and (ii) no relevant experience or training as a cardiologist.  Instead, Dr. Buffington purports to have conducted a "review of the medical literature" to arrive at his opinions, but this review cannot replace his lack of expertise.  Moreover, his "review" consists almost entirely of offering commentary on certain medical journal articles cited by Dr. Strader, and the citation of a series of largely or entirely irrelevant articles concerning the use of midazolam in conscious sedation.  These opinions do not meet the standards for expert testimony set by the Rules of Evidence and governing Supreme Court and Eleventh Circuit decisions.  Dr. Buffington's testimony should be excluded.

In addition, to the extent Dr. Buffington's testimony is not excluded in its entirety, his testimony should be limited to the opinions set forth in his report.  At his deposition, Dr. Buffington, for the first time, indicated that in addition to responding to the opinions of Dr. Strader, he would also be offering opinions in response to Mr. Arthur's anesthesiology expert, Dr. Kaye.  Such opinions are not disclosed anywhere in his report—which does not refer to Dr. Kaye's report at all—and should not be admitted at trial.

**BACKGROUND**

On November 30, 2015, Defendants served the report of Daniel Buffington, who was then deposed on December 11, 2015.  Dr. Buffington is a pharmacist by training, with a Doctor of Pharmacy degree from Mercer University.  A Doctor of Pharmacy, or Pharm.D., degree is the professional degree necessary to practice as an accredited pharmacist in the United States.  (Dec. 11, 2015 Buffington Dep. Tr. ("Buffington Dep. Tr.") at 96:16-97:3.)[1]  A Pharm.D. degree does not qualify a person to practice as a medical doctor, and Dr. Buffington is not trained as either a cardiologist or an anesthesiologist.  (Buffington Dep. Tr. at 8:4-8.)

As a pharmacist, Dr. Buffington's practice has focused on clinical consultations to help identify and resolve drug therapy related problems.  (Buffington Dep. Tr. at 11:17-12:15.)  Dr. Buffington does not specialize in the pharmacological treatment of cardiovascular disease or anesthesiology.  (Buffington Dep. Tr. at 8:4-8, 132:4-9; *see* Curriculum Vitae of Daniel E. Buffington, Pharm.D., MBA ("Buffington CV"), at 3-4.)[2]

Despite his lack of expertise, Dr. Buffington, in his 9-page report, offers various opinions in rebuttal to those offered by Dr. Strader.  In particular, Dr. Buffington asserts that his "detailed review of the medical literature" contradicts Dr. Strader's conclusions regarding the likelihood of an acute cardiac event (Nov. 23, 2015 Buffington Declaration ("Buffington Report") ¶ 6)[3] and claims that there is no "scientific or medical evidence" that midazolam is "capable of inducing or worsening ischemic cardiac damage, acute cardiac events, excruciating pain and/or suffering" (Buffington Report ¶ 7).

---

[1]    Relevant excerpts of the transcript of Dr. Buffington's deposition in this case are attached hereto as Exhibit A.

[2]    Relevant excerpts of Dr. Buffington's curriculum vitae are attached hereto as Exhibit B.

[3]    Dr. Buffington's November 23, 2015 report is attached hereto as Exhibit C.

At his deposition, Dr. Buffington confirmed that he was not offering any opinion contrary to Dr. Strader's opinion concerning Mr. Arthur's significant coronary artery disease. (Buffington Dep. Tr. at 142:21-25, 143: 2-25, 144:2-4.)   Instead, he offered opinions about midazolam in the abstract, without making any reference to Mr. Arthur.   Dr. Buffington conceded that he did not attempt to extrapolate from the clinical use of midazolam to the facts of this case. (Buffington Dep. Tr. at 204:24-205:3, 207:24-208:4, 209:21-210:7, 226:7-14),

In addition, at his deposition, Dr. Buffington stated, for the first time, that he would be offering opinions in response to Dr. Alan D. Kaye (Buffington Dep. Tr. at 36:22-37:15), an M.D. and Ph.D. in pharmacology, who is the head of anesthesiology at Louisiana State University, has written multiple books and articles on anesthesiology, and who has administered midazolam thousands of times.   Dr. Buffington also purported to offer several sweeping opinions concerning the anesthetic properties of midazolam that are neither disclosed in his report nor within his area of expertise.  (Buffington Dep. Tr. at 149:23-156:21, 256:9-259:24.)

## ARGUMENT

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  The Supreme Court has made clear that this rule (and others) impose on district courts a "gatekeeping role" to prevent the introduction of purported expert testimony that is insufficiently reliable.  *See Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993).   The

objective of this "gatekeeping requirement" is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. Ltd.* v. *Carmichael*, 526 U.S. 137, 152 (1999).  Only if "the expert's opinion will have a reliable basis in the knowledge and experience of his discipline" is relaxation of the traditional requirement that a witness speak from firsthand knowledge warranted.  *Daubert*, 509 U.S. at 592.

Expert evidence may be admitted only if the following requirements of a "rigorous three-part inquiry" are satisfied:  "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States* v. *Frazier*, 387 F.3d 1244, 1293 (11th Cir. 2004) (quoting *City of Tuscaloosa* v. *Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).  "The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each [of these] prong[s]." *Hendrix ex rel. G.P.* v. *Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

Whether an expert is qualified to testify "is case specific and therefore lies within [the] court's discretion." *E.C. ex rel. Crocker* v. *Child Dev. Sch., Inc.*, No. 10-cv-759, 2011 WL 4501560, at *10 (M.D. Ala. Sept. 29, 2011) (Watkins, J.).  In order to be able to testify competently, a witness must be qualified by one or more of the following:  "knowledge, skill, experience, training, or education." *Id.*

**I.     THE COURT SHOULD EXCLUDE THE TESTIMONY OF DR. BUFFINGTON, A PHARMACIST, REGARDING THE EXPECTED CARDIOVASCULAR EFFECTS OF MIDAZOLAM ON MR. ARTHUR BECAUSE DR. BUFFINGTON DOES NOT HAVE RELEVANT EXPERTISE.**

Mr. Arthur's expert on the cardiovascular effects of midazolam, Dr. Strader, is a practicing cardiologist who routinely counsels anesthesiologists on the cardiac risk associated with anesthesia, and who has also himself performed thousands of invasive procedures involving the use of midazolam.  (Dec. 8, 2011 Strader Dep. Tr. ("Strader Dep. Tr.") at 6:6-8, 30:13-19; Nov. 16, 2015 Declaration of J. Russell Strader, Jr., M.D. F.A.C.C. ("Strader Report") at ¶¶ 4 & 5.)[4]  Dr. Buffington, a clinical pharmacist, purports to rebut Dr. Strader's opinion.  Dr. Buffington's training and experience are limited to clinical pharmacy and business; he does not have the relevant expertise to opine on the potential cardiovascular effects of the administration of midazolam under the Alabama Department of Corrections (the "ADOC") protocol.

**A.     Dr. Buffington is Not a Cardiologist or an Anesthesiologist.**

Dr. Buffington is not a cardiologist.  (Buffington Dep. Tr. at 8:7-8.)  He is not an expert in cardiovascular hemodynamics (Buffington Dep. Tr. at 132:7-9) —*i.e.*, the study of the variables that relate to movement of blood in the cardiovascular system, including blood pressure and heart rate— (Strader Dep. Tr. at 20:11-19), does not perform invasive or non-invasive cardiac procedures  (Buffington Dep. Tr. at 137:21-24), does not provide medical treatment for patients suffering myocardial infarction and/or ischemia and has no specialized training in cardiology (Buffington CV, at 3-4).  Nor is Dr. Buffington an anesthesiologist.  (Buffington Dep. Tr. at 8:4-6, 139:19-22.)  He has never administered, for purposes of inducing general anesthesia, an anesthetic drug to a patient (Buffington Dep. Tr. at 140:5-7) and has no specialized training in

---

[4]     Relevant excerpts of the transcript of Dr. Strader's deposition in this case are attached hereto as Exhibit D.  Dr. Strader's  November 16, 2015 report is attached hereto as Exhibit E.

anesthesiology (Buffington CV, at 3-4).  Dr. Buffington also has neither prescribed nor used midazolam in clinical practice  (Buffington Dep. Tr. at 8:11-13),[5] nor has he published any article related to midazolam (Buffington Dep. Tr. at 14:13-19).

In this case, however, Dr. Buffington's written report and oral testimony purport to cover a wide variety of subjects that are specific to the medical practices of cardiology and anesthesiology, going well beyond the expertise of a pharmacist.  These topics include impaired cardiac perfusion, cardiorespiratory events and the cardiovascular system, the likelihood of a significant hypotensive event after administration of midazolam, the severity of a patient's preexisting myocardial ischemia, and, more generally, the hemodynamic effects of midazolam. (*See* Buffington Dep. Tr. at 17:21-19:11; Buffington Report ¶ 6.)  The same is true with respect to the practice of anesthesiology, with his report and oral testimony purporting to cover topics such as the bispectral index and its use by practitioners, the availability of off–label indications for midazolam and, more generally, the degree of sedation produced after administration of midazolam.  (Buffington Dep. Tr. at 154:4-156:21, 163:17-164:14; Buffington Report ¶¶ 4-5.)

Because Dr. Buffington is neither a cardiologist nor an anesthesiologist, his opinions about the hemodynamic and anesthetic effects of midazolam, respectively, "are outside of his competence and must be excluded."  *City of Tuscaloosa*, 158 F.3d at 565.

---

[5]   Although Dr. Buffington initially testified at deposition that he had never prescribed or administered midazolam, he later changed his testimony to claim that he had "written a prescription for midazolam." (Buffington Dep. Tr. at 8:11-13, 133:8-12.)  In any event, the only use of midazolam that Dr. Buffington has been involved in is its use as an oral sedative.  He has not prescribed or used it as an intravenous anesthetic to induce general anesthesia.

**B.**      **Dr. Buffington's Opinions on the Effects of Midazolam in the Abstract are Unreliable.**

Dr. Buffington purports to opine on the hemodynamic and anesthetic effects of midazolam. In particular, he suggests that "no scientific or medical evidence" supports Dr. Strader's assertions that the administration of midazolam (i) would result in "a significant hypotensive event" before the onset of sedation, or (ii) "is capable of inducing or worsening ischemic cardiac damage, acute cardiac events, excruciating pain and/or suffering." (Buffington Report ¶ 7). Dr. Buffington's opinions are unreliable and should be excluded.

*First,* Dr. Buffington's opinions with respect to midazolam's anesthetic effects are unreliable. Dr. Buffington has conducted no independent study or meaningful analysis to arrive at his opinions. Instead, he simply restates information derived from sources that have little (if any) applicability to this case. For example, his report includes tables illustrating the recommended dose of midazolam for use as a sedative (Buffington Report Table 1), the use of midazolam as an anesthetic agent in combination with other anesthetic drugs (Buffington Report Table 2),[6] and the onset and duration of midazolam's sedative effects when administered in ways the ADOC does not plan to administer it — *i.e.*, orally, intramuscularly, using a rapid sequence intubation technique and with narcotic premedication (Buffington Report Table 3). Even though "extrapolation [i]s reasonable" in this case "because a 500–milligram dose is never administered for a therapeutic purpose," *see Glossip* v. *Gross*, 135 S. Ct. 2726, 2741 (2015), Dr. Buffington nevertheless conceded that he did not attempt to extrapolate from the clinical use of midazolam to the facts of this case. (Buffington Dep. Tr. at 207:24-208:4, 209:21-210:7, 214:17-21 .)

---

[6]      As Dr. Buffington himself explained, "these are just an academic illustration of the progressive and adverse use of midazolam" having no relation to the ADOC's lethal injection protocol. (Buffington Dep. Tr. 173:20-22.)

*Second*, Dr. Buffington's opinions with respect to midazolam's hemodynamic effects are unreliable.  A number of the sources on which Dr. Buffington purports to rely affirmatively contradict his conclusions.  For example, sources cited by Dr. Buffington in his report find that after administration of a *clinical* dose of midazolam — *i.e.*, a much lower dose than called for by the ADOC protocol — a statistically significant drop in blood pressure can occur within two minutes,[7] "midazolam may cause significant hypotension"[8] and there is a risk that a severe cardiorespiratory and/or hemodynamic event may occur.[9]  Dr. Buffington's decision to ignore contradictory evidence in his report results in an opinion that is "internally inconsistent" and unreliable.  *United States* v. *Wooden*, 693 F.3d 440, 455 (4th Cir. 2012); *see also Phillips* v. *Am. Honda Motor Co.*, 238 Fed. App. 537, 541-42 (11th Cir. 2007) (per curiam).

*Third*, and relatedly, though Dr. Buffington purports to have done "a detailed review of the medical literature surrounding the administration of midazolam," his review is confined to a limited number of articles, most of which are inapposite.  (Buffington Report ¶ 6.)  Of the 21 sources that he references, six are cited only in support of his "academic illustration" that midazolam is used to induce anesthesia in conjunction with other anesthetic agents, a matter

---

[7]     Paul N. Samuelson, et al., *Hemodynamic Responses to Anesthetic Induction with Midazolam or Diazepam in Patients with Ischemic Heart Disease*, 66 ANESTHESIA & ANALGESIA 802, 804 (1981) (attached hereto as Exhibit F).

[8]     Y.F. Choi, et al., *Midazolam is more likely to cause hypotension than etomidate in emergency department rapid sequence intubation*, 21 EMERG. MED. J. 700, 701 (2004) (attached hereto as Exhibit G).

[9]     *See* Product Label: Midazolam Hydrochloride, Akorn, Inc., http://www.akorn.com/documents/catalog/package_inserts/17478-524-05.pdf (last accessed December 29, 2015) ("Serious cardiorespiratory adverse events have occurred after administration of midazolam.  These have included respiratory depression, airway obstruction, oxygen desaturation, apnea, respiratory arrest and/or cardiac arrest . . . .  There have also been rare reports of hypotensive episodes . . . in [adult or pediatric] patients with hemodynamic instability.")

irrelevant to the ADOC protocol (Buffington Dep. Tr. at 173:11-174:2; Buffington Report Table 2, nn. 10-15), six relate to midazolam's indication for *conscious* sedation (Buffington Report ¶ 4, nn. 1, 5-9; Buffington Dep. Tr. 177:11-14) and the remaining few sources cited by Dr. Buffington do not provide a basis for his testimony or cure his lack of expertise.  (Buffington Report ¶ 6.)

*     *     *

In sum, Dr. Buffington's opinions should be excluded because, as a pharmacist, he is not qualified to opine on matters of cardiology and anesthesia.  His opinions should likewise be excluded because they are entirely unreliable in the abstract.  "Absent more, ipse dixit such as this may not serve as the basis for expert testimony and consequently renders the opinion inadmissible."  *Everidge* v. *United Techs. Corp.*, No. 00-cv-0230, 2003 WL 26097789, at *7 (N.D. Ga. Mar. 31, 2003); *see also Frazier*, 387 F.3d at 1261.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD LIMIT DR. BUFFINGTON'S TESTIMONY TO OPINIONS DISCLOSED IN HIS REPORT.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert witness to disclose a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i); *see also Reese* v. *Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) ("'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefor.'").  Rule 26(a)(2)(B) also requires an expert to disclose all facts or data "considered" in formulating his opinions.  Rule 37(c) provides a "self-executing sanction" for failure to comply with Rule 26(a)'s expert report disclosure rule.  Fed. R. Civ. P. 37(c), advisory committee notes.  In particular, an "expert witness may not testify to subject matter beyond the scope of the witness's

expert report unless the failure to include that information in the report was 'substantially justified or harmless.'" *Rembrandt Vision Techs., L.P.* v. *Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (quoting Fed. R. Civ. P. 37(c)(1)).  Further, the burden is on the party offering the expert witness to prove that its failure to comply with Rule 26(a) was "substantially justified or harmless." *Id.*

Rule 26(a)(2) does not allow parties to cure deficient expert reports with later deposition testimony.  The purpose of requiring disclosure is to provide a reasonable opportunity to prepare, *see Reese*, 527 F.3d at 1265, and give "notice to opposing counsel—*before the deposition*—as to what the expert witness will testify." *Ciomber* v. *Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (emphasis added).  This purpose would be "completely undermined if parties were allowed to cure deficient reports with later deposition testimony." *Id.*  Further, if an expert's report "contains only incomplete opinions, the court may choose to restrict the expert's testimony to those opinions alone." *Acosta* v. *Electrolux N. Am.*, No. 08-60213-CIV, 2008 WL 5246160, at *6 (S.D. Fla. Dec. 16, 2008) (quoting *Salgado* v. *Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)).

Dr. Buffington should not be permitted to testify on any matter that he failed to include in his expert report.  Most significantly, Dr. Buffington asserted at his deposition that he had been engaged by Defendants not only to respond to Dr. Strader's report, but also to the report of Mr. Arthur's expert anesthesiologist Dr. Alan Kaye.  In the written reports they served and submitted to the Court, however, Defendants disclosed only Dr. Evans as a witness providing testimony in rebuttal to Dr. Kaye's opinions regarding the anesthetic effects of

midazolam.  (*See* Nov. 24, 2015 Evans Report. ¶¶ 6-7.)[10]   In Dr. Buffington's report, he stated that he was "requested to review and respond to the comments and opinions provided by Russell Strader, Jr, MD."  (Buffington Report ¶ 3.)  Dr. Buffington's report did not discuss or refer to Dr. Kaye's report and did not so much as mention Dr. Kaye's report, much less that Dr. Buffington would be providing opinions in response to it.  Dr. Buffington did not include Dr. Kaye's report in his list of reviewed materials.  (*See* Buffington Report ¶ 1.)  Additionally, Dr. Buffington did not refer to a single article cited in Dr. Kaye's report nor did he provide any citation or reference to any support for any rebuttal of Dr. Kaye's opinions.

Nevertheless, at his deposition, Dr. Buffington, for the first time, claimed that Defendants requested that he review and evaluate Dr. Kaye's report.  (Buffington Dep. Tr. at 36:25-37:5.)  Dr. Buffington also offered a number of additional opinions, and cited to multiple sources, that he failed to include in his report filed with the Court:  Dr. Buffington opined on whether or not midazolam has a maximum anesthetic effect despite failing to even mention a ceiling effect in his report.  (Buffington Dep. Tr. at 186:2-187:22.)  Dr. Buffington also purported to opine on anesthetic levels targeted by surgeons, even though this information is not included in his report.  (Buffington Dep. Tr. at 155:13-23; 156:15-21.)  Similarly, though he did not present anything in his report calculating an onset time for a 500 milligram dose of midazolam, Dr. Buffington purported to opine on a specific onset time of sedation in the ADOC protocol.  (Buffington Dep. Tr. at 217:5–220:17.)  He also purported to offer opinions at his deposition regarding the supposed amnestic effects of midazolam although these, too, were not disclosed in his report.  (Buffington Dep. Tr. at 256:9-259:24.)

---

[10]     Dr. Evans's November 24, 2015 report is attached hereto as Exhibit H.

Dr. Buffington's opinions beyond the scope of his report violate the expert report disclosure rules and should not be admitted at trial.  *See Reese*, 527 F.3d at 1265.

## CONCLUSION

The Court should exclude the testimony of Dr. Buffington in its entirety, or, in the alternative, limit his testimony to the opinions disclosed in his report.

Dated:  December 30, 2015

Respectfully submitted,

/s/ Suhana S. Han

Suhana S. Han (admitted *pro hac vice*)
  NY Bar Registration # 3016482
  hans@sullcrom.com
Adam R. Brebner (admitted *pro hac vice*)
  brebnera@sullcrom.com
Meredith A. Sherman (admitted *pro hac vice*)
  shermanm@sullcrom.com
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Fax:  (212) 558-3588

*Counsel for Plaintiff Thomas D. Arthur*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:   J. Clayton Crenshaw, Esq., Thomas R. Govan, Jr., Esq., Henry Mitchell Johnson, Esq., and Lauren Ashley Simpson, Esq.

/s/ Suhana S. Han
Suhana S. Han (admitted *pro hac vice*)
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Fax:  (212) 558-3588
E-mail:  hans@sullcrom.com