IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| THOMAS D. ARTHUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 2:11-cv-438-WKW |
| | ) |
| JEFFERSON S. DUNN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO ARTHUR'S
MOTION FOR A NEW TRIAL**

Arthur is not entitled to a new trial. This Court has held that "Arthur failed to prove that compounded pentobarbital is readily available to the ADOC." Arthur v. Dunn, No. 2:11-CV-438-WKW, 2016 WL 1551475, at *9 (M.D. Ala. April 15, 2016). Nothing in Arthur's motion for new trial calls that decision into question.

The fact remains that Arthur has not, and cannot, produce evidence that compounded pentobarbital is available specifically to the ADOC. While Arthur couches the arguments raised in his motion for new trial as "new," Doc. 367 at 1, in reality, he presents simply more of the same: generic testimony from an expert witness about passing conversations had during national conventions and about the fact that the process of compounding pentobarbital is straightforward and that any pharmacist would have the training to do it. But such testimony does not provide any evidence of a source for compounded pentobarbital for the ADOC, nor does it

demonstrate that compounded pentobarbital is available to the ADOC. Thus, Defendants' respectfully submit this opposition to Arthur's motion for a new trial.

## Legal Standards

"The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Id.

## Argument

In his motion for new trial, Arthur relies on the March 17, 2016 deposition transcript of Dr. Daniel Buffington, a pharmacist, in the case of Grayson v. Dunn, No. 2:12-cv-316-WKW, another method-of-execution challenge pending in this Court. Doc. 367 at 1, 5. Dr. Buffington was retained as an expert by the Defendants in Grayson, as well as in this case, and he has been deposed in both cases.

Arthur cites Dr. Buffington's testimony in Grayson as evidence of the availability of compounded pentobarbital. However, Arthur only provides selected portions of the transcript of Dr. Buffington's deposition. Doc. 367-1. More importantly, he misrepresents the testimony. Arthur claims that Dr. Buffington testified "that he personally knew compounding pharmacists who would be willing

2

to compound pentobarbital for ADOC." Doc. 367 at 5. Dr. Buffington never said anything of the sort. Instead, he testified that when he attended various conferences, the topic of the use of compounded pentobarbital in lethal injections came up in discussion with colleagues, and some of them stated they would do it. Ex. A at 101:1–14. But as to the question of whether they would "do it for the Alabama Department of Corrections," Dr. Buffington did not opine on that issue; rather, he stated, "We'd just have to ask." Id. at 97: 13–15. Given the fact that Arthur cites only a portion of the pertinent parts of Dr. Buffington's testimony in the Grayson case—and overstates the part he does provide—the State has attached a more complete portion of the transcript and briefly summarizes the testimony below.

     Dr. Buffington testified that every pharmacist who attends pharmacy school and obtains a Pharm. D. degree learns how to compound drugs. Id. at 93:8–16. He stated that he had not been previously asked to help locate a compounding pharmacist to compound pentobarbital, but he knew there were many facilities capable of compounding pentobarbital, and he could identify persons who had the equipment and instruments. Id. at 95:13–96:12. Dr. Buffington testified that these pharmacists would need to be asked, however, whether they would be willing to compound pentobarbital for the ADOC. Id. at 96:13–15.

Dr. Buffington also testified that the use of compounded drugs in executions was an open area of discussion across the country.  Id. at 97:5–10.  He stated that he speaks with many pharmacists and colleagues at various conventions, and that some of them stated they would be willing to compound pentobarbital for use in executions.  Id. at 97:5–10, 101:1–17.  He testified that it was possible to identify properly-trained pharmacists with the appropriate facilities to perform the function of compounding pentobarbital, but that he would not provide any names of pharmacists until he checked personally with them.  Id. at 101:18–102:2.  Dr. Buffington said that he was not sure of the level of difficulty of finding a pharmacist, but he thought it was a resolvable issue.  Id. at 98:11–15.  He further testified that his particular practice setting was not set up with the necessary raw supplies and equipment to compound pentobarbital.  Id. at 99:6–19.

Arthur has failed to demonstrate that he is entitled to a new trial for several reasons.  First, Arthur still has failed to produce evidence of a source for compounded pentobarbital that is readily available to the ADOC.  Nothing in Dr. Buffington's deposition testimony in Grayson changes that fact.  Nor does Dr. Buffington's testimony change the fact that the ADOC has contacted numerous sources for compounded pentobarbital and has been unable to obtain it.  Dr. Buffington did not provide evidence of a source for pentobarbital for the ADOC, but simply reiterated the undisputed point that pharmacists would need to be asked

4

whether they were willing and capable of providing compounded pentobarbital to the ADOC.  Arthur still comes to the table empty-handed.  His motion for new trial is nothing but the latest ploy in an attempt to turn his burden under <u>Baze</u> and <u>Glossip</u> on its head without providing evidence.  But as this Court has recognized, the burden remains with Arthur, and "the State has no burden to plead and prove that it cannot acquire either of Arthur's proposed alternative drugs for use in his execution."  <u>Arthur</u>, 2016 WL 1551475, at *9.

Second, Dr. Buffington's testimony provides no new material information and is essentially cumulative to the testimony provided by Dr. Zentner at trial.  Dr. Buffington's testimony in <u>Grayson</u> primarily concerned the process of compounding pentobarbital and the fact that an average pharmacist should be able to perform the task.  As Arthur admits, "Dr. Buffington's testimony is entirely consistent with Dr. Zentner's evidence," Doc. 367 at 9—evidence that this Court already considered and found to be insufficient to meet Arthur's burden under <u>Baze</u> and <u>Glossip</u>.  <u>Arthur</u>, 2016 WL 1551475, at *4–9.  Specifically, Dr. Zentner testified that the formulation for compounded pentobarbital was long-known and well established and that it was a "straightforward process."  <u>Id.</u> at *5.  He also testified that any pharmacy qualified to do sterile compounding that has the necessary equipment could be a source for a supply, and that he had identified nineteen such pharmacies in Alabama.  <u>Id.</u> at *6.  Likewise, Dr. Buffington

5

testified that every pharmacist learns how to compound and that he could identify individuals who were capable of compounding pentobarbital and had the necessary facilities, if such individuals gave him permission to share their names with the ADOC.  Ex. A at 93:8–16, 96:13–15, 101:18–25.  But none of this testimony is evidence that compounded pentobarbital is feasible and readily-implementable to the ADOC.

Arthur tries to make much about the fact that Dr. Buffington testified that he had discussions with colleagues at conferences about compounding drugs for lethal injections and that some colleagues said they would do it.  Doc. 367 at 8.  But testimony about general discussions that were had in the confines of a national conference and not directed to the ADOC specifically is hardly evidence that compounded pentobarbital is available to the ADOC.  "At best, it proves a 'maybe.'"  Arthur, 2016 WL 1551475, at *4–9.  This is particularly so, given the real-world evidence of the difficulties the ADOC has faced in their unsuccessful attempts to obtain compounded pentobarbital, as was presented during trial.  Indeed, when the ADOC contacted Alabama pharmacies that were purportedly capable of sterile compounding, some pharmacies could not obtain the active ingredient for compounded pentobarbital, many did not conduct that type of compounding, and none of them could or would provide compounded pentobarbital to the ADOC.  Docs. 349, 350 (Trial Transcript) at 147–151.  Passing

comments from pharmacists at conventions about the idea of compounding drugs for use in a lethal injection, given the difficulties departments of corrections face of obtaining drugs, is not true evidence of availability to the ADOC.

Likewise, Dr. Buffington's testimony that the ability to direct the ADOC to a compounding pharmacist who would be willing to compound pentobarbital was a "resolvable question," Ex. A at 98:3–10, is not evidence that compounded pentobarbital is available to the ADOC. The evidence in this case establishes that the question is indeed resolvable in the negative: the ADOC cannot obtain compounded pentobarbital, and Arthur has produced no other evidence of a source. As Dr. Buffington acknowledged, he was unsure of how difficult the process of obtaining compounded pentobarbital would be. Id. at 12–14 ("Level of difficulty, how many calls it would take, where that particular practice may reside."). This testimony merely confirms this Court's finding that evidence to the effect "that with effort [pentobarbital] can be compounded (maybe by a willing Alabama compounding pharmacy but maybe not)" does not "prove a feasible and readily available product." Arthur, 2016 WL 1551475, at *9. Further, Dr. Buffington's testimony that "I know that they're there" in reference to pharmacists willing to compound pentobarbital is unremarkable. Ex. A at 98: 15. No one disputes that a few states have found a willing pharmacist to compound pentobarbital for them since there are some states that have been able to obtain compounded

pentobarbital, but that is not evidence that compounded pentobarbital is available to the ADOC. See Arthur, 2016 WL 1551475, at *9 ("Proof that another state has procured it . . . do[es] not prove a feasible and readily available product.").

Third, and in any event, the evidence demonstrates that Dr. Buffington could not provide information on a pharmacist who was capable and willing to compound pentobarbital for the ADOC. While Dr. Buffington testified at his deposition in the Grayson case that the question of finding a willing pharmacist was resolvable, as it turns out, when he later attempted to identify a willing pharmacist, he was unable to do so. As Arthur admits, Defendants provided an affidavit from Dr. Buffington relating to his attempts since his deposition in the Grayson case to contact pharmacists to determine whether they would be capable and willing to provide the ADOC with compounded pentobarbital. Doc. 367 at 9 n.7.[1] Dr. Buffington was unsuccessful. Dr. Buffington contacted fifteen different compounding pharmacists, and none of them were willing to have their names provided to the ADOC regarding the compounding of pentobarbital for use in lethal injections. See Exhibit B. This evidence again confirms the fact that Arthur failed to prove that compounded pentobarbital is readily available to the ADOC.

Further, Arthur's request to "probe this evidence at a new trial" should be denied. Doc. 367 at 9 n.7. It is uncertain what purpose could possibly be served

---

[1] Pursuant to Rule 59(c), Defendants have attached the affidavit that Arthur referenced as Exhibit B.

8

by such action other than fueling Arthur's desire for more delay.  Arthur simply has failed to produce evidence of a source for compounded pentobarbital to the ADOC, and Dr. Buffington has already produced a sworn affidavit that he cannot provide any names of pharmacists capable and willing to provide compound pentobarbital to the ADOC.  Arthur provides no reason why additional litigation and delay would change this result.

Finally, Arthur has not been diligent in presenting this alleged evidence.  As he admits, Dr. Buffington was an expert in this case.  Doc. 367 at 7 n.6.  Arthur conducted a nearly seven-hour deposition of Dr. Buffington, and he could have asked Dr. Buffington any questions concerning his opinion about compounded pentobarbital at that time, but he chose not to do so.  Arthur tries to excuse this fact by pointing out that Dr. Buffington was retained by Defendants to rebut the testimony of Dr. J. Russell Strader concerning the theory that Arthur would suffer a heart attack, and that Arthur had no reason to expect Dr. Buffington to have testimony about the availability of compounded pentobarbital, but this argument falls flat.  Id.  Likewise, Dr. Buffington was not retained in Grayson to opine about the availability of compounded pentobarbital, but rather to opine about the pharmacological effects of lethal injection drugs.  Ex. B at 1–2.  This did not prevent plaintiffs' counsel in that case from asking general questions in a deposition to a pharmacist about the availability of finding other pharmacists, and

9

Arthur provides no reason why he could not have done the same.  In fact, as he admits, Arthur's strategy was to prevent Dr. Buffington from discussing pentobarbital since he did not mention the drug in his expert report.  Doc. 367 at 7 n.6.  Indeed, Arthur would likely have objected had Defendants tried to introduce any evidence from Dr. Buffington on this topic in this case.  Apart from the fact that Dr. Buffington's testimony in another case has no substantive impact on the findings made in this case, Arthur's delay in presenting this evidence requires a denial of his motion for new trial.

## Conclusion

For the above-stated reasons, Arthur's motion for new trial should be denied.

Respectfully submitted,

Luther Strange,
*Attorney General*

*/s Thomas R. Govan, Jr.*
Thomas R. Govan, Jr.
*Deputy Attorney General*
J. Clayton Crenshaw
James R. Houts
Lauren A. Simpson
*Assistant Attorneys General*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: **Suhana S. Han, Adam Brebner, and Meredith A. Sherman.**

*/s Thomas R. Govan, Jr.*
Thomas R. Govan, Jr.
*Deputy Attorney General*

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
tgovan@ago.state.al.us